**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| CHRISTY, INC., <br> on behalf of itself and all others similarly situated, <br><br>      Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br>      Defendant. | CASE NO. 1:18-cv-00657-MMS |

## <u>PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT [Dkt. No. 8]</u>

Plaintiff, Christy, Inc., on behalf of itself and all others similarly situated, respectfully submit this Memorandum of Law in Opposition of Defendant United States of America's (the "Government") Motion to Dismiss the First Amended Class Action Complaint (Dkt. 8, hereinafter, the "Motion").

# TABLE OF CONTENTS

I. INTRODUCTION AND STATEMENT OF THE CASE ...........................................1

II. STANDARD OF REVIEW ...........................................................................2

    A. RCFC 12(B)(1) .......................................................................................2

    B. RCFC 12(B)(6) .......................................................................................2

    C. RCFC 8 AND 12(F) ..................................................................................3

III. ARGUMENT ..........................................................................................4

    A. COUNT I ADEQUATELY ALLEGES A TAKING UNDER THE FIFTH AMENDMENT. ......4

        1. Christy Indisputably Has A Property Right Within the Meaning of the Takings Clause.............................................................................6

        2. Christy's Private Property Rights Were Indisputably Granted, Vested, And Later Taken For Public Use. ..................................................12

        3. Christy's Claim Is Not A Veiled Appeal Of The Board's Decision. .............15

    B. COUNTS II THROUGH IV SUFFICIENTLY PLEAD THAT ALL ELEMENTS OF A VALID CONTRACT WERE SATISFIED BETWEEN CHRISTY AND THE GOVERNMENT. .........17

        1. The Government's Depiction Of How A Patent Is Issued Ignores The True Nature Of The Process And The Result. ........................................20

        2. Christy Adequately Pled That The Government Manifested An Intent To Contract...............................................................................21

        3. The Director Of The USPTO Is The Only Person Authorized To Issue A Patent................................................................................24

        4. The First Amended Complaint Alleges That The Government Did Not Perform Its Obligations Under The Patent Contract. .................................25

        5. The Government Has Conceded That The Contracts Alleged In Counts II And III Carry With Them A Duty Of Good Faith And Fair Dealing. .........27

        6. The Government's Reliance On Federal Circuit Law Allegedly Stating That A Patent Is Not A Contract Is Unavailing..........................................27

    C. A CONTRACT IS MONEY-MANDATING AS A MATTER OF LAW. ...........................29

    D. CHRISTY PLAUSIBLY ALLEGED AN EXACTION CLAIM UNDER COUNT VI..............31

        1. The Government's Collection Of Patent-Related Fees And Failure To Refund Them After The Patent Claims Were Invalidated Is The Improper Act. ....................................................................................31

Court of Federal Claims
Case No. 1:18-cv-00657-MMS

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS
THE FIRST AMENDED CLASS ACTION COMPLAINT [Dkt. No. 8]
Page |ii

2. Exaction Claims Where Money Has Been Improperly Paid To The Government Do Not Require The Statute Violated To Identify A Money Mandating Provision. ..........................................................32

3. The Statute Identified By The Government Does Not Preempt Tucker Act Jurisdiction. ..........................................................35

E. THE LENGTH OF CHRISTY'S COMPLAINT DOES NOT CONSTITUTE A VIOLATION OF RULE 8 NOR RENDER IT VULNERABLE TO RULE 12(F) BECAUSE THE SUBJECT MATERIAL IS NECESSARY TO ITS CLAIMS. ..........................................................36

F. CHRISTY STIPULATES TO DISMISSAL OF COUNT V (UNJUST ENRICHMENT) ..........38

IV. CONCLUSION ..........................................................38

Court of Federal Claims
Case No. 1:18-cv-00657-MMS

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS
THE FIRST AMENDED CLASS ACTION COMPLAINT [Dkt. No. 8]
Page |iii

# TABLE OF EXHIBITS

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| A | Excerpt from the file history for Application No. 10/623,356 to the United States Patent and Trademark Office ("USPTO"), said excerpt comprising a communication from the USPTO that is dated January 10, 2005 ("1st non-final rejection") |
| B | Excerpt from the file history for Application No. 10/623,356 to the USPTO, said excerpt comprising a communication to the USPTO that is dated April 15, 2005 ("1st Amendment") |
| C | Excerpt from the file history for Application No. 10/623,356 to the USPTO, said excerpt comprising a communication from the USPTO that is dated July 8, 2005 ("2d non-final rejection") |
| D | Excerpt from the file history for Application No. 10/623,356 to the USPTO, said excerpt comprising a communication to the USPTO that is dated October 14, 2005 ("2d Amendment") |
| E | Webpage with internet address: https://www.commerce.gov/doc/us-patent-and-trademark-office#4/37.75/-99.49 |

Court of Federal Claims
Case No. 1:18-cv-00657-MMS

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS
THE FIRST AMENDED CLASS ACTION COMPLAINT [Dkt. No. 8]

Page |iv

# TABLE OF AUTHORITIES

## Cases

*Aerolineas Argentinas v. U.S.,* 77 F.3d 1564 (Fed. Cir. 1996) ............................... 31, 35

*Alvarado Hosp., LLC v. Price,* 868 F.3d 983 (Fed. Cir. 2017) ....................................... 35

*Anderson v. U.S.,* 344 F.3d 1343 (Fed. Cir. 2003) ........................................................ 23

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) .................................................................... 2, 37

*Auto Club Ins. Ass'n v. U.S.,* 103 Fed. Cl. 268 (2012) ................................................. 32

*Baker v. U.S.,* 642 Fed. Appx. 989 (Fed. Cir. 2016) ..................................................... 30

*Barrett Ref. Corp. v. U.S.,* 242 F.3d 1055 (Fed. Cir. 2001) .......................................... 19

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) ............................................ 2, 3, 37

*Board of Morristown v. East Tenn. Tel. Co.,* 115 F. 304 (6th Cir. 1902) ...................... 10

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,* 489 U.S. 141 (1989) .......................... 17

*Bowen v. Mass.,* 487 U.S. 879 (1988) ......................................................................... 33

*Bowman v. U.S.,* 35 Fed. Cl. 397 (1996) ...................................................................... 33

*Brown v. Duchesne,* 60 U.S. 183 (1857) ........................................................................ 8

*Casa De Cambio Comdiv S.A. de C.V. v. U.S.,* 48 Fed. Cl. 137 (2000) ........................ 33

*Commonwealth Edison Co. v. U.S.,* 46 Fed. Cl. 29 (2000) ........................................... 33

*Consolidated Fruit-Jar Co. v. Wright,* 94 U.S. 92 (1877) ............................................... 8

*Constant v. U.S.,* 929 F.2d 654 (Fed. Cir. 1991) .......................................................... 28

*Cunningham v. U.S.,* 748 F.3d 1172, 1176 (Fed. Cir. 2014) ........................................ 30

*D&N Bank v. U.S.,* 331 F.3d 1374 (Fed. Cir. 2003) ..................................................... 23

*Dabney v. U.S.,* No. 17-1144C, 2018 U.S. Claims LEXIS 788 (Fed. Cl. July 3, 2018) .............. 29

*Davis Wetlands Bank, LLC v. U.S.,* 114 Fed. Cl. 113 (2013) ....................................... 17

*De Graffenried v. U.S.,* 29 Fed. Cl. 384 (1998) ........................................................... 11

*Detroit v. Detroit Street Ry.,* 184 U.S. 368 (1902) ...................................................... 10

*Estate of Bogley v. U.S.,* 206 Ct. Cl. 695, 514 F.2d 1027 (Ct. Cl. 1975) ....................... 21

*Evans v. Jordan,* 8 F. Cas. 872 (C.C.D. Va. 1813) (No. 4,564) .................................... 13

*eVideo Owners v. U.S.,* 126 Fed. Cl. 95 (2016) ........................................................... 32

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,* 535 U.S. 722 (2002) ................ 9

*Figueroa v. U.S.,* 466 F.3d 1023 (Fed. Cir. 2006) ....................................................... 34

*Figueroa v. U.S.,* 57 Fed. Cl. 488 (2003) ............................................................... 24, 32

*Flo Healthcare Solutions, LLC v. Kappos,* 697 F.3d 1367 (Fed. Cir. 2012) .............. 17, 26

*Florida Prepaid Postsecondary Ed. Expense Bd. v. College Savings Bank,* 527 U.S. 627 (1999) .. .................................................................................................................................. 7, 8

*Gardner v. U.S.,* 439 Fed. Appx. 879 (Fed. Cir. 2011) ................................................ 35

*Gayler v. Wilder,* 51 U.S. (10 How.) 477 (1850) .......................................................... 13

Court of Federal Claims
Case No. 1:18-cv-00657-MMS

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS
THE FIRST AMENDED CLASS ACTION COMPLAINT [Dkt. No. 8]

Page |v

*Grady v. U.S.*, 656 Fed. Appx. 498 (Fed. Cl. 2016) ........................................................ 19

*Graham v. John Deere Co.*, 383 U.S. 1 (1966) ............................................................... 25

*Grant v. Raymond*, 6 Pet. 218, 8 L.Ed. 376 (1832) ........................................................ 17

*Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357 (Fed. Cir. 2013) ................................. 38

*Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229 (1984) ...................................................... 14

*Hercules, Inc. v. U.S.*, 516 U.S. 417 (1996) ................................................................... 19

*Higbie v. U.S.*, 778 F.3d 990 (Fed. Cir. 2015) ......................................................... 29, 30

*Highway Equip. Co. v. FECO, Ltd.*, 469 F.3d 1027 (Fed. Cir. 2006) ............................. 28

*Hollister v. Benedict & Burnham Mfg. Co.*, 113 U.S. 59 (1885) ...................................... 9

*Holmes v. U.S.*, 657 F.3d 1303 (Fed. Cir. 2011) ..................................................... 29, 30

*Horne v. Dep't of Agric.*, 569 U.S. 513 (2013) ............................................................... 36

*Horne v. Dep't of Agric.*, 576 U.S. ___, 135 S.Ct. 2419, 192 L.Ed.2d 388 (2015) .............. passim

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323 (Fed. Cir. 2012) ................................................................................................................ 3

*In re Fultz,* 9 F. Cas. 998 (C.C.D.C. 1853) (No. 5,156) ................................................. 13

*In re Yardley*, 493 F.2d 1389 (C.C.P.A. 1974) ............................................................... 27

*James v. Campbell*, 104 U. S. 356 (1882) ................................................................... 8, 9

*Kaiser Aetna v. U.S.*, 444 U.S. 164 (1979) ..................................................................... 5

*Keehn v. U.S.*, 110 Fed. Cl. 306 (2013) ......................................................... 16, 33, 34

*Keehn v. U.S.,* 541 Fed. Appx. 996 (Fed. Cir. 2013) ...................................................... 34

*Kendall v. Winsor*, 21 How. 322, 16 L.Ed. 165 (1859) ................................................... 17

*Krantz v. Olin*, 356 F.2d 1016 (C.C.P.A. 1966) ............................................................. 28

*Labatte v. U.S.*, 899 F.3d 1373, 2018 U.S. App. LEXIS 22848 (Fed. Cir. 2018) ............ 29

*Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982) ........................... 6

*Louisville Bridge Co. v. U.S.*, 242 U.S. 409 (1917) ........................................................ 15

*Louisville v. Cumberland Tel. & Tel. Co.,* 224 U.S. 649 (1912) ..................................... 10

*Markman v. Westview Instruments, Inc.,* 52 F.3d 967 (Fed. Cir. 1995) (*en banc*) ........... 19, 28

*McClurg v. Kingsland.* 42 U.S. (1 How.) 202 (1843) ...................................................... 13

*Moda Health Plan, Inc. v. U.S.*, 892 F.3d 1311 (Fed. Cir. 2018) ................................... 18

