**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| CHRISTY, INC., | |
| Plaintiff, | No. 18-657 C |
| v. | |
| THE UNITED STATES, | Chief Judge Margaret M. Sweeney |
| Defendant. | |

**REPLY IN SUPPORT OF THE UNITED STATES'
MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT**

JOSEPH H. HUNT
Assistant Attorney General

GARY L. HAUSKEN
Director

Of Counsel:

ANDREW W. LAMB
Department of Justice

JENNA E. MUNNELLY
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Washington, D.C. 20530

*Attorneys for the United States*

Dated:  October 9, 2018

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

LIST OF EXHIBITS ......................................................................................................... vi

ARGUMENT ..................................................................................................................... 1

I.     Christy has failed to demonstrate that the Court has jurisdiction over Count I and it has not alleged a claim upon which relief may be granted. ................................ 2

     A.    Christy has failed to show that the requirements of the Takings Clause have been met. .......................................................................................... 2

         i.    Christy never had a valid property interest. .................................... 2

         ii.    Christy's patent was already in the public domain and therefore the alleged taking was not "for a public purpose." ......................... 5

     B.    The Court lacks jurisdiction to hear Count I and Christy may no longer appeal the Board's decision. ..................................................................... 5

II.    Christy fails to show that Counts II through IV state a claim. ................................ 6

     A.    The Supreme Court's 1848 *West River Bridge* decision and 2018 *Oil States* decision do not form precedent for the idea that patents are contracts. ............................................................................................... 6

     B.    Federal Circuit precedent is dispositive in holding that patents are not contracts and that the patenting process creates no contract ...................... 8

     C.    Christy has failed to show how the First Amended Complaint adequately alleges any contract or breach of contract. ................................................ 12

         i.    Christy has failed to show adequate allegations of any contract. . 13

         ii.    Christy has failed to show adequate allegations of any breach. ... 15

III.   Counts II through IV must be dismissed because Christy has failed to identify any source of law that is money-mandating. ...................................................... 15

IV.   Christy has failed to show that Count VI states a claim. ...................................... 16

     A.    Christy's conclusory allegations are insufficient to set forth an exaction claim. ......................................................................................................... 17

     B.    Christy fails to show how any of the identified statutes and regulation, money-mandating or not, were actually violated. ....................................... 17

     C.    Claims for the refund of fees paid must be raised with the USPTO ......... 19

V.    The Amended Complaint contains a detailed history of the patent system which is unnecessarily prolix. ......................................................................................... 20

CONCLUSION ................................................................................................................ 20

## TABLE OF AUTHORITIES

**Cases**

*Aerolineas Argentinas v. United States*,
   77 F.3d 1564 (Fed. Cir. 1996) ........................................................................... 18

*Application of Yardley*,
   934 F.2d 1389 (C.C.P.A. 1974) ..................................................................... 9, 10

*AstraZeneca Pharm. PL v. Apotex Corp.*,
   669 F.3d 1370 (Fed. Cir. 2012) ........................................................................ 17

*Auto Club Ins. Ass'n v. United States*,
   130 Fed. Cl. 268 (2012) ..................................................................................... 18

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................... 14

*Blonder-Tongue Labs., Inc. v. University of Ill. Found.*,
   402 U.S. 313 (1971) ............................................................................................. 4

*BMW Mfg. Corp v. United States*,
   241 F.3d 1357 (Fed. Cir. 2001) ................................................................... 10, 11

*Bowman v. United States*,
   35 Fed. Cl. 397 (1996) ....................................................................................... 18

*Cienega Gardens v. United States*,
   331 F.3d 1319 (Fed. Cir. 2003) .......................................................................... 3

*Constant v. United States*,
   929 F.2d 654 (Fed. Cir. 1991) ..................................................................... 9, 10

*Constant v. United States*,
   No. 88-1426, 1988 WL 94630 (Fed. Cir. Sept. 13, 1988) ................................ 9, 10

*Crowley v. United States*,
   398 F.3d 1329 (Fed. Cir. 2005) ............................................................. 10, 11, 12

*CRV Enters., Inc. v. United States*,
   626 F.3d 1241 (Fed. Cir. 2010) .......................................................................... 3

*D&N Bank v. United States*,
   331 F.3d 1374 (Fed. Cir. 2003) ........................................................................ 14

*eVideo Owners v. United States*,
 126 Fed. Cl. 95 (2016) ................................................................. 16, 17

*Figueroa v. United States*,
 57 Fed. Cl. 488 (2002) .................................................................... 18

*Flex-Foot, Inc. v. CRP, Inc.*,
 238 F.3d 1362 (Fed. Cir. 2001) ................................................... 11, 12

*Garner v. United States*,
 85 Fed. Cl. 756 (2009) ......................................................... 10, 11, 12

*Highway Equip. Co. v. FECO, Ltd.*,
 469 F.3d 1027 (Fed. Cir. 2006) ................................................... 11, 12

*Holmes v. United States*,
 675 F.3d 1303 (Fed. Cir. 2011) ................................................... 15, 16

*Huntleigh USA Corp. v. United States*,
 525 F.3d 1370 (Fed. Cir. 2008) ........................................................ 3

*Jarvis v. United States*,
 43 Fed. Cl. 529 (Fed. Cl. 1999) ...................................................... 16

*Karuk Tribe of Cal. v. Ammon*,
 209 F.3d 1366 (Fed. Cir. 2000) ..................................................... 3, 4

*Kelo v. City of New London, Connecticut*,
 545 U.S. 469 (2005) ......................................................................... 5

*Krantz v. Olin*,
 356 F.2d 1016 (C.C.P.A. 1996) .............................................. 9, 10, 11

*Love Terminal Partners, LP v. United States*,
 889 F.3d 1331 (Fed. Cir. 2018) ........................................................ 3

*Markman v. Westview Instruments, Inc.*,
 52 F.3d 967 (Fed. Cir. 1995) ....................................................... 11, 12

*Norman v. United States*,
 429 F.3d 1081 (Fed. Cir. 2005) ................................................... 16, 18

*Oil States Energy Servs. LLC v. Greene's Energy Grp., LLC*,
 138 S. Ct. 1364 (2018) ............................................................. passim

*Pfaff v. Wells Electronics, Inc.*,
   525 U.S. 44 (1998) ........................................................................... 14