*Monogahela Navigation Co. v. U.S.*, 148 U.S. 312 (1893) ............................................. 10

*New York & Presbyterian Hosp. v. U.S.*, 881 F.3d 877 (Fed. Cir. 2018) ............. 18, 29, 31

*Norman v. U.S.*, 429 F.3d 1081 (Fed. Cir. 2005) ..................................................... 31, 33

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 584 U.S. ___, 138 S.Ct. 1365, 200 L.Ed.2d 671 (2018) .................................................................................. passim

*Ontario Power Generation, Inc. v. U.S.*, 369 F.3d 1298 (Fed. Cir. 2004) ..................... 34

*Pan Am. World Airways, Inc. v. U.S.*, 122 F. Supp. 682 (Ct. Cl. 1954) ........................ 32

*Patlex Corp. v. Mossinghoff*, 758 F.2d 594 (Fed. Cir. 1985) ........................................... 6

*Perry v. U.S.*, 294 U.S. 330 (1935) ............................................................................... 18

Court of Federal Claims
Case No. 1:18-cv-00657-MMS

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS
THE FIRST AMENDED CLASS ACTION COMPLAINT [Dkt. No. 8]

Page |vi

*Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55 (1998)..........................................................17, 26

*Rick's Mushroom Serv. v. U.S.*, 521 F.3d 1338 (Fed. Cir. 2008) ..........................29, 30

*Rinaldi v. U.S.*, 30 Fed. Cl. 164 (1993)......................................................................22

*Rocky Mountain Helium, LLC v. U.S.*, 841 F.3d 1320 (Fed. Cir. 2016)................29, 30

*Salahuddin v. Cuomo*, 861 F.2d 40 (2d Cir. 1988).....................................................38

*Sanders v. U.S.*, 252 F.3d 1329 (Fed. Cir. 2001) .................................................29, 30

*Seymour v. Osborne*, 78 U.S 516 (1870) ...................................................................17

*Smith Int'l, Inc. v. Hughes Tool Co.*, 718 F.2d 1573 (Fed. Cir. 1983) .........................5

*Summit Power Grp., LLC v. U.S.*, No. 17-1138C, 2018 U.S. Claims LEXIS 992 (Fed. Cl. Aug. 20, 2018).................................................................................................................30

*Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302 (2002).......................................................................................................................6

*Trauma Serv. Group v. U.S.*, 104 F.3d 1321 (Fed. Cir. 1997).....................................19

*Trustees of Dartmouth Coll. v. Woodward*, 17 U.S. (4 Wheat.) 518 (1819) ...............10

*Tuckahoe Canal Co. v. Tuckahoe & J. R. R. Co.,* 38 Va. 42 (1840) ...........................11

*United States v. Bormes*, 568 U.S. 6 (2012) ...............................................................36

*United States v. Fausto*, 484 U.S. 439 (1988) ............................................................36

*United States v. Mitchell*, 463 U.S. 206 (1983) ..........................................................29

*United States v. White Mt. Apache Tribe*, 537 U.S. 465 (2003) .....................18, 29, 31

*United States v. Winstar Corp.*, 518 U.S. 839 (1996)............................................17, 30

*West River Bridge Co. v. Dix,* 47 U.S. 507 (1848) ...............................................passim

*Wilson v. U.S.*, 405 F.3d 1002 (2005) .........................................................................35

*Zoltek Corp. v. U.S.*, 442 F.3d 1345 (Fed. Cir. 2006) (*per curiam*), *reh'g en banc denied*, 464 F.3d 1335 (Fed. Cir. 2006)...................................................................................11, 16

Court of Federal Claims
Case No. 1:18-cv-00657-MMS

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS
THE FIRST AMENDED CLASS ACTION COMPLAINT [Dkt. No. 8]

Page |vii

## Statutes

28 U.S.C. §1491(a)(1) .................................................................. 4, 18, 33

28 U.S.C. §1498(a) ............................................................................. 16

35 U.S.C. §§ 101 *et seq.* .................................................................... 20

35 U.S.C. §111(a)(3) ........................................................................... 35

35 U.S.C. §131 ................................................................................... 20

35 U.S.C. §132 ................................................................................... 20

35 U.S.C. §141(c) .......................................................................... 15, 31

35 U.S.C. §142 ................................................................................... 15

35 U.S.C. §151 ................................................................................... 34

35 U.S.C. §151(b) ............................................................................... 35

35 U.S.C. §154 ................................................................................... 35

35 U.S.C. §2(a)(1) .............................................................................. 12

35 U.S.C. §261 ..................................................................................... 5

35 U.S.C. §271 ................................................................................... 16

35 U.S.C. §282 ................................................................................... 26

35 U.S.C. §3(a)(1) .............................................................................. 25

35 U.S.C. §3(a)(2)(A) ......................................................................... 25

35 U.S.C. §314 ................................................................................... 25

35 U.S.C. §319 ................................................................................... 15

35 U.S.C. §41 ..................................................................................... 34

35 U.S.C. §41(b) ................................................................................ 35

35 U.S.C. §42(d) ................................................................................ 36

## Regulations

37 C.F.R. §1.26 .................................................................................. 36

37 C.F.R. §1.311 ................................................................................ 35

Court of Federal Claims
Case No. 1:18-cv-00657-MMS

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS
THE FIRST AMENDED CLASS ACTION COMPLAINT [Dkt. No. 8]

Page |viii

## Rules

RCFC 12(b)(1) .......................................................................................................... 2, 3
RCFC 12(b)(6) .......................................................................................................... 2, 3
RCFC 12(f) ......................................................................................................... 3, 37, 38
RCFC 8 ................................................................................................................... 3, 37
RCFC 8(a) ............................................................................................................. 37, 38
RCFC 8(d)(1) ............................................................................................................... 37

## Constitutional Provisions

U.S. Const., Amend. 5 ............................................................................................. 6, 14

## Treatises

Restatement (Second) of Contracts § 22(1) (1981) ..................................................... 21
Restatement (Second) of Contracts § 50 cmt. a. (1981) .............................................. 24

## Other Authorities

Mossoff, *Patents as Constitutional Private Property: The Historical Protection of Patents Under the Takings Clause*, 87 Boston Univ. L.R. 689 (2007) ............................................................ 13

Court of Federal Claims
Case No. 1:18-cv-00657-MMS

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS
THE FIRST AMENDED CLASS ACTION COMPLAINT [Dkt. No. 8]

Page |ix

## I.    INTRODUCTION AND STATEMENT OF THE CASE

This is a class action that seeks Just Compensation for the Taking of inventors' and patent owners' recognized patent property rights by the United States of America (the "Defendant" or "Government"). Dkt. 7, ¶ 1. This Taking was effectuated by the United States Patent and Trademark Office, hereinafter, "USPTO") and by the alleged authority of recently created post-grant proceedings of the Leahy-Smith America Invents Act ("AIA") and the Patent Trial and Appeal Board ("PTAB"). *Id.* Christy alleges that the USPTO's invalidation of its and the class members' patent claims was a Taking without Just Compensation in violation of the Fifth Amendment of the Constitution. *E.g.* Dkt. 7, ¶¶ 1, 93-106.

Additionally, this case seeks damages for the Government's breach of contract (express or implied-in fact) by failing to maintain in force the subject patent claims for the terms prescribed in the patent grants for the relevant claims, including the recovery of attorney fees expended defending those same patents in post-grant proceedings, any investments made in the inventions underlying those patents (those investments being substantial), and all fees paid to the Government for the issuance of those patents. *E.g.* Dkt. 7, ¶¶ 1, 107-151. In the alternative to the breach of contract claims, Christy seeks to recover fees that were paid by inventors and patent owners to the USPTO because these fees were illegally exacted from Christy and class members when the issuance and maintenance fees were paid, and an invalid patent was granted. *E.g.* Dkt. 7, ¶¶ 1, 168-176.[1]

---

[1] Christy does not take issue with the facts the Government articulates regarding (1) the filing of Christy's complaint, (2) Christy's ownership of United States Patent Number 7,082,640 (Christy's "patent"), (3) Christy's payment of issuance and maintenance fees, or (4) the events leading to the invalidation of Christy's patent. *See* Motion, p. 2.

Court of Federal Claims
Case No. 1:18-cv-00657-MMS

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS
THE FIRST AMENDED CLASS ACTION COMPLAINT [Dkt. No. 8]
Page |1

For the reasons below, the Government's Motion should be denied in all respects.

## II.     STANDARD OF REVIEW

### A.     RCFC 12(B)(1)

Plaintiff agrees with the standard articulated by the Government in Argument Section I.A. regarding RCFC 12(b)(1) with the exception that Christy has, in fact, demonstrated that its claims fall within the subject matter of this Court. This is demonstrated below with respect to each of Counts I, II, III, IV, and VI[2] of the First Amended Complaint ("Christy's Claims") and thus the Court has subject matter to adjudicate these claims.

### B.     RCFC 12(B)(6)

Plaintiff generally agrees with the standard articulated by the Government in Argument Section I.B. regarding RCFC 12(b)(6) and the *Iqbal/Twombly* standards governing the same, but Christy disagrees with the Government's conclusion that Christy's Claims are devoid of factual statements exceeding those standards. To survive a Rule 12(b)(6) motion, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

[2] Christy does not oppose the Government's Motion with respect to Count V. *See, infra,* Section III.F.

Court of Federal Claims
Case No. 1:18-cv-00657-MMS

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS
THE FIRST AMENDED CLASS ACTION COMPLAINT [Dkt. No. 8]
Page |2

defendant is liable for the misconduct alleged." *Id.* "[T]he plausibility requirement is not akin to a probability requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal that the defendant is liable for the misconduct alleged." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1341 (Fed. Cir. 2012). (citing *Twombly*). Indeed, as outlined below, each of Christy's Claims state a claim upon which relief can be granted.[3]

### C. RCFC 8 AND 12(F)

The standards articulated by the Government in Argument Section I.C. regarding RCFC 8 and RCFC 12(f) are generally accurate. However, the fact that "[t]he short and plain statement under Rule 8(a)(2) must give the defendant fair notice of what the claim is and the grounds upon which it rests," *Twombly,* 550 U.S. at 555 (citation omitted), does not necessitate any conclusion that Christy's claims are "prolix" or otherwise redundant or immaterial with respect to the "discussions under the headings 'Nature of the Action,' 'Background Information,' 'The Nature and Purpose of Patents,' and 'The Genesis of Maintenance Fees.' *See* Motion, p. 23. These sections lay the groundwork for contesting the Government's predictable arguments under both RCFC 12(b)(1) and 12(b)(6). As argued below, all of this information is provided to contextualize and legitimize Christy's Claims, including the argument that patents are private property for which "just compensation" is due upon a taking.

---

[3] Excluding Count V. *See, infra*, Section III.F.

Court of Federal Claims
Case No. 1:18-cv-00657-MMS

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS
THE FIRST AMENDED CLASS ACTION COMPLAINT [Dkt. No. 8]
Page |3

## III. ARGUMENT

At the outset, each of Christy's Claims are ones for which the Government has explicitly and indisputably waived its sovereign immunity. Notably, the Government merely bootstraps its urgings in Argument, Section II, with conclusions it draws later in its papers;[4] however the Government provides no independent basis for denying that it waived sovereign immunity. Instead, the Government acknowledges Christy's plea that "[t]his Court has jurisdiction over this action . . . pursuant to 28 U.S.C. §1491(a)(1) (the "Tucker Act")," because the First Amended Complaint is "founded upon (1) express or implied contract claims to which the United States is a party (2) Takings Clause of the Fifth Amendment, and (3) a Violation of Due Process (exaction)." Dkt. No. 7 ¶ 18. As shown below, these bases are adequately pled and thus constitute a waiver of sovereign immunity.