*Rick's Mushroom Serv., Inc. v. United States*,
   521 F.3d 1338 (Fed. Cir. 2008) ...................................................... 16

*Rogers v. United States*,
   814 F.3d 1299 (Fed. Cir. 2015) ......................................................... 4

*Sadeghi v. United States*,
   46 Fed. Cl. 660 (2000) ........................................................................ 8

*Sanders v. United States*,
   252 F.3d 1329 (Fed. Cir. 2001) ...................................................... 15

*Soc. Of Lloyd's v. Siemon-Netto*,
   457 F.3d 94 (D.C. Cir. 2006) .............................................................. 8

*South Corp. v. United States*,
   690 F.2d 1368 (Fed. Cir. 1982) .................................................. 10, 11

*Starr Int'l Co. v. United States*,
   121 Fed. Cl. 428 (2015), 856 F.3d 953 (Fed. Cir. 2017) ............... 18, 19

*West River Bridge Co. v. Dix*,
   47 U.S. 507 (1848) ................................................................... 6, 7, 8, 9

*Wyatt v. United States*,
   271 F.3d 1097 (Fed. Cir. 2001) ....................................................... 3, 4

## Constitutional Provisions and Statutes

35 U.S.C. § 41 ........................................................................................ 19
35 U.S.C. § 42 ........................................................................................ 19
35 U.S.C. § 102 ........................................................................................ 5
35 U.S.C. § 103 ........................................................................................ 5
35 U.S.C. § 111 ...................................................................................... 19
35 U.S.C. § 151 ...................................................................................... 19
35 U.S.C. § 154 ...................................................................................... 19
35 U.S.C. § 282 .................................................................................. 2, 3, 4
35 U.S.C. § 311 .................................................................................... 3, 5
35 U.S.C. § 319 ........................................................................................ 2

U.S. Const. amend. V ................................................................................................................ 5


**Rules and Regulations**

RCFC 8 .................................................................................................................................... 20

37 C.F.R § 1.26 ...................................................................................................................... 19

37 C.F.R § 1.311 .................................................................................................................... 19


**Secondary Sources**

Black's Law Dictionary (10th ed. 2014)................................................................................... 7

# LIST OF EXHIBITS

Page

Exhibit A    *Constant v. United States*, No. 88-1426, 1988 WL 94630 (Fed. Cir.    A1
Sept. 13, 1988)

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| CHRISTY, INC., | |
| Plaintiff, | No. 18-657 C |
| v. | |
| THE UNITED STATES, | Chief Judge Margaret M. Sweeney |
| Defendant. | |

**REPLY IN SUPPORT OF THE UNITED STATES'
MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT**

Defendant, the United States (the government), by and through the undersigned counsel,

offers the following reply to Plaintiff's Memorandum of Law in Opposition to Defendant United

States of America's Motion to Dismiss the First Amended Class Action Complaint. *See* Dkt. 11.

As discussed below, Christy bears the burden of demonstrating that its claims are viable and that

the Court has jurisdiction. Christy has failed to carry that burden.

**ARGUMENT**

In its Memorandum of Law in Opposition (Opposition) to the government's Motion to

Dismiss (Motion), Christy fails to show any viable claim. As an initial matter, in its Opposition,

Christy stipulated to the dismissal of Count V. *See* Dkt. 11 at 38. As to Count I, Christy has

failed to show that its allegations meet the requirements of the Takings Clause, mainly, that it

had a valid property interest and that its valid property interest was "taken for public use." As to

Counts II through IV, Christy's piecemeal argument that a patent is a franchise and therefore a

contract is baseless and runs counter to precedent. Further, even if a patent is a contract, and it is

not, Christy has failed to plead all elements of a contract or breach or allege any money-

mandating source of law as required for jurisdiction. As to Count VI, Christy has failed to show

1

that the facts alleged are non-conclusory and are sufficient to set forth a claim for illegal

exaction.  Lastly, multiple paragraphs of the First Amended Complaint should be stricken for

failing to comply with Rule 8 of the RCFC.

### I.  Christy has failed to demonstrate that the Court has jurisdiction over Count I and it has not alleged a claim upon which relief may be granted.

Count I fails to states a claim.  In its Opposition, Christy's main argument is that it relied

on the patent grant as unconditional and the canceling of its patent during the Inter Parties

Review (IPR) constituted a governmental taking of its patent.  *See* Dkt. 11 at 4-5.  First, the grant

of a patent is not unconditional.  *See* 35 U.S.C. § 282(a) ("The burden of establishing invalidity

of a patent or any claim thereof shall rest on the party asserting such invalidity.").  Second,

Christy has failed to show that the requirements of the Takings Clause have been met.  Lastly,

there is a statutory procedure in which a party dissatisfied with the findings of the Patent Trial

and Appeals Board (Board) may pursue.  *See* 35 U.S.C. § 319.  Christy had the ability to appeal

the Board's decision and it chose not to do so.  *See* Dkt. 11 at 15.

### A.  Christy has failed to show that the requirements of the Takings Clause have been met.

Christy has failed to show that its patents constituted a valid property interest, and that its

patent was taken by the government for a public purpose.

### i.  Christy never had a valid property interest.

As discussed in the government's Motion, Christy never had a valid property interest

because, when a patent is found to be invalid after an IPR, it is deemed to have been invalid from

the beginning.  *See* Dkt. 8 at 8.  Christy misconstrues the government's statement and argues that

it had a valid property interest because "[t]he Government concedes that the property – Christy's

patent – once existed but was later taken away."  Dkt. 11 at 12.  However, Christy statement

contradicts patent law and the underlying intention of the IPR.