### A. COUNT I ADEQUATELY ALLEGES A TAKING UNDER THE FIFTH AMENDMENT.

Christy alleges that its patent is a recognized "property right," and the invalidation of said patent deprived Christy "of the value of the patented technologies, which includes expected royalties and other payments related to use of the patents, [its] investments in the patented technologies, the issuance and maintenance fees, and the attorney fees spent in defending the PGP processes that invalidated the claims." Dkt. 7 ¶¶ 100, 102. "At the time of [its] substantial investments into the patented technologies, the [Christy] had reasonable investment backed expectations in receiving compensation for their claims—[the patent] having been duly issued by the USPTO after substantial examination and being presumed valid—as supported by the policy

---

[4] These include: patents are not private property subject to the Takings Clause; no express or implied-in-fact contract was formed between the Government and Christy; and no exaction was levied. *See* Motion, Argument, Sections III-VII.

Court of Federal Claims
Case No. 1:18-cv-00657-MMS

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS
THE FIRST AMENDED CLASS ACTION COMPLAINT [Dkt. No. 8]
Page | 4

of granting patents to encourage investment backed risks into technologies." *Id.* ¶ 102. Christy

"had reasonable investment-backed expectations in receiving a market rate of return on the capital

they invested in their patented technologies (such investment having been encouraged by

Defendant and then put to the public's use), their payment of issuance and maintenance fees, and

attorney fees spent in defending the invalidated claims. *Id.* It further alleges that its patent was

taken without just compensation, and Christy was damaged as a result. *Id.* ¶¶ 99-106.

A patent is a property right, and it includes the "right to exclude others" which is "one of

the most essential sticks in the bundle of rights that are commonly characterized as property."

*Kaiser Aetna v. U.S.*, 444 U.S. 164, 176 (1979). A patent has the attributes of personal property.

*See* 35 U.S.C. §261.

> The patent is issued in the name of the United States under the seal of the United
> States Patent and Trademark Office, and is either signed by the Director of the
> USPTO or is electronically written thereon and attested by an Office official. The
> patent contains a grant to the patentee, and a printed copy of the specification and
> drawing is annexed to the patent and forms a part of it. The grant confers "the right
> to exclude others from making, using, offering for sale, or selling the invention
> throughout the United States or importing the invention into the United States" and
> its territories and possessions for which the term of the patent shall be generally 20
> years from the date on which the application for the patent was filed in the United
> States or, if the application contains a specific reference to an earlier filed
> application under 35 U.S.C. 120, 121 or 365(c), from the date of the earliest such
> application was filed, and subject to the payment of maintenance fees as provided
> by law.

https://www.uspto.gov/patents-getting-started/general-information-concerning-patents#heading-

24 (last accessed April 6, 2018).

Without the right to exclude, "the express purpose of the Constitution and Congress, to

promote the progress of the useful arts, would be seriously undermined." *Smith Int'l, Inc. v. Hughes

Tool Co.*, 718 F.2d 1573, 1577-1578 (Fed. Cir. 1983). This right is implemented by the licensing

Court of Federal Claims
Case No. 1:18-cv-00657-MMS

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS
THE FIRST AMENDED CLASS ACTION COMPLAINT [Dkt. No. 8]
Page |5

and exploitation of patents. *See Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 599-600 (Fed. Cir. 1985) ("The encouragement of investment-based risk is the fundamental purpose of the patent grant, and is based directly on the right to exclude."). That right was taken from Christy without compensation.

### 1. Christy Indisputably Has A Property Right Within the Meaning of the Takings Clause.

A "classic taking [is one] in which the government directly appropriates private property for its own use." *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302, 324 (2002) (brackets and internal quotation marks omitted). That is axiomatic to the Fifth Amendment, which states: "[N]or shall private property be taken for public use, without just compensation." U.S. Const., Amend. 5. In the case of real property, a government appropriation is a *per se* taking that mandates just compensation. *See Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 426-435 (1982). But that is not the only type of private property governed by the Fifth Amendment—it protects any "private property."

"The colonists brought the principles of Magna Carta with them to the New World, including that charter's protection against uncompensated takings of personal property." *Horne v. Dep't of Agric.*, 576 U.S. ___, 135 S.Ct. 2419, 2426, 192 L.Ed.2d 388, 397 (2015) (outlining the history of those principles under the United State Constitution).

Nothing in this history suggests that personal property was any less protected against physical appropriation than real property. As this Court summed up in *James v. Campbell*, 104 U.S. 356, 358 (1882), a case concerning the alleged appropriation of a patent by the Government:

'[A patent] confers upon the patentee an exclusive property in the patented invention which cannot be appropriated or used by the government itself, without just compensation, any more than it can appropriate or use without compensation land which has been patented to a private purchaser.'

Court of Federal Claims
Case No. 1:18-cv-00657-MMS

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS
THE FIRST AMENDED CLASS ACTION COMPLAINT [Dkt. No. 8]
Page | 6

Prior to this Court's decision in *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 43 S. Ct. 158, 67 L. Ed. 322 (1922), the Takings Clause was understood to provide protection only against a direct appropriation of property—personal or real. *Pennsylvania Coal* expanded the protection of the Takings Clause, holding that compensation was also required for a 'regulatory taking'—a restriction on the use of property that went 'too far.' *Id.*, at 415, 43 S. Ct. 158, 67 L. Ed. 322. And in *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 124, 98 S. Ct. 2646, 57 L. Ed. 2d 631 (1978), the Court clarified that the test for how far was 'too far' required an 'ad hoc' factual inquiry. That inquiry required considering factors such as the economic impact of the regulation, its interference with reasonable investment-backed expectations, and the character of the government action.

*Horne*, 135 S.Ct. at 2427, 192 L.Ed.2d at 397-398.

Despite this clear (and recent) law, the Government centers its critique of Christy's Count I on the idea that no Court has found that patents are property rights subject to a claim of Just Compensation under the Fifth Amendment.[5] But this premise has long been untrue. On the one hand, the Government was unable to point to a single case where patents were held to be property immune from a constitutional taking and the related Just Compensation to be paid for that taking. On the other hand, the United States Supreme Court in *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC* has recently again acknowledged that there exist precedent holding that patents are property subject to a Fifth Amendment taking. 584 U.S. ___, 138 S.Ct. 1365, 200 L.Ed.2d 671 (2018). There, the Supreme Court emphasized that its ***decision should not be misconstrued as suggesting that patents are not property for purposes of*** the Due Process Clause or ***the Takings***

---

[5] Indeed, in *Florida Prepaid,* the Supreme Court held that patents are a species of private property. 527 U.S. at 642. Specifically, the *Florida Prepaid* Court held that "[p]atents . . . have long been considered a species of property. As such, they are surely included within the 'property' of which no person may be deprived by a State without due process of law." *Id.* While the Government attempts to distinguish this case because it ultimately turned on a question of Due Process, that does not detract from its holding that patents are a species of property.

Court of Federal Claims
Case No. 1:18-cv-00657-MMS

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS
THE FIRST AMENDED CLASS ACTION COMPLAINT [Dkt. No. 8]
Page |7

Clause." *Id.,* at 1379, 200 L.Ed.2d at 686 (*emphasis* added). In doing so, the court also cited to precedent showing that patents are in fact private property rights under the Takings Clause. *Id.* (*citing Florida Prepaid*, 527 U.S. at 642; *James v. Campbell*, 104 U.S. 356, 358 (1882)).[6]

This statement was not made whimsically—the Supreme Court made this clarification because patents have been Fifth Amendment private property since the 1800s. The early case of *Brown v. Duchesne*, 60 U.S. 183 (1857), emphasizes this point. In that case, the defendant sought compensation for a foreign vessel's alleged use of the patentee's property right. *Id.* at 193. The *Brown* Court ultimately held that the taking cannot be affected by foreign vessels outside the United States because the Patent Act does not "embrace improvements on foreign ships, lawfully made in their own country, which have been patented here." *Id.* at 196. However, it clearly held that "[b]y the laws of the United States, the rights of a party under a patent are his private property; and by the Constitution of the United States, *private property cannot be taken for public use without just compensation.*" *Id*. at 197 (*emphasis* added). Twenty years later, the Supreme Court held "[a] patent for an invention is as much property as a patent for land. The right rests on the same foundation, and is surrounded and protected by the same sanctions." *Consolidated Fruit-Jar Co. v. Wright*, 94 U.S. 92, 96 (1877).[7] *James*, *supra*, which was decided five years later, is in

---

[6] The Government argues that the Court's statement in *Oil States* is valueless because the plaintiff in that case did not raise the issue of the Takings Clause. Motion at 7. While it is true that the Takings Clause was not raised, *Oil States* does not stand for the position that the Supreme Court would deny that the Takings Clause applies to patents which were revoked by the government in the IPR process. The law cited below moots that position.

[7] The Government cannot credibly contend that patents for land are not subject to Just Compensation from the Government in the event of a Taking. *Horne*, 135 S.Ct. at 2425-2426, 192 L.Ed.2d at 395-396.

Court of Federal Claims
Case No. 1:18-cv-00657-MMS

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS
THE FIRST AMENDED CLASS ACTION COMPLAINT [Dkt. No. 8]
Page |8

accord, and explicitly states that patents are private property that cannot be taken without just compensation any more than land. *James,* 104 U.S. at 358.[8]  Indeed, "[i]t was authoritatively declared in *James v. Campbell*, 104 U.S. 356, that the right of the patentee, under letters patent for an invention granted by the United States, was exclusive of the government of the United States as well as of all others, and stood on the footing of all other property, the right to which was secured, as against the government, by the constitutional guaranty which prohibits the taking of private property for public use without compensation . . . ." *Hollister v. Benedict & Burnham Mfg. Co.*, 113 U.S. 59, 67 (1885).  The law of *Brown, Consolidated Fruit-Jar, James,* and *Hollister* has not been abrogated, and in fact, later cases fortify these holdings. *See, e.g., Horne*, 135 S.Ct. at 2425-27, 192 L.Ed.2d at 395-396; *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,* 535 U.S. 722, 739 (2002) (relying on "regulatory takings" standard by holding that patent rights constitute "the legitimate expectations of inventors in their property").

In the end, "people . . . do not expect their property, real or personal, to be actually occupied or taken away." *Horne*, 135 S.Ct. at 2427, 192 L.Ed.2d at 398.  That is true regardless of the label given to that private property, including "public franchise."  The Government correctly classifies the granting of patent property as a grant of a public franchise, pursuant to the holding of *Oil States*. *See* Motion, pp. 7-8, relying on *Oil States*.  Christy acknowledges that.  *See Oil States Energy Servs., LLC*, 138 S.Ct. at 1373; 200 L.Ed.2d at 680 ("Specifically, patents are 'public franchises'

---

[8] The Defendant argues that the *Campbell* decision is inapplicable because the Court "never decided whether a patentee could seek compensation from the government for a taking of its patents rights." Motion at 7. But the actual language of *Campbell* contradicts the Government's position. That court affirmatively stated "we have no doubt" that the appropriation or use by the government of the patent property must be justly compensated. *Id.* at 357-358.

Court of Federal Claims
Case No. 1:18-cv-00657-MMS

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT [Dkt. No. 8]
Page |9

that the Government grants 'to inventors of new and useful improvement.'"). The *Oil States* court likened patents to franchises like toll bridge, railroad, and telegraph line franchises. *See id.* at 1375, 200 L.Ed.2d at 681-682.