It is a "bedrock requirement that the existence of a valid property interest is necessary in all takings claims." *Wyatt v. United States*, 271 F.3d 1090, 1097 (Fed. Cir. 2001); *see also Love Terminal Partners, LP v. United States*, 889 F.3d 1331, 1339 (Fed. Cir. 2018); *CRV Enters., Inc. v. United States*, 626 F.3d 1241, 1249 (Fed. Cir. 2010); *Cienega Gardens v. United States*, 331 F.3d 1319 (Fed. Cir. 2003). The first step in analyzing a takings claim is to "determine[] whether the plaintiff possesses a valid interest in the property affected by the governmental action." *Karuk Tribe of Cal. v. Ammon*, 209 F.3d 1366, 1374 (Fed. Cir. 2000); *see also Huntleigh USA Corp. v. United States*, 525 F.3d 1370, 1377 (Fed. Cir. 2008). The United States Patent and Trademark Office's (USPTO) cancellation of a defective patent through the IPR rests on a determination that the patentee never had a valid property right because the patent was erroneously issued in the first instance. As the Court emphasized in *Oil States*, an IPR "involves the same basic matter as the grant of a patent." 138 S. Ct. at 1374. The Board "considers the same statutory requirements that the PTO considered when granted the patent," and determines whether the patent met those requirements at the time it was issued. *Id.* (citing 35 U.S.C. § 311(b)). Accordingly, when the Board cancels a patent, the cancellation rests on a determination that the patentee never had a valid property interest, and thus there was nothing for the government to take. *See Wyatt*, 271 F.3d at 1097.

An administrative determination of unpatentability by the USPTO in an IPR review and the consequent cancellation of the patent has the same effect on the patent holder's rights as a final judicial determination of patent invalidity. When a court determines that a patent is invalid in a suit for infringement, not only does that determination provide a defense to liability in the suit itself, *see* 35 U.S.C. § 282(b)(2)-(3), but it also precludes the enforcement of the patent in

any other case.  *See Blonder-Tongue Labs., Inc. v. University of Ill. Found.*, 402 U.S. 313 (1971).

Yet no one would suggest that judicial invalidation of the patent constitutes an uncompensated

taking of property, because there was no "valid property interest" to take.  *See Wyatt*, 271 F.3d at

1097.  The same is true here.

In its Opposition, Christy equates patent rights to land rights.  *See* Dkt. 11 at 6-11.

Where land rights are at stake, in order to meet the requirements of the Takings Clause, a party

must have a valid interest in the land.  Therefore, there is no taking under the Takings Clause if

the party alleging the takings did not have a valid title to the land in question.  *See Rogers v.*

*United States*, 814 F.3d 1299, 1303 (Fed. Cir. 2015) (granting summary judgment to the United

States, rejecting the plaintiffs' takings claim, because the plaintiffs did not have valid title to the

land in question); *see also Karuk Tribe*, 209 F.3d at 1370 (holding that the plaintiffs "never had a

compensable property interest" in the disputed land, and thus the federal statue at issue "did not

take any private property of the plaintiffs").

Christy also mistakenly alleges that finding that its patent never existed "would

undermine the policy of encouraging investments in the patented technologies with the

expectation that those investments are protected" and, "[i]f any patent can be invalidated without

just compensation, to hold otherwise would mean patentees get no assurance that their risked

investments are protected.  In other words, the entire policy behind the Patent Act fails."  Dkt. 11

at 13.  This argument is fatally flawed.  First, when a patent is issued, it is and has always been

subject to challenge, both by the administrative processes that were created over many decades

with a purpose to "reconsider and cancel patent claims that were wrongly issued," *Oil States*, 138

S. Ct. at 1370, and by third parties as a defense to liability.  *See* 35 U.S.C. § 282(b)(2)-(3).

Second, the grant of a patent has never provided, as Christy alleges without support, "assurance

that [a patentee's] risked investments are protected."  Dkt 11 at 13.  Third, the policy behind the

Patent Act is to promote invention, but it is also predicated on limitations of such invention, i.e.

the requirements for patentability.  *See* 35 U.S.C. §§ 102, 103.

The Board determined that Christy's claimed invention was not patent eligible.

Therefore, Christy never had a valid property interest in its patent and the government did not

"take" Christy's property.  Christy has failed to show that Count I is a claim upon which relief

may be granted, and therefore it must be dismissed.

> **ii.** **Christy's patent was already in the public domain and
> therefore the alleged taking was not "for a public purpose."**

As discussed in the government's Motion, "use by the public [must be] the purpose of the

taking."  *Kelo v. City of New London, Connecticut*, 545 U.S. 469, 477 (2005); *see also* U.S.

Const. amend. V; Dkt. 8 at 9.  In its Opposition, Christy argues that after the IPR, its patent was

"undoubtedly put back into the public domain."  Dkt. 11 at 12.  Christy's argument is fatally

flawed, however, because the IPR did not put Christy's patent "back into the public domain" but

rather, invalidated it.  And, as to the technical information in Christy's patent, that was already in

the public domain, in the form of the prior art that was used to cancel Christy's patent.  *See* 35

U.S.C. § 311.  Christy has failed to allege the requirements of the Taking Clause, and therefore

Count I must be dismissed.

> **B.** **The Court lacks jurisdiction to hear Count I and Christy may no
> longer appeal the Board's decision.**

In its Opposition, Christy claims that its lawsuit is not a result of being dissatisfied with

the Board's decision to terminate its patent, but rather a claim to receive the just compensation

that it allegedly deserves.  *See* Dkt. 11 at 15.  However, as discussed in the government's

Motion, Christy had an avenue in which to possibly remedy the finding of the IPR.  *See* Dkt. 8 at

5-6.  The fact that Christy chose to pursue the instant case, and not appeal the Board's decision, does not provide a way around the lack of jurisdiction over Count I.

## II.     Christy fails to show that Counts II through IV state a claim.

The government's arguments against Counts II through IV are unrefuted.  *See* Dkt. 8 at 10-17.  In its Opposition, Christy nowhere denies that these counts all rely on the idea that a patent is a contract.  *See* Dkt. 11 at 17-20.  Christy also nowhere denies that the Federal Circuit has rejected this idea.  *See id.*  Christy argues only that the Supreme Court's 1848 *West River Bridge* decision and 2018 *Oil States* decision form precedent, 170 years in the making, endorsing the idea that patents are contracts, and that the Federal Circuit rejected this idea *only in dicta*. *See* Dkt. 11 at 17-18, 27-28.  None of this is correct.  Moreover, even if patents were contracts, which they are not, Christy has not shown that it adequately alleged any contract or breach.  *See id.* at 18-26.  Therefore, Counts II through IV must be dismissed.

### A.     The Supreme Court's 1848 *West River Bridge* decision and 2018 *Oil States* decision do not form precedent for the idea that patents are contracts.