But even if patents are considered public franchises like those for railroads and bridges, they are still property for the purposes of the Takings Clause. The case of *West River Bridge Co. v. Dix* made clear and held that franchises, like those for toll bridges, are property (and specifically, contracts). 47 U.S. 507, 531-535 (1848);[9] *see also Louisville v. Cumberland Tel. & Tel. Co.,* 224 U.S. 649, 661 (1912); *Detroit v. Detroit Street Ry.*, 184 U.S. 368, 394 (1902); *Board of Morristown v. East Tenn. Tel. Co.*, 115 F. 304, 307 (6th Cir. 1902). *Oil States* also emphasizes that: "Patents convey only a specific form of property right—a public franchise. And patents are 'entitled to protection as any other property, *consisting of a franchise*.'" 138 S.Ct. at 1375, 200 L.Ed.2d at 682 (citations omitted; *emphasis* original). "It is laid down, also, by Justice Story, that 'a grant of a franchise is not in point of principle distinguishable from a grant of any other property.'" *West River Bridge Co.*, 47 U.S. at 543 (<u>citing</u> *Trustees of Dartmouth Coll. v. Woodward*, 17 U.S. (4 Wheat.) 518, 684 (1819).

That principle, as applied in the context of the Fifth Amendment and Takings law, is expressed in *Monogahela Navigation Co. v. U.S.* in which the State of Pennsylvania gave a private company authority to build locks and dams on the Monogahela River. 148 U.S. 312, 324 (1893). The United States initiated condemnation proceedings against the company and a valuation was

---

[9] In that case, the State of Vermont had issued an exclusive franchise for one hundred years to a company to build a toll bridge over a river in Vermont. Eminent domain was used to take the that toll bridge and convert it into a free bridge. *Id.*

Court of Federal Claims
Case No. 1:18-cv-00657-MMS

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS
THE FIRST AMENDED CLASS ACTION COMPLAINT [Dkt. No. 8]
Page | 10

undertaken to determine the amount of just compensation to be paid for the locks and dams. The Supreme Court held that the taking of the franchise was also subject to the provisions of the Fifth Amendment demanding the payment of just compensation. *Id.* at 336-337. The Court stated, "[i]f a man's house must be taken, that must be paid for; and, if the property is held and improved under a franchise from the State, with power to take tolls, that franchise must be paid for, because it is a substantial element in the value of the property taken." *Id.* at 337. This further supports the Supreme Court's precedential holding that patents are property due Just Compensation if Taken.[10] *See also Tuckahoe Canal Co. v. Tuckahoe & J. R. R. Co.,* 38 Va. 42, 77-78 (1840) (just compensation given for taking of a railroad franchise); *West River Bridge Co.*, 47 U.S. at 543 (explaining "that the corporation as a franchise, and all its powers as franchises, both being property, may for these and like reasons, in proper cases, be taken for public use" and citing to a collection of cases where franchises were taken and just compensation given).

Like the company in *Monogahela*, and the other cases cited herein, Christy's franchise— its patent—is subject to the Takings Clause of the Fifth Amendment. The Plaintiffs deserve just compensation for those rights, which were taken in the Post-Grant Proceedings (PGP) that are at the center of this lawsuit.

---

[10] Christy acknowledges two recent Federal Circuit cases holding that an infringement action against the Government is not governed by the Takings Clause. *See Zoltek Corp. v. U.S.*, 442 F.3d 1345 (Fed. Cir. 2006) (*per curiam*), *reh'g en banc denied*, 464 F.3d 1335 (Fed. Cir. 2006); *De Graffenried v. U.S.*, 29 Fed. Cl. 384 (1998). Importantly, these cases are distinguishable because (1) they were limited to infringement actions, *see id.* and Section III.A.3, *infra*, and (2) the present case concerns invalidation of Christy's patents, and the opinions were from the Federal Circuit, not the Supreme Court, which has ample precedent contradicting these two decisions.

Court of Federal Claims
Case No. 1:18-cv-00657-MMS

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS
THE FIRST AMENDED CLASS ACTION COMPLAINT [Dkt. No. 8]
Page |11

### 2. Christy's Private Property Rights Were Indisputably Granted, Vested, And Later Taken For Public Use.

It cannot be disputed that Christy was granted its patent by the Government. Dkt. 7, ¶ 59. "Under the Patent Act, the PTO is 'responsible for the granting and issuing of patents.'" *Oil States Energy Servs., LLC*, 138 S.Ct. at 1370, 200 L.Ed.2d at 677 (<u>citing</u> 35 U.S.C. §2(a)(1)). The Government also cannot refute the fact that it is the one that took Christy's patent (by invalidating it). Dkt. 7 ¶¶ 71-73.[11] The Government concedes that Christy's patent once existed but claims it was later "canceled." Motion, p. 9. Importantly, the Government states that after an IPR that results in invalidation "the patent no longer exists; i.e., it is no longer property." Motion, p. 8. The natural consequence of this statement is that the Government concedes that the property—Christy's patent—once existed but was later taken away.

"The grant of a patent is a matter between 'the public, who are the grantors, and . . . the patentee.'" *Oil States Energy Servs., LLC,* 138 S.Ct. at 1373, 200 L.Ed.2d at 680 (citations omitted). Indeed, "[t]he Board considers the same statutory requirements that the PTO considered when granting the patent." *Id.* at 1374, 200 L.Ed.2d at 681 (same). In other words, the public is taking back what the public granted in the first instance. Thus, the subject patent that is invalidated in a PGP, here, Christy's, is undoubtedly put back into the public domain. The "public" grants the patent and the inventions once protected by the patents go back to the "public"—where else would they go?

---

[11] Importantly, the invalidation of patents by the government is very different from invalidation in an Article III Court, where it is a private person that claims invalidity or indefiniteness and is successful in invalidating it such that there is no constitutional taking.

Court of Federal Claims
Case No. 1:18-cv-00657-MMS

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS
THE FIRST AMENDED CLASS ACTION COMPLAINT [Dkt. No. 8]
Page | 12

Not only was the patent right granted, but that right was vested and perfected in Christy. *See* Mossoff, *Patents as Constitutional Private Property: The Historical Protection of Patents Under the Takings Clause*, 87 Boston Univ. L.R. 689, 702-703 (2007) and related footnotes (discussing *McClurg v. Kingsland*. 42 U.S. (1 How.) 202 (1843)). Professor Mossoff cites to his research confirming that patents are vested (and perfected) in the patent owner upon grant of the patent. *See id.*, at fns. 59-67; *see also, e.g., Gayler v. Wilder*, 51 U.S. (10 How.) 477, 493 (1850) (recognizing that an inventor is "vested by law with an inchoate right . . . which he may perfect and make absolute" by obtaining a patent); *Evans v. Jordan*, 8 F. Cas. 872, 873-874 (C.C.D. Va. 1813) (No. 4,564) (Marshall, Circuit Justice) (explaining that an inventor has an "inchoate property which [is] vested by the discovery" and which is ultimately "perfected by the patent"). In fact, even the "repeal [of a patent statute] can have no effect to impair the right of property then existing in a patentee, or his assignee, according to the well-established principles of th[e Supreme C]ourt." *McClurg,* 42 U.S. at 206.[12] Thus, the Government's claim that Christy's patent should be treated as it never existed is meritless. Such a finding would undermine the policy of encouraging investments in the patented technologies with the expectation that those investments are protected, at least for the patent term. If any patent can be invalidated without just compensation, to hold otherwise would mean patentees get no assurance that their risked investments are protected. In other words, the entire policy behind the Patent Act fails. That cannot be the correct conclusion.

---

[12] *See also In re Fultz,* 9 F. Cas. 998, 1001 (C.C.D.C. 1853) (No. 5,156) (the court had "every reason to infer that [the patent] was intended to be saved and secured to the fullest extent" despite a repeal of the patent act under which the patent issued).

Court of Federal Claims
Case No. 1:18-cv-00657-MMS

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS
THE FIRST AMENDED CLASS ACTION COMPLAINT [Dkt. No. 8]

Page |13

It is of no consequence that "[p]atent claims are granted subject to the qualification that the PTO has 'the authority to reexamine—and perhaps cancel—a patent claim' in an inter partes review," *Oil States Energy Servs., LLC,* 138 S.Ct. at 1374, 200 L.Ed.2d at 681 (citations omitted). In other words, it does not matter that there is only a "presumption of validity" (implying the possibility of invalidation) attached to the issued patent. After all, every form of property rights is granted with qualifications. The most obvious such qualification is that all private property is subject to eminent domain, *i.e.,* a taking by the Government. That fact is long established. *See, e.g., Horne*, 135 S.Ct. at 2426, 192 L.Ed.2d at 396-397; U.S. Const., Amend. 5; *see also Hawaii Hous. Auth. v. Midkiff,* 467 U.S. 229, 240 (1984); *West River Bridge Co.*, 47 U.S. at 532.

The *West River Bridge* court explained the interplay between property ("contracts" between the government and the grantee) and such conditions placed on those properties:

> Now it is undeniable, that the investment of property in the citizen by the government, whether made for a pecuniary consideration or founded on conditions of civil or political duty, is a contract between the state, or the government acting as its agent, and the grantee; and both the parties thereto are bound in good faith to fulfil it. But into all contracts, whether made between states and individuals or between individuals only, ***there enter conditions which arise not out of the literal terms of the contract itself; they are superinduced by the preexisting and higher authority of the laws of nature, of nations, or of the community to which the parties belong; they are always presumed, and must be presumed, to be known and recognized by all, are binding upon all, and need never, therefore, be carried into express stipulation***, for this could add nothing to their force. Every contract is made in subordination to them, and must yield to their control, as conditions inherent and paramount, wherever a necessity for their execution shall occur. Such a condition is the right of eminent domain.

*West River Bridge Co.*, 47 U.S. at 532-533 (emphasis added).

*Oil States* also emphasizes that all property, and specifically, franchises, can be qualified. "For example, Congress can grant a franchise that permits a company to erect a toll bridge, but qualify the grant by reserving its authority to revoke or amend the franchise." *Oil States Energy*

Court of Federal Claims
Case No. 1:18-cv-00657-MMS

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS
THE FIRST AMENDED CLASS ACTION COMPLAINT [Dkt. No. 8]
Page | 14

*Servs., LLC,* 138 S.Ct. at 1375, 200 L.Ed.2d at 681 (<u>citing</u> *Louisville Bridge Co. v. U.S.*, 242 U.S. 409, 421 (1917) (collecting cases)). "Even after the bridge is built, the Government can exercise its reserved authority through legislation or an administrative proceeding." *Id.* at 1375, 200 L.Ed.2d at 682. Patents, as franchises subject to PGPs, for instance, are no different. *C.f., id.* But just as with any other property, that does not mean that just compensation is not due if a patent is taken.

### 3.    Christy's Claim Is Not A Veiled Appeal Of The Board's Decision.

The Government contends that "Christy's claim is really an appeal of the Board's decision." Motion, pp. 5-6. This is wrong, and for three reasons. First, the Taking alleged here does not rest on "dissatisf[action] with the final written decision of the Patent Trial and Appeal Board under section 318(a) or 328(a)." 35 U.S.C. §141(c). Christy does not plead that anywhere, and the Government cannot re-write the operative complaint to fit within its legal theories for dismissal. This is not an appeal of the invalidity finding. Instead, it is a lawsuit for just compensation for the taking levied by that finding. *See* Dkt. 7 ¶¶ 67-74. That is to say, Christy does not contend that the Government does not have the ability to invalidate its patent claims; it contends only that it should be compensated justly for that taking. *Id.*

Second, there is no current jurisdiction under 35 U.S.C. §319 and §141(c) for Christy's claims. The "statutory scheme" that allegedly compels Christy to the Federal Circuit does not provide jurisdiction for any of Christy's pending claims. 35 U.S.C. §142 mandates that those dissatisfied with the final written decision must file a notice of appeal within sixty (60) days of the final written decision. *Id.* But the Board issued its final written decision on June 17, 2016, Dkt. 7

Court of Federal Claims
Case No. 1:18-cv-00657-MMS

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS
THE FIRST AMENDED CLASS ACTION COMPLAINT [Dkt. No. 8]
Page |15

¶¶ 69-70, 73-74, which means that 35 U.S.C. § 319 and § 141(c) no longer operate or govern, accordingly.