Christy misconstrues the decisions in *West River Bridge* and *Oil States*, by alleging that, when combined, they form precedent for the idea that patents are contracts.  *See* Dkt. 11 at 17-18, 27-28.  In *West River Bridge*, the Supreme Court described a "franchise" in connection with a "contract."  *See West River Bridge Co. v. Dix*, 47 U.S. 507, 531-35 (1848).  170 years later, in *Oil States*, the Supreme Court described patents as "franchises."  *See Oil States*, 138 S. Ct. at 1373, 1375.  Christy merges these comments to conclude that the Supreme Court, without expressly saying so, established that patents are contracts.  *See* Dkt. 11 at 18.  Christy even alleges that this merely implicit "precedent," created by comments 170 years apart, "should be the end of the inquiry on Christy's contract claims."  *Id.*  Christy is mistaken.  As an initial

matter, if the Supreme Court had meant to establish the remarkable conclusion that patents are contracts and, as Christy argues, contracts that may require damages if patents are invalidated, the Supreme Court would have done so expressly, not by implicitly associating words used in opinions 170 years apart.  But Christy also misreads these Supreme Court cases.

First, *West River Bridge* does not show that "franchises" are "contracts."  In *West River Bridge*, the Supreme Court addressed *a grant by statute*, to private parties, of a corporate charter and, to the corporation, "the privilege of building a toll-bridge" and charging a toll for use of the bridge.  *See* 47 U.S. at 507-08.  The Supreme Court described this privilege in various ways, including as a "franchise granted this corporation" or "franchise granted . . . by law."  *Id.* at 530.  The Supreme Court used "contract," by contrast, to describe the "charter of incorporation" itself, *i.e.*, the charter of the company given the toll-bridge rights, or to reference the statute's "investment" in private parties of the charter and those rights.  *Id.* at 531-32.  The Supreme Court referred to the charter as "a contract between the plaintiffs and the State of Vermont" and spoke of the "investment" in citizens of the charter and toll-bridge rights as "a contract between the State . . . and the grantee[s]."  *Id.*  Thus, in *West River Bridge*, the "franchise" was *not* considered a "contract" but a privilege or right the lawful use of which required a "contract," *i.e.*, the charter or statutory conveyance of the charter and the right.  *See id.*  *West River Bridge* uses "franchise" in the sense of a "government-conferred right or privilege to engage in a specific business . . .," *see* Black's Law Dictionary (10th ed. 2014) (def. of "franchise"), with that right or privilege distinct from the "contract."

Moreover, *West River Bridge* uses "contract" to refer to an act by a state government *not as a commercial actor* but as a sovereign actor.  *See* 47 U.S. at 507-08, 531-32.  The "contract" was established by a statute that *granted* private parties a corporation and the right to run a toll-

7

bridge. *Id.* This "contract" was not of the commercial kind that Christy is alleging, and such a sovereign "contract," even if granted by the federal government, would not support this Court's jurisdiction. *See Sadeghi v. United States*, 46 Fed. Cl. 660, 662 (2000) (noting that Court of Federal Claims "jurisdiction in the contract area is generally limited to those cases in which the government acts in its non-sovereign capacity") (citations omitted).

Similarly, in *Oil States*, the Supreme Court described patents as "franchises," to point to the right or privilege granted by issuing a patent to a patentee namely, "'the right to exclude others from making, using, offering for sale, or selling the invention throughout the United States.'" *See* 138 S. Ct. at 1373-74 (quoting 35 U.S.C. § 154(a)(1)). *Oil States* does not use "franchise" to point implicitly to any contract, much less a commercial contract that if breached could support damages. This is made even clearer in that, just after describing the patent-franchise as a "right to exclude," the Supreme Court noted that this right "did not exist at common law." *Id.* Commercial contract law, however, *was* developed at common law. *See Soc. Of Lloyd's v. Siemon-Netto*, 457 F.3d 94, 100 (D.C. Cir. 2006) (describing "American contract law in general" as "historically derived from (and similar to) the English common law of contract"). *Oil States* does not use "franchise" to refer to a contract, much less a commercial contract.

Nothing in *West River Bridge* or *Oil States*, or the combination of the two, shows that the Supreme Court equates patents, like Christy's, with commercial contracts or with any contracts at all. These cases provide no precedent endorsing Christy's idea that patents are contracts.

> **B.** **Federal Circuit precedent is dispositive in holding that patents are not contracts and that the patenting process creates no contract.**

As stated in the government's Motion, the Federal Circuit has declared repeatedly, in precedent, that *patents are not contracts*. *See* Dkt. 8 at 10-12. Christy argues in error that the

Federal Circuit has done so only in *dicta*.  *See* Dkt. 11 at 27-28.  The Federal Circuit stated that "*precedents of this court* . . . hold[] that the issuance of a patent . . . does not create a contractual relationship between the PTO and the patentee."  *Constant v. United States*, No. 88-1426, 1988 WL 94630, at *1 (Fed. Cir. Sept. 13, 1988) ("*Constant* I") (unpublished) (emphasis added) (citing *Application of Yardley*,[1] 493 F.2d 1389, 1395 (C.C.P.A. 1974); *Krantz v. Olin*, 356 F.2d 1016, 1020 (C.C.P.A. 1966)), *cert. denied*, 109 S. Ct. 789.  The Federal Circuit itself has effectively rejected Christy's "*dicta*" argument.

Christy fails to show that the Federal Circuit was mistaken in calling "precedent" its rejection of Christy's "patent contract" theory.  S*ee* Dkt.11 at 27-28.  First, Christy is mistaken about the *Constant* cases discussed in the government's Motion.  As the government explained, in these cases the Federal Circuit specifically rejected the theory "that the government had breached 'patent grant contracts' by issuing . . . patents containing defects for which [the patents] were later held invalid."  *See Constant* II, 929 F.2d at 656 (describing prior unpublished Federal Circuit decision), *cert. denied*, 111 S. Ct. 2799.  Initially, in its unpublished *Constant* I decision, the Federal Circuit relied on "the precedents of this court" to hold "that the issuance of a patent by the [PTO] does not create a contractual relationship between the PTO and the patentee." *Constant* I, 861 F.2d 728, at *1 (citing *Application of Yardley*, 493 F.2d at 1395; *Krantz*, 356 F.2d at 1020).  Later, in its published *Constant* II decision, the Federal Circuit rejected the same plaintiff's follow-on appeal asserting the same "'patent grant' contract theory," which the Federal Circuit described as "consistently and finally . . . rejected as meritless."  *Constant* II, 929 F.2d at 657, 659.  Christy denies the precedential nature of *Constant* II's rejection of the "patent contract" idea, based only on Christy's mistaken view that *West River Bridge* and *Oil States*

---

[1] *Constant* I cites this case as "*In re Yardley*."

created superior Supreme Court precedent endorsing the idea.  *See* Dkt. 11 at 28.  However, as

shown above, there is no such Supreme Court precedent.  And *Constant* II's precedential holding

plainly relied on rejecting the theory that Christy advances here.[2]  *See Constant* II, 929 F.2d at

657-59.