Third, the additional authority cited by the Government pertains only to claims of patent *infringement* by the Government. *See* 28 U.S.C. §1498(a); *see also Keehn v. U.S.*, 110 Fed. Cl. 306, 321 (2013); *Zoltek Corp.*, 442 F.3d at 1350-1353. 28 U.S.C. §1498(a) gives jurisdiction to this Court "[w]henever an invention described in and covered by a patent of the United States is *used or manufactured* by or for the United States without license of the owner thereof or lawful right to use or manufacture the same. . . ."[13] *Id.* (emphasis added). That refers to "the right to exclude others from *making, using*, offering for sale, or selling the invention" on the face of the patent certificate. Dkt. 7 ¶ 5. For these type of infringement claims, 28 U.S.C. § 1498(a) provides "the owner's remedy shall be by action against the United States in the United States Court of Federal Claims." *Id.* Christy does not allege infringement by the Government, and thus, its related argument fails. For these reasons, Christy's claims are not a disguised appeal of the Board's decision.

For all the reasons above, the Government's arguments for dismissal of Christy's Count I fail as a matter of law.

---

[13] The statute authorizing infringement suits against the public is at 35 U.S.C. §271, which states that "whoever without authority *makes, uses*, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." This again gives jurisdiction against non-government persons in federal district court.

Court of Federal Claims
Case No. 1:18-cv-00657-MMS

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS
THE FIRST AMENDED CLASS ACTION COMPLAINT [Dkt. No. 8]

Page | 16

**B.  COUNTS II THROUGH IV SUFFICIENTLY PLEAD THAT ALL ELEMENTS OF A VALID CONTRACT WERE SATISFIED BETWEEN CHRISTY AND THE GOVERNMENT.**

Counts II to VI adequately plead the elements of a valid contract between Christy and the Government.  The issuance of a patent represents the culmination of a negotiation between the inventor and the USPTO that results in a "carefully crafted bargain."  *See Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 63 (1998) ("[T]he patent system represents a carefully crafted bargain that encourages both the creation and the public disclosure of new and useful advances in technology, in return for an exclusive monopoly for a limited period of time."); *see also Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 150-151 (1989); *Seymour v. Osborne*, 78 U.S 516, 533-534 (1870); *Kendall v. Winsor*, 21 How. 322, 327-328, 16 L.Ed. 165 (1859); *Grant v. Raymond*, 6 Pet. 218, 242, 8 L.Ed. 376 (1832).  Undeniably, one of the reasons for creating the Federal Circuit Court of Appeals was to ensure that the deal struck between an inventor and the Government was not a false one.  *See Flo Healthcare Solutions, LLC v. Kappos*, 697 F.3d 1367, 1380-1381 (Fed. Cir. 2012) (J. Plager's Additional Comments).[14]

When the Government enters into a contract, it is treated as any other private party with respect to its rights and responsibilities.  *See United States v. Winstar Corp.*, 518 U.S. 839, 887 fn 32 (1996); *Davis Wetlands Bank, LLC v. U.S.*, 114 Fed. Cl. 113, 120 (2013) ("Common law governs the contractual relationship between a private party and the United States.").  The one

---

[14] "Unless the inventor can have reasonable certainty, that, once granted, his patent is (1) valid and (2) enforceable, then the rights conveyed by a patent are illusory, the government has defaulted on its responsibilities under the <u>patent contract</u>, the patent is worthless, and ultimately, the patent system becomes a cruel hoax." (Quoting former USPTO Director Donald Banner testimony before the *Subcomm. on Courts, Civil Liberties, and the Administration of Justice of the Comm. of the Judiciary*, 97th Cong. 177-78 (1981); <u>emphasis</u> added).

Court of Federal Claims
Case No. 1:18-cv-00657-MMS

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS
THE FIRST AMENDED CLASS ACTION COMPLAINT [Dkt. No. 8]
Page | 17

exception is, of course, that the Government must give permission to be sued by a contract partner. *See Perry v. U.S.*, 294 U.S. 330, 352 (1935). The Tucker Act provides that permission. *See* 28 U.S.C. §1491(a)(1); *see also New York & Presbyterian Hosp. v. U.S.*, 881 F.3d 877, 881 (Fed. Cir. 2018); *United States v. White Mt. Apache Tribe*, 537 U.S. 465, 472 (2003).

  ***Importantly, the case of West River Bridge Co. v. Dix held that franchises, like those for toll bridges, are property, and specifically, contracts.*** 47 U.S. at 531-535. In this context, and in light of the Supreme Court's recent determination in *Oil States* that a patent constitutes a franchise right, the Government's assertion that a patent does not constitute a contract fails as a matter of law. *Id.* at 532 ("Now it is undeniable, that the investment of property in the citizen by the government, whether made for a pecuniary consideration or founded on conditions of civil or political duty, is a contract between the state, or the government acting as its agent, and the grantee; and both the parties thereto are bound in good faith to fulfil it.") (*emphasis* added). Because the patents are apparently franchises, this should be the end of the inquiry on Christy's contract claims. A franchise, like the patent here, is a contract by nature.

  That is further true because the process that results in the issuance of a patent has all the attributes for the formation of a contract. "The requirements for establishing a contract with the government are the same for express and implied contracts. They are (1) 'mutuality of intent to contract,' (2) 'consideration,' (3) 'lack of ambiguity in offer and acceptance,' and (4) 'actual authority' of the government representative whose conduct is relied upon to bind the government." *Moda Health Plan, Inc. v. U.S.*, 892 F.3d 1311, 1329 (Fed. Cir. 2018) (internal citation omitted).[15]

---

[15] An implied-in-fact contract claim requires allegations of a specific "meeting of the minds" between an authorized representative of the United States and the claimant. *See Hercules, Inc. v.*

Court of Federal Claims
Case No. 1:18-cv-00657-MMS

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS
THE FIRST AMENDED CLASS ACTION COMPLAINT [Dkt. No. 8]
Page |18

All of these elements are present and adequately pled with respect to the patent that was issued to Christy. After negotiating the terms of the property right that is embodied in the claims of a patent, the USPTO offered Christy the patent in exchange for the required fees. In other words, the Director of the USPTO made an offer based on clear terms that are embodied in the patent laws that was accepted by Christy upon providing the required payment. The patent itself is evidence of the contract in that it defines the nature of the property right obtained in exchange for the fees paid. This is sufficient to qualify under the Tucker Act. *See Trauma Serv. Group v. U.S.*, 104 F.3d 1321, 1326 (Fed. Cir. 1997) ("any agreement can be a contract within the meaning of the Tucker Act, provided that it meets the requirements for a contract with the Government, specifically: mutual intent to contract including an offer and acceptance, consideration, and a Government representative who had actual authority to bind the Government."); *see also Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 985 (Fed. Cir. 1995) (*en banc*) (analogizing issuance to contract because the "inventor is required to make full disclosure of his invention to the Patent and Trademark Office (PTO) and to the public in his patent specification, which he is otherwise not obligated to do. In return, the law allows the government to confer a property right to exclude anyone else from making, using, or selling the invention covered by the claims for seventeen years, which it is otherwise not obligated to do.").

---

*U.S.*, 516 U.S. 417, 424 (1996). The plaintiff must plead (1) mutuality of intent to contract; (2) consideration; (3) an unambiguous offer and acceptance; and (4) actual authority of the government's representative to bind the government in contract. *Barrett Ref. Corp. v. U.S.*, 242 F.3d 1055, 1060 (Fed. Cir. 2001). "[O]n a motion to dismiss under the Court of Federal Claims Rule 12(b)(1), [plaintiff] does not need to prove the existence of a unilateral or implied-in-fact contract; he simply must allege one." *Grady v. U.S.*, 656 Fed. Appx. 498, 499 (Fed. Cl. 2016).

Court of Federal Claims
Case No. 1:18-cv-00657-MMS

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS
THE FIRST AMENDED CLASS ACTION COMPLAINT [Dkt. No. 8]

Page |19

Here, Christy identified all of the elements necessary for the formation of a contract. The parties are clearly identified. *See* Dkt. No. 7, ¶¶ 15-17. The First Amended Complaint identifies that the Parties intended to enter into an agreement to issue Christy a patent and did so. There was a clear offer (*id*. at ¶¶ 55-57) and a clear acceptance (*id*. at ¶ 58), and there was consideration exchanged in the form of fees paid by Christy (*id*. at ¶¶ 58, 61-64) and the issuance of an apparently valid patent by the USPTO issued by the Director of the USPTO as the government representative with authority to bind the Government (*id*. at ¶ 59). Therefore, the Government's assertion that the First Amended Complaint did not adequately plead the formation of a contract is unwarranted.

### 1. The Government's Depiction Of How A Patent Is Issued Ignores The True Nature Of The Process And The Result.

The Government's description of the process by which a patent is obtained misconstrues what happens when a patent is issued to a patentee in general, and specifically with respect to the issuance of the patent to Christy. Generally there is considerable negotiation as to what the invention disclosed is and what the patent claims cover. Not until the USPTO has determined that the requirements for a patent as embodied in 35 U.S.C. §§ 101 *et seq*. are satisfied will an offer of a patent be made. *See* 35 U.S.C. §131. Rejections along the way are expected and must be communicated to the applicant. *See* 35 U.S.C. §132. Throughout the process, the parties negotiate over what claims are to be allowed and what they cover, and in some circumstances how long the patent will last.

With respect to Christy's patent, Application No. 10/623,356 was made on July 18, 2003. *See* Dkt. No. 7, ¶ 54. It was not immediately accepted; in fact, only two of the proposed 20 claims were allowed. The other 18 were either rejected outright or objected to by the examiner on January 10, 2005 (1st non-final rejection). *See* **Exhibit A**. The applicant responded with proposed

Court of Federal Claims
Case No. 1:18-cv-00657-MMS

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS
THE FIRST AMENDED CLASS ACTION COMPLAINT [Dkt. No. 8]

Page |20

amendments on April 15, 2005 (1ˢᵗ Amendment). *See* **Exhibit B**. On July 8, 2005, the examiner again issued a rejection (2d Non-Final Rejection). *See* **Exhibit C**. The applicant attempted a second time to amend the claims on October 14, 2005 (2d Amendment). *See* **Exhibit D**. On March 2, 2006, the examiner accepted the amendments and, on behalf of the USPTO, notified the applicant that the claims as amended had been accepted, and a patent would be issued subject to payment of the appropriate fees. *See* Dkt. No. 7, ¶ 55. Christy's fee payment, addressed to the "Commissioner for Patents," was received by the USPTO on or about May 31, 2006. *See* Dkt. No. 7, ¶ 58. The Director fulfilled the Government's obligation by issuing Christy's patent on August 1, 2006. Like all patents, it bears the signature of the then-Director of the USPTO on its face. *See* Dkt. 7 ¶ 59.

        **2.**        **Christy Adequately Pled That The Government Manifested An Intent To Contract.**

Contrary to the Government's contention, Christy plainly identified "an objective manifestation" of intent to contract for each of Counts II and III. To satisfy its burden to prove mutuality of intent, a Christy "must show, by objective evidence, the existence of an offer and a reciprocal acceptance." *Estate of Bogley v. U.S.*, 206 Ct. Cl. 695, 514 F.2d 1027, 1032 (Ct. Cl. 1975) ("It is fundamental that in order to have a valid contract one party must make an offer that is a promise which is conditional upon receipt by the offeror of some act or promise from the offeree, and the offer must be accepted as to all its terms by the offeree."); *see also* Restatement (Second) of Contracts § 22(1) (1981) ("The manifestation of mutual assent to an exchange ordinarily takes the form of an offer or proposal by one party followed by an acceptance by the other party or parties.").