Christy is also mistaken about the "precedent" cited in *Constant* I, specifically

*Application of Yardley* and *Krantz*.  *See* Dkt. 11 at 27-28.  In *Application of Yardley*, the Federal

Circuit stated plainly that "[a] patent is not a contract" but "is 'a grant . . . of the right to exclude

others from making, using, or selling the invention throughout the United States.'"  *See* 493 F.2d

at 1395.  Christy alleges that this is *dicta* only because, according to Christy, "this Court (having

jurisdiction over contract claims against the Government), not the Court of Customs and Patent

Appeals, would have jurisdiction to create any such precedent . . . ."  Dkt. 11 at 27-28.  This

argument is incorrect.  The Court of Customs and Patent Appeals is a Federal Circuit

predecessor, and all its holdings are now Federal Circuit precedent.  *See South Corp. v. United*

*States*, 690 F.2d 1368, 1369-70 (Fed. Cir. 1982) (en banc) (adopting Court of Customs and

Patent Appeals holdings as precedent); *see also BMW Mfg. Corp v. United States*, 241 F.3d

1357, 1362 n.3 (Fed. Cir. 2001) ("Decisions of the Court of Customs and Patent Appeals are

binding precedent on this court.") (citing *South Corp.*).  Any Court of Customs and Patent

Appeals holding is thus binding precedent on this Court, which "may not deviate from the

precedent of . . . the Federal Circuit . . . ."  *Crowley v. United States*, 398 F.3d 1329, 1335 (Fed.

Cir. 2005), *followed by Garner v. United States*, 85 Fed. Cl. 756, 759 (2009).  Moreover, the

statement in *Application of Yardley*, that "[a] patent is not a contract," is plainly part of its

---

[2] Christy also alleges that the unpublished *Constant* I opinion does not contain the language
quoted in the government's Motion.  S*ee* Dkt. 11 at 28 n.17.  That opinion, with the quoted
language, is thus provided as Exhibit A.  *See* Exhibit A.

holding.  *See* 493 F.2d at 1395.  Christy has not shown otherwise.

Christy is similarly mistaken about *Krantz*, where the Court of Customs and Patent Appeals rejected the idea that its patent case was a contract case.  *See* 356 F.2d at 1020.  Christy claims *Krantz* is inapplicable saying, in a footnote, "[t]he same goes for *Krantz* . . . another Court of Customs and Patent Appeals decision," as if that ends the matter.  *See* Dkt. at 28 n.16.  As discussed above, that does not end the matter.  The holdings of the Court of Customs and Patent Appeals are precedent for the Federal Circuit and this Court.  *See South Corp.*, 690 F.2d at 1369-70; *BMW Mfg. Corp*, 241 F.3d at 1362 n.3; *Crowley*, 398 F.3d at 1335; *Garner*, 85 Fed. Cl. at 759.  And, the *Krantz*'s decision rejected an argument that the patent applications at issue were incomplete because they did not have all the information required by "the law of contracts."  *See Krantz*, 356 F.2d at 1020; *see also* Dkt. 8 at 11.  The Court of Customs and Patent Appeals held, in what is precedent, that its case was "not a contract case . . . notwithstanding the popular myth that a patent is a contract . . . ."  *Id.*

Christy also misconstrues the Federal Circuit decisions in *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 984-87 (Fed. Cir. 1995) (en banc), and *Highway Equipment Co. v. FECO, Ltd.*, 469 F.3d 1027, 1038 (Fed. Cir. 2006).  Christy alleges that the language from these cases, quoted in the government's Motion, is "*dicta* because those cases arose from District Court cases, which do not have jurisdiction to hear contract cases between the Government and a patentee [and] thus cannot create binding precedent."  Dkt. 11 at 28.  This misconstrues these cases.  As their citations indicate, these cases addressed disputes between private parties, not contracts with the government.  And in addressing appeals from district courts, the Federal Circuit applies its "own law to both substantive and procedural issues intimately involved in the substance of enforcement of the patent right."  *Flex-Foot, Inc. v. CRP, Inc.*, 238 F.3d 1362, 1365

(Fed. Cir. 2001) (internal quotation marks and citation omitted).  The relevant language in *Markman* and in *Highway Equipment Co.* concerns just such patent-law issues.  Therefore, the language at issue thus states *Federal Circuit* law, which is precedent here.  *See Crowley*, 398 F.3d at 1335; *Garner*, 85 Fed. Cl. at 759.

The language at issue from *Markman* and *Highway Equipment Co.* is part of their holdings.  In *Markman*, the Federal Circuit issued a "decision that *claim construction [for patents]* is properly viewed solely as a question of law," in view of "precedent of the Supreme Court and much of *this court's precedent*."  52 F.3d at 983-84 (emphases added).  This decision required rejecting the idea that patents were contracts because, otherwise, there could have been factual issues for a jury to decide, as might occur in cases "construing and interpreting contracts . . . ." *Id.*  But as the Federal Circuit made clear: "Patents are not contracts per se . . . ." *Id.* at 985.  The Federal Circuit also criticized at length the "analogy of a patent to a contract." *Id.* at 984-85.  Likewise, in *Highway Equipment Co.*, the Federal Circuit relied on distinguishing patents from contracts to decide that a district court had improperly exercised supplemental jurisdiction over a state-law contract count, so as to try the count together with federal patent counts.  *See* 469 F.3d at 1038-39.  Although supplemental jurisdiction is a procedural matter, the patent/contract distinction on which the Federal Circuit's decision relied is intimately connected to patent law.  In making that distinction, the Federal Circuit thus applied its own law.  *See Flex-Foot, Inc.*, 238 F.3d at 1365.  *Markman* and *Highway Equipment Co.*, and the other cases just addressed, thus all present Federal Circuit precedent rejecting the idea on which Counts II through IV depend.  This precedent is dispositive.  These counts must be dismissed.