Court of Federal Claims
Case No. 1:18-cv-00657-MMS

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS
THE FIRST AMENDED CLASS ACTION COMPLAINT [Dkt. No. 8]
Page |21

Christy clearly identified the object manifestation of intent, including the offer and acceptance. "Both the USPTO and Plaintiff . . . intended to contract." Dkt. 7, ¶ 110 (Count II); *id.* ¶ 127 (Count III). The "Notice of Allowance and Fee(s) constituted a mutual intent to contract between USPTO and Plaintiff" and that Notice "cites to the underlying application and delineates the metes and bounds of each claim to be issued" and includes "the consideration to be paid, the parties, the length of time the patent was to be issued (statutory time period plus term extension), among others. Dkt. 7, ¶ 110 (Count II); *id.* ¶ 127 (Count III). "If the applicant paid the fees, then the USPTO would issue a patent with those claims upon receipt of said fees." Dkt. 7, ¶ 110 (Count II); *id.* ¶ 127 (Count III). 113. "An actual patent was issued once the fees were paid by the Plaintiff . . . by the date they were due (by completing the Fee(s) Transmittal form, Part B), which comprised an acceptance of the offer to issue a patent . . . ." Dkt. 7, ¶ 113 (Count II); *id.* ¶ 130 (Count III). "After payment was received by the USPTO, an Issue Notification was issued to Plaintiff . . . , which included a patent number and date of issuance. The offer and acceptance, detailed above, constituted a valid, existing contract with all the necessary terms." Dkt. 7, ¶ 114 (Count II); *id.* ¶ 131 (Count III).

The Government's claim that the law forbids breach of contract claims over "'[a]n agency's performance of its regulatory or sovereign functions'" grossly overstates the law. Motion, pp. 13-14. For instance, in *Rinaldi v. U.S.*, 30 Fed. Cl. 164 (1993), the plaintiffs had "neither pled any of the elements of an implied-in-fact contract, nor offered anything from which the court could reasonably infer that a contract existed." *Id.* at 167. Instead, "plaintiffs describe[d] a straightforward determination that taxes were due, followed by payment," which the court held was an implied-in-law contract theory over which it had no jurisdiction. *Id.*

Court of Federal Claims
Case No. 1:18-cv-00657-MMS

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS
THE FIRST AMENDED CLASS ACTION COMPLAINT [Dkt. No. 8]

Page | 22

Similarly, *D&N Bank v. U.S.* does not stand for the proposition that an agency cannot contract with a person through its regulatory or sovereign functions. 331 F.3d 1374 (Fed. Cir. 2003). In that case, the plaintiff sought damages for breach of an alleged agreement to allow it to capitalize and amortize $60M in goodwill from the acquisition of another bank." *Id.* at 1376. The court ultimately found against the plaintiff because "any suggestion that the government impliedly had the intent to contract as to the treatment of goodwill because of its approval of the merger is implausible because none of the documents proffered by [plaintiff] mentions goodwill or the accounting treatment thereof." *Id.* at 1378. Further, *D&N Bank* actually discusses "several other decisions in which this court and the Supreme Court held that the plaintiffs were entitled to compensation based on a breach of contract" against the same government agency (the "Bank Board"). *Id.* at 1380-1383. It naturally follows that the "general" rule cited by the Government is anything but that. The result in *D&N Bank* was compelled by a lack of evidence and negotiations over the treatment of "goodwill," not a general proposition of law. *Id.* at 1377-1380. The Government's reliance on *Anderson v. U.S.* is misplaced for the same reasons that *D&B Bank* is inapposite. 344 F.3d 1343 (Fed. Cir. 2003). *Anderson* relies heavily on the reasoning of *D&N Bank* and, just like in that case, there was no evidence of agreement to treatment of "goodwill" in *Anderson*, so the court found that no contract governing the recognition or treatment of goodwill could have been formed. *Id.* at 1355-1356.

Both *D&N* and *Anderson* explicitly acknowledge that if "something more" than filling out a form is alleged, then a contract can arise from the Government's performance of its regulatory or sovereign functions. *See id.* at 1356. "That 'something more' must be, according to [this

Court of Federal Claims
Case No. 1:18-cv-00657-MMS

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS
THE FIRST AMENDED CLASS ACTION COMPLAINT [Dkt. No. 8]
Page |23

Court's] precedent, a 'manifest assent to the same bargain proposed by the offer.'" *Id.* (citing Restatement (Second) of Contracts § 50 cmt. a. (1981)).

That "something more" is exactly what Christy alleges here. The patent here did not issue "just by performing statutory and regulatory duties." Motion, p. 14. Patent prosecution and examination evince detailed negotiations, with proposals on terms, rejection of terms, amendment of terms, and the ultimate acceptance of terms, *see, supra,* Section III.B.1, and this is nothing like filling out a form for a driving license or completing a tax form, where there is no negotiation. Christy's lengthy negotiation with the Government here, including negotiations over the specific claims ultimately issued, *see, supra,* Section III.B.1, shows that this case is nothing like *Rinaldi* or *D&N Bank.* Undeniably, Christy identified "an objective manifestation" of intent to contract by the Government for each of Counts II and III.

### 3. The Director Of The USPTO Is The Only Person Authorized To Issue A Patent.

"The U.S. Patent and Trademark Office (USPTO) is the federal agency for granting U.S. patents and registering trademarks. In doing this, the USPTO fulfills the mandate of Article I, Section 8, Clause 8 of the Constitution that the legislative branch 'promote the progress of science and the useful arts by securing for limited times to inventors the exclusive right to their respective discoveries.'" *See* **Exhibit E** (https://www.commerce.gov/doc/us-patent-and-trademark-office#4/37.71/-99.48) (last visited September 20, 2018); *see also Figueroa v. U.S.*, 57 Fed. Cl. 488, 490 (2003) ("The PTO is authorized to grant the protection of a patent when an applicant satisfies statutorily imposed tests and conditions, including the payment of appropriate fees. Throughout the life of the patent, the PTO also requires that patent holders periodically pay a maintenance fee). The USPTO is led by the Under Secretary of Commerce for Intellectual

Court of Federal Claims
Case No. 1:18-cv-00657-MMS

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS
THE FIRST AMENDED CLASS ACTION COMPLAINT [Dkt. No. 8]
Page |24

Property and Director of the USPTO:

> The powers and duties of the United States Patent and Trademark Office shall be vested in an Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office (in this title referred to as the "Director"), who shall be a citizen of the United States and who shall be appointed by the President, by and with the advice and consent of the Senate. The Director shall be a person who has a professional background and experience in patent or trademark law.

35 U.S.C. §3(a)(1). The Director's primary responsibility is "providing policy direction and management supervision for the Office and for the issuance of patents and the registration of trademarks." 35 U.S.C. §3(a)(2)(A). Contrary to the Government's assertion, the Director of the USPTO is the *only* person authorized to issue a patent. *See Graham v. John Deere Co.*, 383 U.S. 1, 6 (1966) ("It is the duty of the Commissioner of Patents and of the courts in the administration of the patent system to give effect to the constitutional standard by appropriate application, in each case, of the statutory scheme of the Congress."). Even the IPR program under which Christy's patent was invalidated was instituted under the sole and unappealable discretion of the Director. *See* 35 U.S.C. §314. Finally, and at the risk of repeating itself, Christy again reminds the Court that a franchise is by its nature a contract. *See, supra,* Section II.A.1. All this taken together demonstrates that Government's position that the Director did not have the authority to enter into a contract with Christy is illogical.

### 4. The First Amended Complaint Alleges That The Government Did Not Perform Its Obligations Under The Patent Contract.

The Government asserts that the First Amended Complaint "alleges breaches of contract and breaches of the duty of good faith and fair dealing based solely on alleged patent invalidations." Motion, p. 16. This statement mischaracterizes Christy's position. The Government's breach was to offer Christy a patent in exchange for issuance and maintenance fees

Court of Federal Claims
Case No. 1:18-cv-00657-MMS

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT [Dkt. No. 8]

Page |25

(in intervals) and then failing to deliver. It is irrelevant that this breach was not discovered until the PTAB invalidated Christy's patent several years after the Government purported to grant the patent. That "invalidation is precisely what may happen to a patent" (Motion, p. 16) strikes at the heart of what turned out to be a false bargain. This flies in the face of the "carefully crafted bargain" that is the patent system (*see Pfaff*, 525 U.S. at 63) and undermines the expectations of inventors induced to participate (*see Flo Healthcare Solutions, LLC*, 697 F.3d at 1380-1381). To be sure, just because invalidation was a possibility, that does not mean there was no breach of the contract. Each patent, including Christy's, is presumed valid. *See* 35 U.S.C. §282.

Christy's First Amended Complaint alleges explicitly that the Government breached its agreement with Christy to issue a valid patent. *See* Dkt. No. 7, ¶¶ 110-120, 126-136. The USPTO offered to issue a patent with 20 claims after the application had been "examined and is allowed for issuance as a patent" if the required fees were paid. *See id.,* ¶¶ 55-57. Christy accepted the offer and caused the required fees to be paid. *See id.,* ¶¶ 58, 61-64. But the Government did not deliver what Christy bargained for as Christy's patent rights were subsequently rescinded through the IPR process. *See id.,* ¶¶ 67-75.

Finally, the Government appears to give great credence to the idea that the contract entered between the Government and Christy included the possibility of invalidation. *See* Motion, p. 16. Again, this is of no consequence because every form of property (and a contract with the Government is a property) is granted with qualifications. *See, supra,* Section III.A.2. For these reasons, an actionable breach was properly pled by Christy.

Court of Federal Claims
Case No. 1:18-cv-00657-MMS

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS
THE FIRST AMENDED CLASS ACTION COMPLAINT [Dkt. No. 8]
Page |26

5. **The Government Has Conceded That The Contracts Alleged In Counts II And III Carry With Them A Duty Of Good Faith And Fair Dealing.**

In an attempt to dismiss Christy's breach of the duty of good faith and fair dealing claim (Count IV), the Government relies exclusively on the premise that no contract exists between it and Christy. It does not argue that this duty of good faith and fair dealing is subject to dismissal even if either of the contract claims survive. Thus, the Government has conceded that if any of Christy's contract claims survive (Counts II and III), so does Christy's breach of the duty of good faith and fair dealing claim (Count IV).

6. **The Government's Reliance On Federal Circuit Law Allegedly Stating That A Patent Is Not A Contract Is Unavailing.**

The Government's citations to Federal Circuit precedent stating that the patenting process and issuance of patents are not contract are inapposite first and foremost because these cases were decided before *Oil States* issued (in 2018) and declared that patents are franchises. With this clarification, it is indisputable that the issuance of a patent is a contract between patentee, here Christy, and the Government. *See West River Bridge Co.*, 47 U.S. at 531-535 (franchises are contracts with the Government). The Federal Circuit precedent cited by the Government that issued prior to *Oil States*, including every case in Argument, Section IV.A, is thus inapplicable. *See* Motion, pp. 10-12.

But even if that were not the case, none of these cases bear on this dispute. For instance, the case of *In re Yardley*, 493 F.2d 1389, 1395 (C.C.P.A. 1974), involved a design patent, and the statement regarding the patent there being a contract was in response to the "Commissioner's argument based on the 'failure of consideration.'" This was deemed inappropriate and was *dicta*, not a holding necessary to the case, because this Court (having jurisdiction over contract claims

Court of Federal Claims
Case No. 1:18-cv-00657-MMS

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS
THE FIRST AMENDED CLASS ACTION COMPLAINT [Dkt. No. 8]
Page |27

against the Government), not the Court of Customs and Patent Appeals, would have jurisdiction to create any such precedent related to whether there existed any contract between the Government and a patentee.[16] *Id.* at 1395.[17] The language cited by the Government from the cases of *Markman*, 52 F.3d at 984-987 and *Highway Equip. Co. v. FECO, Ltd.*, 469 F.3d 1027, 1038 (Fed. Cir. 2006), are also *dicta* because those cases arose from District Court cases, which do not have jurisdiction to hear contract cases between the Government and a patentee thus cannot create binding precedent. *Id.* Finally, the Government's insinuation that the contract claims brought by Christy are somehow sanctionable and frivolous, which rest on *Constant v. U.S.*, 929 F.2d 654, 656 (Fed. Cir. 1991), also do not apply here. The *pro se* plaintiff in *Constant* (1) filed the appeal a year late, had been twice warned of raising issues that had already been decided in his case as to his patent, and he was seeking the costs of litigating and defending the two patents in a District Court that invalidated the claims (not this Court). *See id.* at 656-58. As outlined above, Christy's case rests on a strong foundation of long-established precedent, which has been recently fortified by the patent-as-franchise holding of *Oil States.* The Government's cited precedent is thus ineffective.