### C.   Christy has failed to show how the First Amended Complaint adequately alleges any contract or breach of contract.

Even if patents were contracts, and they are not, Christy has shown no allegation of a

contract, specifically a commercial contract, or a breach sufficient to state a claim.

### i.    Christy has failed to show adequate allegations of any contract.

Christy fails to show any adequate allegation of a "patent contract."  As explained in the government's Motion, Christy's First Amended Complaint does not sufficiently allege the elements of a contract.  *See* Dkt. 8 at 13-15.  This failure is especially clear with respect to the elements of "mutuality of intent to contract" and "a government representative having actual authority to bind the United States in contract."  *See id.*  In its Opposition, Christy fails to demonstrate otherwise.

First, Christy fails to show any adequate allegation of a mutual intent to contract.  In its Opposition, Christy highlights only the following allegations to try to show such intent:

- "Both the USPTO and Plaintiff . . . intended to contract."  Dkt. 11 at 22 (quoting Dkt. 7 ¶¶ 111, 128 (mis-cited as ¶¶ 110, 127)).

- The "Notice of Allowance and Fee(s) constituted a mutual intent to contract between USPTO and Plaintiff" and that Notice "cites to the underlying application and delineates the metes and bounds of each claim to be issued" and includes "the consideration to be paid, the parties, the length of time the patent was to be issued (statutory time period plus term extension), among others."  *Id.* (same mis-citations).

- "If the applicant paid the fees, then the USPTO would issue a patent with those claims upon receipt of said fees."  *Id.* (same mis-citations).

- "An actual patent was issued once the fees were paid by the Plaintiff . . . by the date that they were due (by completing the Fee(s) Transmittal form, Part B), which comprised an acceptance of the offer to issue a patent . . . ."  *Id.* (quoting Dkt. 7 ¶¶ 114, 131 (mis-cited as ¶¶ 113, 130)) (Christy's ellipsis).

- "After payment was received by the USPTO, an Issue Notification was issued to Plaintiff . . . which included a patent number and date of issuance.  The offer and acceptance, detailed above, constituted a valid, existing contract with all the necessary terms."  *Id.* (quoting Dkt. 7 ¶¶ 115, 132 (mis-cited as ¶¶ 114, 131)) (Christy's ellipsis).

Nowhere in any of this is there any allegation *of fact* indicating any intent by the government to enter into a commercial contract with Christy.  To the extent that the quotes above include allegations of fact, the allegations are consistent with the government acting in "performance of

its regulatory or sovereign functions" which, as explained in the government's Motion, "does not create contractual obligations."  *See* Dkt. 8 at 13 (quoting *D&N Bank v. United States*, 331 F.3d 1374, 1378-79 (Fed. Cir. 2003)).[3]  None of these allegations makes it more plausible than not that the government intended to contract, as required to state a contract-based claim.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  The allegations quoted above assert bare conclusions and, conclusory allegations like this merit no weight in deciding whether a complaint states a claim.  *See id.* at 555, 557.

Christy also misapplies a quote from *Pfaff v. Wells Electronics, Inc.*, to make is seem as if the patenting process involves government officials and patentees bargaining for particular patents.  *See* Dkt. 11 at 17.  The quote expressly states only that *"the patent system"* as a whole "represents a carefully crafted bargain," in the sense that, on the one hand, it gives an "exclusive monopoly" right "for a limited period" but, on the other hand, thus "encourages both the creation and the public disclosure of new and useful advances in technology."  *Pfaff v. Wells Electronics, Inc.*, 525 U.S. 55, 63 (1998) (emphasis added).  None of this shows that issuing a patent involves any intent to contract or bargaining for a patent or contract.

Second, Christy has shown no adequate allegation of any contracting authority.  *See* Dkt.

---

[3] Christy's attempt to distinguish *D&N Bank* fails.  *See* Dkt. 11 at 23.  Christy argues, in error, that the "result in *D&N Bank* was compelled by a lack of evidence and negotiations over the treatment of 'goodwill'" and that *D&N Bank* applied no general rule.  *See id.*  The *D&N Bank* appellant alleged that "it had a contract-based right to amortize . . . goodwill."  331 F.3d at 1376.  Goodwill was only the *subject-matter* of the alleged contract right.  *Id.*  The appellant failed because, in trying to show a contract right, it relied on statements and documents from government officials consistent with the performance of their regulatory or sovereign duties.  *Id.* at 1379-80.  But performing duties "consistent with the regulatory [or sovereign] function . . . says *nothing* about" whether the government was acting "as an independent contracting body."  *Id.* at 1380 (emphasis added).  The Federal Circuit held that "the government's intention to be bound [was] nowhere to be found."  *Id.* at 1378.  The same general principle applies here because the allegations show nothing more than the performance of regulatory or sovereign functions.  *See* Dkt. 8 at 13-14.

11 at 14-15.  In its Opposition, Christy argues only that the USPTO Director must have had

contracting authority, because the Director was authorized to issue patents and, as "Christy again

reminds the Court," in error, a patent is a franchise and "a franchise is by nature a contract."

Dkt. 11 at 25.  Christy's only support for any contracting authority is the disproven idea that a

patent is a contract.  Christy has shown no adequate allegation of a contract as needed for Counts

II through IV.  *See* Dkt. 8 at 13-15.

**ii.      Christy has failed to show adequate allegations of any breach.**

Even assuming that patents are contracts, and they are not, Christy has failed to show

adequate allegation of any breach.  In its Opposition, Christy argues, in error, that the IPR

breached Christy's "patent contract" because, its patent contract was an "agreement with Christy

to issue *a valid* patent."  *See* Dkt. 11 at 26 (emphasis added).  This is patently incorrect.  As

explained in the government's Motion, all patents are issued with only a presumption of validity.

*See* Dkt. 8 at 15-17 (citing authorities).  Christy shows no basis for concluding that its patent was

any different.  Christy thus shows no basis for any breach, as required by Counts II through IV.

*See id.*  Both precedent and Christy's failure to allege adequately any contract or breach require

dismissing Counts II through IV.