---

[16] The same goes for *Krantz v. Olin*, 356 F.2d 1016, 1020 (C.C.P.A. 1966), another Court of Customs and Patent Appeals decision.

[17] *Constant*, which the Government contends followed *In re Yardley,* was an unpublished opinion that merely "Affirm[s]" the opinion under Rule 18 with no analysis. 861 F.2d 728, 1988 WL 94630, *1, 1988 U.S. App. LEXIS 15271, *1 (Fed. Cir. Sep. 13, 1988). It also does not cite or appear to have any relationship to *Yardley*. It is further unclear where the Government found the language it attributes to *Constant* ("[P]recedents . . . hold[] that the issuance of a patent by the United States Patent and Trademark Office (PTO) does not create a contractual relationship between the PTO and the patentee," *see* Motion, p. 11) because, again, that Federal Circuit opinion is a one-word Rule 18 affirmance.

Court of Federal Claims
Case No. 1:18-cv-00657-MMS

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS
THE FIRST AMENDED CLASS ACTION COMPLAINT [Dkt. No. 8]
Page |28

## C. A CONTRACT IS MONEY-MANDATING AS A MATTER OF LAW.

Christy agrees that for subject matter jurisdiction to exist under the Tucker Act, there must be a source of law that mandates compensation by the Government in the form of money damages. *See United States v. Mitchell*, 463 U.S. 206, 216-217 (1983). The Government grudgingly admits that, for a breach of contract claim, money damages are presumed. Motion, p. 17. But the Government's argument understates this point and articulates it as an exception rather than the rule, but this in incorrect. Numerous cases (including those cited by the Government) recognize that the money-mandating requirement of Tucker Act jurisdiction is normally satisfied in a breach of contract case without further inquiry being required. *See Labatte v. U.S.*, 899 F.3d 1373, 2018 U.S. App. LEXIS 22848, *12-*13 (Fed. Cir. 2018); *Rocky Mountain Helium, LLC v. U.S.*, 841 F.3d 1320, 1327 (Fed. Cir. 2016); *Higbie v. U.S.,* 778 F.3d 990, 993 (Fed. Cir. 2015); *Holmes v. U.S.*, 657 F.3d 1303, 1313-1314 (Fed. Cir. 2011); *Sanders v. U.S.*, 252 F.3d 1329, 1334 (Fed. Cir. 2001); *see also Dabney v. U.S.,* No. 17-1144C, 2018 U.S. Claims LEXIS 788, *10 (Fed. Cl. July 3, 2018). Even where the money-mandating requirement is not explicit, it may be implied. *See New York & Presbyterian Hosp.*, 881 F.3d at 881; *see also White Mt. Apache Tribe*, 537 U.S. at 473 ("It is enough, then, that a statute creating a Tucker Act right be reasonably amenable to the reading that it mandates a right of recovery in damages. While the premise to a Tucker Act claim will not be 'lightly inferred,' a fair inference will do.") (citation omitted).

The Government focuses on the exceptions rather than the rule but provides no analysis as to why any of the exceptions apply here. The Government relies on *Rick's Mushroom Serv. v. U.S.,* 521 F.3d 1338 (Fed. Cir. 2008) to conjure an alternative rule that the contract itself must identify the basis for money damages. The Government ignores the general rule by not

Court of Federal Claims
Case No. 1:18-cv-00657-MMS

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS
THE FIRST AMENDED CLASS ACTION COMPLAINT [Dkt. No. 8]

Page |29

acknowledging that the exceptions are limited.  *See Rocky Mountain Helium, LLC*, 841 F.3d at

1327 (describing exceptions to general rule); *see also Cunningham v. U.S.,* 748 F.3d 1172, 1176

(Fed. Cir. 2014) (breach of settlement agreement must contemplate money damages); *Higbie,* 778

F.3d 993 (describing exceptions to general rule).

Here, the general rule that money damages are available in a breach of contract case

applies.  *See Holmes*, 657 F.3d at 993 ("Typically, in a contract case, the presumption that money

damages are available satisfies the Tucker Act's money-mandating requirement.); *Sanders*, 252

F.3d at 1334 ("in the area of government contracts, as with private agreements, there is a

presumption in the civil context that a damages remedy will be available upon the breach of an

agreement."); *Winstar Corp.*, 518 U.S. at 885-886 ("damages are always the default remedy for

breach of contract."; damages for breach of contract are available under Tucker Act because they

are not "implied in law.").  In *Rick's Mushroom Serv*, the breach of contract claim involved in that

case was a cost-share agreement which did not contemplate money damages.  521 F.3d at 1343.

Here, there is no language that could take the contract between Christy and the Government out of

the realm of money damages, and the Government fails to identify any such basis.  As such, the

presumption applies, and jurisdiction follows.  *See Baker v. U.S.,* 642 Fed. Appx. 989, 993 (Fed.

Cir. 2016) (error to dismiss because agreement contained no language limiting monetary relief);

*c.f. Summit Power Grp., LLC v. U.S.*, No. 17-1138C, 2018 U.S. Claims LEXIS 992, *15 (Fed. Cl.

Aug. 20, 2018) (no jurisdiction where claim sought declaratory relief, not monetary damages).  In

the case at hand, this Court cannot, nor has it been asked to, return Christy's patent.  Moreover,

there is no other remedy available but money damages for the Government's breach; thus, the

Court of Federal Claims
Case No. 1:18-cv-00657-MMS

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS
THE FIRST AMENDED CLASS ACTION COMPLAINT [Dkt. No. 8]
Page |30

inference is that there is no other way to compensate Christy for the loss of its patent. *See New York & Presbyterian Hosp.*, 881 F.3d at 881; *see also White Mt. Apache Tribe*, 537 U.S. at 473.

**D.    CHRISTY PLAUSIBLY ALLEGED AN EXACTION CLAIM UNDER COUNT VI.**

The Government's position that it did not improperly accept money from Christy flies in the face of the facts and the law. In simple terms, Christy paid the issuance and maintenance fees as required to obtain its patent (*see* Dkt. No. 7, ¶¶ 58, 61-64) but did not receive a refund after it was determined that the patent was improperly issued and was taken from Christy. This meets the definition of an illegal exaction as it "involves a deprivation of property without due process of law, in violation of the *Due Process Clause of the Fifth Amendment to the Constitution*." *Norman v. U.S.*, 429 F.3d 1081, 1095 (Fed. Cir. 2005) (*emphasis* original). Put another way, the Government has "in its pocket" money that properly belongs to Christy. *See Aerolineas Argentinas v. U.S.,* 77 F.3d 1564, 1573 (Fed. Cir. 1996).

**1.    The Government's Collection Of Patent-Related Fees And Failure To Refund Them After The Patent Claims Were Invalidated Is The Improper Act.**

The Government misidentifies its "improper" act, presumably to distract this Court from the real issue. According to the Government, "Christy has failed to allege a direct relationship between the payment of its issuance fee and maintenance fees and the allegedly improper act of the Patent Office—adjudicating an IPR and finding the claims of Christy patent to be invalid." Motion, p. 20. Christy is not alleging here that the invalidation of its patent was improper, and the Government's allegation that Christy's case amounts to a collateral attack on the PTAB's decision is disingenuous at best. *See* Motion, pp. 5-6. The only avenue for appeal of the PTAB's IPR decision is to the Federal Circuit Court of Appeals. *See* 35 U.S.C. §141(c). The Government's

Court of Federal Claims
Case No. 1:18-cv-00657-MMS

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS
THE FIRST AMENDED CLASS ACTION COMPLAINT [Dkt. No. 8]
Page |31

reliance on the *eVideo* case is misplaced as the plaintiff there could not identify a clear relationship between the statute in question and the alleged illegal exaction. *See eVideo Owners v. U.S.*, 126 Fed. Cl. 95, 105 (2016).[18] Here, Christy has alleged that the Government's demand for fees under what amounts to false pretenses and not returning the fees paid after Christy's patent was rescinded constitutes an illegal exaction. *See* Dkt. No. 7, ¶¶ 56, 58, 61-64, 67-75, 168-172.

The Government's improper act was to issue the patent in first place. This "error" was not discovered until the IPR was completed. By not refunding the issuance and maintenance fees that Christy was required to pay to obtain the patent, the Government compounded its error. Contrary to the Government's misleading position, the PTAB's actions are not the error to be redressed here; it is the Government's demand for fees for an illusory right that was the illegal exaction. The Government's insistence that the PTAB's invalidation is unrelated to the payment of fees is a red herring that should not be chased.

## 2. Exaction Claims Where Money Has Been Improperly Paid To The Government Do Not Require The Statute Violated To Identify A Money Mandating Provision.

Contrary to the Government's assertion, for exaction claims based on an improper collection of money by the government, the statute at issue does not require a money-mandating provision. *See Auto Club Ins. Ass'n v. U.S.*, 103 Fed. Cl. 268, 273 (2012) (Where an illegal exaction is alleged, the Tucker Act "enables suit even in the absence of a money-mandating statute" (*citing Pan Am. World Airways, Inc. v. U.S.*, 122 F. Supp. 682, 683-684 (Ct. Cl. 1954)); *Figueroa*, 57 Fed. Cl. at 496 (2003) ("In the context of an illegal exaction, the court has jurisdiction

---

[18] This conclusion was arguably unnecessary as the Plaintiffs lacked standing to raise any claims. *Id*. at 103.

Court of Federal Claims
Case No. 1:18-cv-00657-MMS

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS
THE FIRST AMENDED CLASS ACTION COMPLAINT [Dkt. No. 8]
Page |32

regardless of whether the provision relied upon can be reasonably construed to contain money-mandating language."); *Casa De Cambio Comdiv S.A. de C.V. v. U.S.*, 48 Fed. Cl. 137, 143-144 (2000) ("In illegal exaction cases, in contrast to other actions for money damages, jurisdiction exists even when the Constitutional provision allegedly violated does not contain compensation mandating language."); *Commonwealth Edison Co. v. U.S.*, 46 Fed. Cl. 29, 43 (2000) ("this court has jurisdiction to consider whether the special assessment is an illegal exaction violative of the Due Process Clause, despite the fact that that clause does not contain compensation mandating language."); *Bowman v. U.S.*, 35 Fed. Cl. 397, 401 (1996) ("In illegal exaction cases, in contrast to other actions for money damages, jurisdiction exists even when the provision allegedly violated does not contain compensation mandating language."); *see also Starr Int'l Co. v. U.S.,* 121 Fed. Cl. 428, 464-465 (Fed. Cl. 2015), *overruled on other grounds by* 856 F.3d 953 (Fed. Cir. 2017) (collecting cases). The Government's attempt to require an explicit refund provision within the statute challenged overstates the Federal Circuit law. *See Norman*, 429 F.3d at 1095 ("To invoke Tucker Act jurisdiction over an illegal exaction claim, a claimant must demonstrate that the statute or provision causing the exaction itself provides, either expressly or by 'necessary implication,' that 'the remedy for its violation entails a return of money unlawfully exacted.'") (citation omitted).