**III.    Counts II through IV must be dismissed because Christy has failed to
         identify any source of law that is money-mandating.**

Again, assuming that patents are contracts, and they are not, Christy also has not shown a

money-mandating source of law, as required for jurisdiction over Counts II through IV.  As

detailed in the government's Motion, although "there is a presumption . . . that a damages

remedy will be available upon the breach of an agreement," *Sanders v. United States*, 252 F.3d

1329, 1334 (Fed. Cir. 2001), this presumption does not apply to a contract that might provide

"purely nonmonetary relief," *see Holmes v. United States*, 657 F.3d 1303, 1315 (Fed. Cir. 2011),

15

or to a claim for breach of the duty of good faith and fair dealing for such a contract because that duty cannot rely on "wholly new contract terms." *See* Dkt. 8 at 17-18 (quoting *Jarvis v. United States*, 43 Fed. Cl. 529, 534 (1999)). Patents nowhere expressly require monetary relief for a "breach," and invalidation, if in error, could simply be corrected by reinstating the patent. *See id.* So Christy must show a contract term giving a "right to recover money-damages" for invalidation or a "money-mandating source of law." *See* Dkt. 8 at 18 (quoting *Rick's Mushroom Serv., Inc. v. United States*, 521 F.3d 1338, 1343 (Fed. Cir. 2008)). However, Christy only asserts, in conclusory fashion, that "there is no language that could take the contract between Christy and the Government out of the realm of money damages, and the Government fails to identify any such basis." Dkt. 11 at 30. It is Christy's burden, however, to allege adequately a right to damages. *See* Dkt. 8 at 17 (citing *Holmes v. United States*, 657 F.3d at 1315). Christy has not done so. Thus, even if Counts II through IV stated a claim, and they do not, they would have to be dismissed for lack of jurisdiction.

### IV.     Christy has failed to show that Count VI states a claim.

In its Opposition, Christy claims that its illegal exaction claim is grounded in its allegation that the government should never have issued Christy patent. *See* Dkt. 11 at 32. Christy is claiming that the "misapplication of a provision of the Constitution, a statute or a regulation," a requirement of an illegal exaction claim, *eVideo Owners v. United States*, 126 Fed. Cl. 95, 104 (2016), occurred when the government "demand[ed] fees under what amounts to false pretenses and [did] not return[] the fees paid after Christy's patent was rescinded." Dkt. 11 at 32. And "[t]his meets the definition of an illegal exaction as it 'involves a deprivation of property without due process of law, in violation of the Due Process Clause of the Fifth Amendment to the Constitution.'" Dkt. 11 at 31 (citing *Normand v. United States*, 429, F.2d

1081, 1095 (Fed. Cir. 2005)).  This argument is meritless.  Christy was not deprived of property without due process.  Christy fully engaged in the initial patent process and the IPR, in both of which Christy was fully aware that a result could be the canceling of its patent.  Further, Christy has failed to show any misapplication of a statute by the government.

### A. Christy's conclusory allegations are insufficient to set forth an exaction claim.

As explained in the government's Motion, Christy must show that "the exaction was directly caused by the misapplication of a provision of the Constitution, a statute or a regulation." *eVideo Owners*, 126 Fed. Cl. at 104; Dkt. 8 at 19.  In its Opposition, Christy fails to show how any specific provision of the Constitution, a statute or a regulation was misapplied by the government and caused an exaction.  *See* Dkt. 11 at 31-32; Dkt. 7 ¶¶ 168-72.  According to Christy's Opposition, the IPR was not the "improper act" that caused the exaction, but that the government "issue[d] the patent in [the] first place."  Dkt. 11 at 32.  Further, the government should have refunded the fees Christy paid once Christy's patent was canceled.  *See id.* However, Christy fails to cite any legal authority for these conclusory allegation.  Additionally, Christy claims that the initial grant of its patent was an "illusory right" and once its patent was canceled Christy was entitled to a refund of its payment.  *Id.*  But again Christy's allegations are conclusory and unsupported by any legal authority.  Therefore, jurisdiction does not lie in a claim for illegal exaction.  *See AstraZeneca Pharm.*, 669 F.3d at 1376 ("accepting as true" only "non-conclusory allegations of fact").

### B. Christy fails to show how any of the identified statutes and regulation, money-mandating or not, were actually violated.

In its Opposition, Christy claims that a money-mandating statute is not a requirement for an "exaction claim based on an improper collection of money by the government," and "although

unnecessary for these claims, Christy identified the money-mandating statues that give rise to the [alleged] exaction." Dkt. 11 at 32, 35.  Again, Christy's argument is fatally flawed.  First, the very case law Christy cites shows that this Court has come to varying conclusions as to the requirement of money-mandating statutes and it generally depends on the specific statute that is alleged to have been violated.  *See Starr Int'l Co. v. United States*, 121 Fed. Cl. 428, 464-65 (2015) *vacated on other grounds*, 856 F.3d 953 (Fed. Cir. 2017).  Second, Christy has failed to show how the "facts" it alleges are sufficient to show how any statutes were actually violated. And lastly, contrary to Christy's claim, none of the statutes it cites are in fact money-mandating.

In *Starr*, the Court stated that "[i]n addressing this jurisdictional problem for illegal exaction claims, some decisions have dispensed with the requirement for a money-mandating statue, seemingly embracing the concept that the Government should not escape responsibility for its unauthorized actions based on a jurisdictional loophole."  *Starr*, 121 Fed. Cl. at 464-65 (citing *Figueroa v. United States*, 57 Fed. Cl. 488, 495-96 (2003); *Bowman v. United States*, 35 Fed. Cl. 397, 401 (1996); *Aerolineas Argentinas*, 77 F.3d 1564, 1573 (Fed. Cir. 1996); *Auto Club Ins. Ass'n v. United States,* 103 Fed. Cl. 268, 273 (2012)).  "Other decisions have espoused a slightly tighter standard, but one that is still broader than simply requiring a 'money-mandating' source of law."  *Id.* at 465.  The Court in *Starr* quoted the standard in *Norman v. United States*, "'To invoke Tucker Act jurisdiction over an illegal exaction claim, a claimant must demonstrate that the statute or provision causing the exaction itself provides, either expressly or by necessary implication, that the remedy for its violation entails a return of money unlawfully exacted.'"  *Id.* (quoting *Norman*, 429 F.3d at 1095 (internal quotations and citations omitted)).  A review of the case law cited by the Court in *Starr*, most of which is also cited by Christy, shows that the underlying statute at issue is dispositive as to whether the court has jurisdiction.  *Starr*, 121 Fed.