The Government's reliance on *Keehn v. U.S.*, 110 Fed. Cl. 306 (2013) is misleading. The Government ignores the difference in the nature of the claims here in comparison to the claims in *Keehn*. Here, Christy has asserted claims for a taking of property, breach of contract, and exaction. These types of claims are explicitly within types of claims that are cognizable under the Tucker Act. *See* 28 U.S.C. §1491(a)(1), 429 F.3d at 1095; *Bowen v. Mass.*, 487 U.S. 879, 922-923 (1988).

Court of Federal Claims
Case No. 1:18-cv-00657-MMS

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS
THE FIRST AMENDED CLASS ACTION COMPLAINT [Dkt. No. 8]
Page |33

In *Keehn*, the claims were for compensation for work alleged to have been performed for the government. *See Keehn*, 110 Fed. Cl. at 311-317. That difference matters. The Federal Circuit has identified three types of monetary claims that are cognizable under the Tucker Act. *See Ontario Power Generation, Inc. v. U.S.*, 369 F.3d 1298, 1301 (Fed. Cir. 2004). The first two are breach of contract and illegal exaction. *Id.* As discussed *supra*, neither requires an explicit money-mandating statement to be cognizable. The third category is for claims for compensation owed that have not been paid. *Id.* It is this category that requires a specific provision of law that entitles the claimant to compensation to be identified. *Id.* And it was this third category which applied to the claims in *Keehn* and which were not present. *See Keehn*, 110 Fed. Cl. at 321.[19] This third category, which is relied upon by the Government, has no applicability here.

Even if that were not true, and it is, the Government's assertion that the statutes at issue are not money-mandating is disingenuous. To obtain a patent, payment of fees is mandatory. *See Figueroa v. U.S.*, 466 F.3d 1023, 1031 (Fed. Cir. 2006) ("Patent fees are a condition on the grant of a patent right; failure to pay the required fees results in denial of a patent."); *see also* 35 U.S.C. §41, 35 U.S.C. §151. The Government's offer to issue Christy its patent was made explicitly contingent on payment of fees pursuant to 35 U.S.C. §151. *See* Dkt. Nos. 7, ¶56; 7-2 (Exhibit C). In the Government's alternative viewpoint in which an issued patent subsequently invalidated by the USPTO is considered to never have actually existed, the requirement to pay fees becomes unnecessary. Just because the Government demanded fees from Christy under what amounts to

---

[19] This Court should also not overlook the fact that the *pro se* claimant in *Keehn* had allowed too much time to pass before bringing his claims, which were therefore barred by the six-year statute of limitations even if they had stated a cognizable claim. *See Keehn v. U.S.,* 541 Fed. Appx. 996, 997 (Fed. Cir. 2013).

Court of Federal Claims
Case No. 1:18-cv-00657-MMS

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS
THE FIRST AMENDED CLASS ACTION COMPLAINT [Dkt. No. 8]

Page |34

an illusory bargain—even if the error was not known at the time—does not make the collection of those fees any less wrongful.  This amounts to an illegal exaction.  *See Aerolineas Argentinas,* 77 F.3d at 1572-1573 ("Tucker Act claims may be made for recovery of monies that the government has required to be paid contrary to law. … The Tucker Act provides jurisdiction to recover an illegal exaction by government officials when the exaction is based on an asserted statutory power.").

Moreover, and although unnecessary for these claims, Christy identified the money-mandating statutes that give rise to the exaction here.  Specifically, Christy cited to 35 U.S.C. §154 as well as 35 U.S.C. §41(b), 35 U.S.C. §111(a)(3), 35 U.S.C. §151(b),  and 37 C.F.R. §1.311.  *See* Dkt. No. 7, ¶¶ 25, 32, 116, 132, 159.

### 3.    The Statute Identified By The Government Does Not Preempt Tucker Act Jurisdiction.

The Government attempts to remove jurisdiction under the Tucker Act by recharacterizing the patent laws as a comprehensive mechanism for the administrative and judicial review of all fee disputes.  *See* Motion, p. 22.  The Government cites to *Wilson v. U.S.*, 405 F.3d 1002 (2005) to support its overreaching position.  The Government is unable to cite any cases that identify the patent laws or regulations as a "comprehensive scheme for administrative and judicial review" of fee disputes that divest this Court of jurisdiction.  *Id*. at 1009 (citation omitted).  The Government also neglects to point out that it is only extensive regulatory mechanisms that have been found to remove Tucker Act jurisdiction.[20]  *See e.g., id*.  The Supreme Court has made clear that it takes an

---

[20]  Examples include provision of health benefits under the Medicare Act and remedying employment discrimination under Title VII of the Civil Rights Act.  *See Alvarado Hosp., LLC v. Price*, 868 F.3d 983, 991-992 (Fed. Cir. 2017); *Gardner v. U.S.*, 439 Fed. Appx. 879, 881 (Fed. Cir. 2011).

Court of Federal Claims
Case No. 1:18-cv-00657-MMS

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS
THE FIRST AMENDED CLASS ACTION COMPLAINT [Dkt. No. 8]

Page |35

extensive and specific statutory scheme to displace Tucker Act jurisdiction. *See United States v. Bormes*, 568 U.S. 6, 12-14 (2012) ("Tucker Act is displaced, however, when a law assertedly imposing monetary liability on the United States contains its own judicial remedies. In that event, the specific remedial scheme establishes the exclusive framework for the liability Congress created under the statute. Because a precisely drawn, detailed statute pre-empts more general remedies.") (internal quotations omitted).

The Government points to a one-sentence provision within the patent laws and discerns an entire regulatory scheme. But 35 U.S.C. §42(d) provides only that "The Director may refund any fee paid by mistake or any amount paid in excess of that required." This is hardly a "statutory scheme" that provides for any review, administrative or otherwise. To determine whether a statute displaces the Tucker Act, there must be more. *See Horne v. Dep't of Agric.*, 569 U.S. 513, 527 (2013) ("To determine whether a statutory scheme displaces Tucker Act jurisdiction, a court must 'examin[e] the purpose of the [statute], the entirety of its text, and the structure of review that it establishes.'") (*quoting United States v. Fausto*, 484 U.S. 439, 444 (1988)). Nor does a review of 37 C.F.R. §1.26 reveal any insight as to how claims that an alleged "error" *by the USPTO* that resulted in an improper demand for fees shall be remedied. Here, Christy does not allege that it was an overpayment or a mistake by it that can be remedied under 37 C.F.R. §1.26 that has triggered a demand for compensation. Thus, the Government's assertion that the "Tucker Act is displaced by these statutory and regulatory provisions" (Motion, p. 22) is unfounded.

### E. THE LENGTH OF CHRISTY'S COMPLAINT DOES NOT CONSTITUTE A VIOLATION OF RULE 8 NOR RENDER IT VULNERABLE TO RULE 12(F) BECAUSE THE SUBJECT MATERIAL IS NECESSARY TO ITS CLAIMS.

Lastly, the Government superficially asserts that "Christy's First Amended Complaint is

Court of Federal Claims
Case No. 1:18-cv-00657-MMS

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS
THE FIRST AMENDED CLASS ACTION COMPLAINT [Dkt. No. 8]
Page |36

unnecessarily prolix and fails to conform to RCFC 8, and under RCFC 12(f) the Court may 'strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter.'" Motion, p. 4. The Government opines that the background information provided is "largely unnecessary" and then concludes that this is why Christy's Complaint does not comply with RCFC 8 and should be dismissed. *Id*. at p. 23. However, the Government does not actually point to any material that is "redundant, immaterial, impertinent, or scandalous." That is because each and every paragraph of Christy's First Amended Complaint was included for a reason and supports one or more of the causes of action and gives the proper background for the claims it asserts. Even the background paragraphs describing the genesis and purpose of the fees associated with obtaining a patent are directly related to the subject matter of each Count in the First Amended Complaint, they cannot be considered "immaterial." Indeed, had there been less detail provided in Christy's Complaint, the Government would likely have argued that the Complaint lacked sufficient detail to state a plausible claim, giving it yet another ground to argue under the *Twombly/Iqbal* standard. The Government cannot have it both ways, and Christy's choice to include detailed background in anticipation of the Government's arguments cannot be considered "immaterial."

The Government has also misinterpreted RCFC 8 which says that a "pleading that states a claim for relief must contain … (2) a short and plain statement of the *claim* showing that the pleader is entitled to relief." RCFC 8(a) (*emphasis* added). On its face, this rule does not control the length of a complaint, but specifies the requirements for a claim. Nor does the Government identify any claim that is too long or too confusing to understand. To the contrary, Counts I-IV and VI each comply with RCFC 8(d)(1) in that they are "simple, concise, and direct." By virtue of the Government's detailed response to each and every claim, it is clear that there is no confusion as to

Court of Federal Claims
Case No. 1:18-cv-00657-MMS

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS
THE FIRST AMENDED CLASS ACTION COMPLAINT [Dkt. No. 8]
Page |37

what causes of action Christy has asserted. As such, dismissal of the Complaint is inappropriate. *See Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357, 1364 (Fed. Cir. 2013) (dismissal of a compliant appropriate only when it is confusing, ambiguous, vague or otherwise unintelligible) (citing *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)). Therefore, the Government's plea for less must be discarded as insufficient to justify dismissal under RCFC 8(a) or striking portions under RCFC 12(f).

### F. CHRISTY STIPULATES TO DISMISSAL OF COUNT V (UNJUST ENRICHMENT)

Christy does not oppose the Government's request that Count V be dismissed and hereby stipulates to dismissal of Count V of the First Amended Complaint (Dkt. 7, Count V).

## IV. CONCLUSION

For at least the reasons cited above, the Government's motion to dismiss should be denied (with the exception of Count V).

Court of Federal Claims
Case No. 1:18-cv-00657-MMS

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS
THE FIRST AMENDED CLASS ACTION COMPLAINT [Dkt. No. 8]
Page |38

Dated: <u>September 24, 2018</u>      Respectfully submitted,

*/s/ Timothy C. Davis*

**HENINGER GARRISON DAVIS, LLC**
James F. McDonough, III (Bar No. 117088, GA)
Jonathan R. Miller (Bar No. 507179, GA)
Travis E. Lynch (Bar No. 162373, GA)
3621 Vinings Slope, Suite 4320
Atlanta, Georgia 30339
Telephone: (404) 996-0869, 0863, 0867
Facsimile: (205) 547-5502, 5506, 5515
Email: jmcdonough@hgdlawfirm.com
Email: jmiller@hgdlawfirm.com
Email: tlynch@hgdlawfirm.com

Timothy C. Davis (Bar No. ASB-6834-D63T, AL)
W. Lewis Garrison, Jr. (Bar No, ASB-3591-N74W, AL)
Christopher B. Hood (Bar No. ASB-2280-S35H, AL)
Anna M. Carroll (Bar No. ASB-3029-Y40N, AL)
2224 1st Avenue North
Birmingham, Alabama 35203
Telephone: (205) 326-3336
Facsimile: (205) 326-3332
Email: tim@hgdlawfirm.com
Email: wlgarrison@hgdlawfirm.com
Email: chood@hgdlawfirm.com
Email: acarroll@hgdlawfirm.com

***Attorneys for Plaintiff and putative class members***

Court of Federal Claims
Case No. 1:18-cv-00657-MMS

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS
THE FIRST AMENDED CLASS ACTION COMPLAINT [Dkt. No. 8]
Page |39

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY on this 24th day of September, 2018, I electronically filed the

foregoing document with the Clerk of Court using the CM/ECF system, which caused it be served

on the Government.


*/s/ Timothy C. Davis*
Timothy C. Davis

Court of Federal Claims
Case No. 1:18-cv-00657-MMS

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS
THE FIRST AMENDED CLASS ACTION COMPLAINT [Dkt. No. 8]
Page |40