Cl. at 464-65; Dkt. 11 at 32-33.  However, as discussed below, Christy has failed to show that any statute, money-mandating or not, has been violated.

In its Opposition and First Amended Complaint, Christy cites to 35 U.S.C. § 154, which generally details the rights of the patentee once the patent issues.  *See* Dkt. 7 ¶¶ 25, 159; Dkt 11 at 35.  But Christy fails to show how it was violated or how it is money-mandating.  *See id.* Christy then cites to 35 U.S.C. § 41(b) which details maintenance fees to be paid but again, Christy fails to show how it was violated or how it is money-mandating.  *See* Dkt. 7 ¶¶ 32, 116, 133, 161; Dkt 11 at 35.  Christy also cites to 35 U.S.C. § 111(a)(3) which states that a patent application "shall be accompanied by the fee required by law," and again Christy fails to show how it was violated or how it is money-mandating.  *See* Dkt. 7 ¶¶ 25; Dkt 11 at 35.  Next, Christy cites to 35 U.S.C. § 151(b), which states that a patent is issued upon payment of the issue fee, once again Christy fails to show how it was violated or how it is money-mandating.  *See id.* Lastly, Christy cites to 37 C.F.R. § 1.311 which also states that a patent will issue upon payment of the issue fee, and once again Christy fails to show how it was violated or how it is money-mandating.  *See id.*[4]  Count VI fails to state a claim and therefore it must be dismissed.

### C.     Claims for the refund of fees paid must be raised with the USPTO.

As explained in the government's Motion, the administration of fee refunds is entrusted to the USPTO.  *See* Dkt. 8 at 22.  Contrary to Christy's claims, "an extensive and specific statutory scheme" is detailed.  *See id.*  Section 42(d), 37 C.F.R. § 1.26, and the Administrative Procedure Act (APA) specifically show that fee disputes must be raised with the USPTO and are subject to review pursuant to the APA.  In its Opposition Christy provides no basis for its

---

[4] It should be noted that the citations to the First Amended Complaint are not contained within Count VI: Exaction.  *Compare*  Dkt. 7 ¶¶ 25, 32, 116, 159 *with* Dkt. 7 ¶¶ 168-76.

allegation that "[t]his is hardly a 'statutory scheme' that provides for any review, administrative or otherwise." Dkt. 11 at 36. Where, as here, the Tucker Act is displaced by other statutory and regulatory provisions, this Court lacks jurisdiction. Count VI must be dismissed.

**V.   The Amended Complaint contains a detailed history of the patent system which is unnecessarily prolix.**

In its Motion, the government identified multiple paragraphs that contained unnecessary and superfluous information. *See* Dkt. 8 at 23. Christy has not shown that each paragraph of its First Amended Complaint is "simple, concise, and direct." *See* Dkt. 11 at 37. Therefore, if the First Amended Complaint is not dismissed, the government requests that the Court order Christy to amend its First Amended Complaint to comply with RCFC 8.

**CONCLUSION**

For the reasons stated above, the government respectfully requests that the Court grant the government's Motion to Dismiss.

Respectfully submitted:

JOSEPH H. HUNT
Assistant Attorney General

GARY L. HAUSKEN
Director

Of Counsel:                              s/ Jenna Munnelly_____
ANDREW W. LAMB                    JENNA MUNNELLY
Department of Justice                 Trial Attorney
                                                  Commercial Litigation Branch
                                                  Civil Division
                                                  Department of Justice
                                                  Washington, DC 20530
                                                  Email: jenna.e.munnelly@usdoj.gov
                                                  Telephone:     (202) 616-1061
                                                  Facsimile:     (202) 307-0345

Dated: October 9, 2018

# Exhibit A

861 F.2d 728
Unpublished Disposition
NOTICE: THIS IS AN UNPUBLISHED OPINION.
(The Court's decision is referenced in a "Table of
Decisions Without Reported Opinions" appearing
in the Federal Reporter. Use FI CTAF Rule 47.6 for
rules regarding the citation of unpublished opinions.)
United States Court of Appeals, Federal Circuit.

James CONSTANT, Plaintiff-Appellant,

v.

The UNITED STATES, Defendant-Appellee.

No. 88-1426.
|
Sept. 13, 1988.

**Synopsis**
Cl.Ct.

AFFIRMED.

Before BISSELL, ARCHER and MICHEL, Circuit
Judges.

PER CURIAM.

### DECISION

 **\*1**  James Constant appeals the judgment of the United
States Claims Court, No. 295-88C (May 18, 1988),
dismissing his complaint seeking reimbursement of costs
incurred in litigating and defending two patents. We have
considered the record and all submissions and, on the basis
of the Claims Court order, *affirm* the trial court's decision.

### OPINION

The Claims Court followed the precedents of this court
by holding that the issuance of a patent by the United
States Patent and Trademark Office (PTO) does not
create a contractual relationship between the PTO and
the patentee. *In re Yardley,* 493 F.2d 1389, 1395, 181
USPQ 331, 335-36 (CCPA 1974); *Krantz v. Olin,* 356
F.2d 1016, 1020, 148 USPQ 659, 662-63 (CCPA 1966),
*cert. denied,* 386 U.S. 982 (1967). Constant also advances
constitutional challenges to 35 U.S.C. § 282 (1982 &
Supp. IV 1986) that we already addressed in *Constant v.
Advanced Micro-Devices, Inc.,* 848 F.2d 1560, 1563-64, 7
USPQ2d 1057, 1058-59 (Fed.Cir.1988).

This appeal is frivolous; however, we do not sanction
Constant in this instance because this appeal was filed
prior to the issuance of *Constant.* Nonetheless, we reiterate
the admonition in that opinion—"[a]ppellant is hereby
cautioned that if he persists by trying to raise again the
same issues that have been finally decided ... he could be
sanctioned under Fed.R.Civ.P. 11, Fed.R.App.P. 38, and
the inherent power of the courts to sanction." *Id.* at 1572,
7 USPQ2d at 1065-66.

**All Citations**

861 F.2d 728 (Table), 1988 WL 94630

End of Document          © 2018 Thomson Reuters. No claim to original U.S. Government Works.



A1