# In the United States Court of Federal Claims

No. 18-657C
(Filed: January 29, 2019)

```
*************************************
CHRISTY, INC.,                        *
                                      *
                    Plaintiff,        *      Patents; Inter Partes Review; Leahy-Smith
                                      *      America Invents Act; RCFC 12(b)(1);
      v.                              *      RCFC 12(b)(6); Takings Clause; Patents as
                                      *      Property; Public Franchise; Breach of
THE UNITED STATES,                    *      Contract; Patents as Contracts; Illegal
                                      *      Exaction
                    Defendant.        *
*************************************
```

<u>Timothy C. Davis</u>, Birmingham, AL, for plaintiff.

<u>Jenna Munnelly</u>, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Chief Judge

      In this case, plaintiff Christy, Inc. ("Christy") contends that the invalidation of eighteen claims asserted in one of its patents effected a taking without just compensation in violation of the Takings Clause of the Fifth Amendment to the United States Constitution ("Takings Clause"), a breach of contract, and an illegal exaction. The invalidation of those claims occurred when the Patent Trial and Appeal Board of the United States Patent and Trademark Office issued a final written decision at the conclusion of an inter partes review of Christy's patent. Defendant moves to dismiss Christy's complaint for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC") and, alternatively, for failure to state a claim upon which this court can grant relief pursuant to RCFC 12(b)(6). As explained below, patents are neither contracts nor property for Takings Clause purposes. Further, the Patent and Trademark Office did not illegally exact Christy's funds. Therefore, the court grants defendant's motion and dismisses Christy's amended complaint.

## I. BACKGROUND

### A. Obtaining a Patent

      Article I, Section 8, Clause 8 of the United States Constitution provides that "Congress shall have Power . . . To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and

Discoveries."[1]  Congress exercises this authority through title thirty-five of the United States Code.  See generally Pub. L. No. 593, ch. 950, 66 Stat. 792 (1952).  Specifically, Congress has provided that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements" of title thirty-five.  35 U.S.C. § 101 (2012).  The claimed invention must be novel; a person is not entitled to a patent if there is prior art regarding the claimed invention, i.e., if "the claimed invention was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public" prior to the filing of the patent application.  Id. § 102.  Further, the claimed invention must be nonobvious; even if a claimed invention is novel, a person is not entitled to a patent if "the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains."  Id. § 103.

Patent applications must be submitted to the Patent and Trademark Office in writing and include a specification, a drawing, an oath or declaration, and the required fees.  Id. § 111(a); see also id. § 41(a) (listing general patent fees).  The specification

> shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor or joint inventor of carrying out the invention.  . . .  The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention.

Id. § 112(a)-(b).  Patent applications are then examined, and the Director of the Patent and Trademark Office (the "Director") "shall issue a patent" if, upon such examination, "it appears that the applicant is entitled to a patent."  Id. § 131.  Rejected or deficient applications are reexamined upon request of the applicant.  Id. § 132.  The applicant may appeal adverse decisions to the Patent Trial and Appeal Board upon payment of the appeal fee.  Id. § 134; see also id. § 41(a)(6) (listing appeal fees).  Decisions of the Patent Trial and Appeal Board are subject to appellate review in the United States Court of Appeals for the Federal Circuit

---

[1]  The facts in this section—which are undisputed for the purpose of resolving defendant's motion to dismiss—derive from the complaint, the parties' submissions (including attached exhibits), and matters of which the court may take judicial notice pursuant to Rule 201 of the Federal Rules of Evidence.  See Rocky Mountain Helium, LLC v. United States, 841 F.3d 1320, 1325-26 (Fed. Cir. 2016).

("Federal Circuit").[2]  Id. § 141(a)-(b).  Patents are generally valid for twenty years and "grant to the patentee, [and] his heirs or assigns, . . . the right to exclude others from making, using, offering for sale, or selling the invention throughout the United States or importing the invention into the United States."[3]  Id. § 154(a)(1)-(2).

## B.  Terminating a Patent

A patent owner's interest in a patent may be terminated in multiple ways.

First, a patent owner may terminate its interest in a patent by assignment.  An interest in a patent (whether in the application stage or having already been granted) may be transferred via written instrument.  Id. § 261.

Second, the Patent and Trademark Office may terminate a patent based on failure to pay fees.  See id. § 41(b)(2), (c)(1).  Once a patent is granted, its owner must periodically pay fees for the Patent and Trademark Office to "maintain[] in force" the underlying patent; these fees are known as maintenance fees.  Id. § 41(b)(1).

Third, a patent owner may have a patent (or one or more of its claims) declared invalid in judicial proceedings.  See id. § 282(c).  A patent owner whose patent is infringed may seek available remedies by filing a civil action in federal district court.[4]  Id. § 281; 28 U.S.C. § 1338 (2012); see also 35 U.S.C. § 271 (describing acts that constitute patent infringement).  If the federal government is the alleged infringer, the patent owner must sue in the United States Court of Federal Claims ("Court of Federal Claims").  28 U.S.C. § 1498(a).  A defendant in a patent infringement action may assert prior commercial use, noninfringement, absence of liability for infringement, unenforceability, or invalidity of the patent itself or one or more of its claims.  35 U.S.C. §§ 273(a), 282(b).  A patent, and each claim thereof, is "presumed valid," and a party asserting invalidity has the burden of establishing such invalidity by clear and convincing evidence.  Microsoft Corp. v. i4i Ltd. P'ship, 564 U.S. 91, 95 (2011) (quoting 35 U.S.C. § 282(a)).  Alternatively, rather than waiting to be sued for patent infringement, a party can file a civil action in federal district court for a declaratory judgment that a patent, or one or more of its claims, is "invalid, unenforceable, or not infringed."  Alice Corp. Pty. Ltd. v. CLS Bank Int'l, 573 U.S. 208, 214 (2014); see also 28 U.S.C. § 2201(a) (providing federal district courts with jurisdiction over certain types of declaratory judgment actions).

---

[2]  In lieu of appealing to the Federal Circuit, an applicant may file a civil action against the Director in the United States District Court for the Eastern District of Virginia to obtain a patent.  35 U.S.C. § 145.

[3]  If the patented invention is a process, then a patent grants the patentee "the right to exclude others from using, offering for sale or selling throughout the United States, or importing into the United States, products made by that process."  35 U.S.C. § 154(a)(1).

[4]  Similarly, judicial relief is available when the invention claimed in one patent is derived from an invention claimed in another patent.  See 35 U.S.C. § 291.

Finally, there are various types of administrative proceedings in which a patent (or one or more of its claims) may be cancelled.  See Cuozzo Speed Techs., LLC v. Lee, 136 S. Ct. 2131, 2137 (2016) ("For several decades, the [Patent and Trademark Office] has also possessed the authority to reexamine—and perhaps cancel—a patent claim that it had previously allowed."). These types of administrative proceedings include ex parte reexamination, post-grant review, and inter partes review.  See Leahy-Smith America Invents Act, Pub. L. No. 112-29, § 6, 125 Stat. 284, 299-313 (2011) (codified as amended at 35 U.S.C. §§ 311-329) (providing for post-grant review and inter partes review).

Any party may request ex parte reexamination of a patent on the basis of prior art upon filing a written petition and paying a fee.  35 U.S.C. § 302.  A patent owner may also "request supplemental examination of a patent . . . to consider, reconsider, or correct information believed to be relevant to the patent."  Id. § 257(a).  The Patent and Trademark Office must then determine, within three months after the filing of the reexamination petition, "whether a substantial new question of patentability affecting any claim of the patent concerned is raised by the request."  Id. § 303(a).  If such a substantial new question is raised, the office institutes ex parte reexamination proceedings.  Id. §§ 257(b), 304.  The Patent and Trademark Office may also institute ex parte reexamination proceedings on its "own initiative" at "any time."  Id. § 303(a).  Ex parte reexamination proceedings are "conducted according to the procedures established for initial examination."  Id. § 305.  During ex parte reexamination, the patent owner may propose amendments or additional claims to the patent at issue "to distinguish the invention as claimed from the prior art cited . . . or in response to a decision adverse to the patentability of a claim" of the relevant patent.  Id.  A patent owner dissatisfied with the result of ex parte reexamination proceedings may appeal to the Patent Trial and Appeal Board, and then to the Federal Circuit.  Id. §§ 134(b), 141(b).  Upon the conclusion of ex parte reexamination proceedings, including appeals, the Patent and Trademark Office issues a certificate confirming any claims determined to be patentable, cancelling any claims determined to be unpatentable, and incorporating any amendments or new claims determined to be patentable into the patent. Id. § 307(a).

Post-grant review allows any party to request, within nine months of a patent being granted or reissued, that one or more claims in a patent be cancelled on the grounds of invalidity. Id. § 321.  The burden of establishing unpatentability in a post-grant review proceeding is preponderance of the evidence.  Id. § 326(e).  To institute post-grant review proceedings, the Patent and Trademark Office must "determine[] that the information presented in the petition [for post-grant review], if such information is not rebutted, would demonstrate that it is more likely than not that at least [one] of the claims challenged in the patent is unpatentable" or that "the petition raises a novel or unsettled legal question that is important to other patents or patent applications."  Id. § 324(a)-(b).  The Patent and Trademark Office has three months after receiving a preliminary response to the petition (or three months after the deadline for such a response, if no response is filed) to decide whether to institute post-grant review.  Id. § 324(c). The Patent Trial and Appeal Board conducts post-grant review and must issue a final written decision upon the conclusion of proceedings (if not dismissed).  Id. §§ 326(c), 328(a).  Any party to the post-grant review proceedings may appeal the Patent Trial and Appeal Board's decision to the Federal Circuit.  Id. § 141(c).  After the Patent Trial and Appeal Board issues its decision and

appeals have terminated (or the time for appeals expires), the Patent and Trademark Office issues a certificate confirming any claims determined to be patentable and cancelling any claims determined to be unpatentable.  Id. § 328(b).

Finally, inter partes review allows any party to request, after nine months following the grant of a patent or upon termination of post-grant review proceedings (if such proceedings are instituted), that one or more claims in a patent be cancelled for failing the novelty and nonobvious conditions for patentability under 35 U.S.C. §§ 102-103 and "only on the basis of prior art consisting of patents or printed publications."  Id. § 311.  The burden of establishing unpatentability in an inter partes review proceeding is preponderance of the evidence.  Id. § 316(e).  The United States Supreme Court ("Supreme Court") describes inter partes review as a "second look at an earlier administrative grant of a patent," and notes that Congress has described it as "an efficient system for challenging patents that should not have issued."  Cuozzo, 136 S. Ct. at 2144 (internal quotation marks omitted).  To institute inter partes review proceedings, the Patent and Trademark Office must "determine[] that the information presented in the petition [for inter partes review] and any response . . . shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least [one] of the claims challenged in the petition."  35 U.S.C. § 314(a).  The Patent and Trademark Office has three months after receiving a preliminary response to the petition (or three months after the deadline for such a response, if no response is filed) to decide whether to institute inter partes review.  Id. § 324(b).  The Patent Trial and Appeal Board conducts inter partes review and must issue a final written decision upon the conclusion of proceedings (if not dismissed).  Id. §§ 316(c), 318(a).  Any party to the inter partes review proceedings may appeal the Patent Trial and Appeal Board's decision to the Federal Circuit.  Id. § 141(c).  After the Patent Trial and Appeal Board issues its decision and appeals have terminated (or the time for appeals expires), the Patent and Trademark Office issues a certificate confirming any claims determined to be patentable and cancelling any claims determined to be unpatentable.  Id. § 318(b).  Issuance and publication of the certificate officially concludes the inter partes review proceeding.  37 C.F.R. § 1.997(a) (2014).  The instant case concerns inter partes review.

### C.  Christy Acquires Its Patent

On July 18, 2003, David L. McCutchen assigned ownership of his entire right, title, and interest in his ambient air backflushed filter vacuum invention to Christy.  Am. Compl. Ex. F at 2.  That same day, Christy applied for a patent for the ambient air backflushed filter vacuum.  See Am. Compl. Ex. D at 1.  On March 2, 2006, the Patent and Trademark Office issued a Notice of Allowance and Fee(s) Due.  See generally Am. Compl. Ex. C.  In that notice, the Patent and Trademark Office indicated that (1) patent prosecution on the merits of Christy's application was closed, (2) Christy's application was "allowed for issuance as a patent" but was "not a grant of patent rights," (3) issuance and publication fees totaling $1000 were due within three months of the notice to avoid abandonment of Christy's application, and (4) twenty claims were allowed.  Id. at 1, 4.  Christy paid the fees on May 31, 2006.  Am. Compl. Ex. E.  The

Patent and Trademark Office then issued Patent 7,082,640 (the "'640 patent") on August 1, 2006 (the "patent grant date").[5]  Am. Compl. Ex. D at 1.

Thereafter, Christy paid the maintenance fees required by 35 U.S.C. § 41(b)(1) to be paid 3.5 years, 7.5 years, and 11.5 years after the patent grant date.  These due dates were February 1, 2010, February 1, 2014, and February 1, 2018, respectively.  The specific amounts paid by Christy are as follows:

- $490 on October 29, 2009, Am. Compl. Ex. G; see also 37 C.F.R. § 1.20(e) (2009) (providing that the 3.5-year maintenance fees at the time of Christy's payment were $490 for "small" entities and $980 for other entities[6]);

- $1800 on January 24, 2014, Am. Compl. Ex. H; see also 37 C.F.R. § 1.20(f) (2013) (providing that the 7.5-year maintenance fees at the time of Christy's payment were $900 for "micro" entities, $1800 for "small" entities, and $3600 for other entities[7]); and

- $3700 on January 4, 2018, Am. Compl. Ex. I; see also 37 C.F.R. § 1.20(g) (2017) (providing that the 11.5-year maintenance fees at the time of Christy's payment were $1850 for "micro" entities, $3700 for "small" entities, and $7400 for other entities).

---

[5]  The prosecution history of the '640 patent—which is not relevant to resolving defendant's motion to dismiss—is described in a federal district court claim construction decision concerning the '640 patent.  See CDC Larue Indus., Inc. v. Black & Decker (U.S.) Inc., No. 14-CV-0286-CVE-FHM, 2015 WL 224935, at *1 (N.D. Okla. Jan. 15, 2015).

[6]  A "small" entity is a "small business concern"—i.e., one with no more than 500 employees—that has not transferred its rights in the subject invention.  13 C.F.R. § 121.802 (2003); 37 C.F.R. § 1.27(a)(2) (2003).  An entity "will be accorded small entity status by the [Patent and Trademark Office] in the particular application or patent in which entitlement to small entity status was asserted."  37 C.F.R. § 1.27(b)(1).

[7]  "Micro" entities are a subset of "small" entities.  35 U.S.C. § 123; 37 C.F.R. § 1.29 (2013).  Micro entity status became available as of March 19, 2013, pursuant to the micro entity provision contained in the Leahy-Smith America Invents Act.  Changes to Implement Micro Entity Status for Paying Patent Fees, 77 Fed. Reg. 75,019, 75,019-20 (Dec. 19, 2012).

### D.  Christy Instigates Litigation Involving the ′640 Patent

On June 2, 2014, Christy and its licensee, CDC Larue Industries, Inc., filed a complaint against Dewalt Industrial Tool Co. and Black & Decker Corp. in the United States District Court for the Northern District of Oklahoma alleging infringement of the ′640 patent.  The complaint was amended, on September 12, 2014, to name Black & Decker (U.S.), Inc. ("Black & Decker"), the parent company of the defendants named in the original complaint, as the defendant.  After briefing and a hearing, the court issued its claim construction decision on January 15, 2015.  See generally CDC Larue Indus., 2015 WL 224935.  The case was subsequently stayed pending the outcome of inter partes review proceedings pertaining to the ′640 patent.

### E.  Inter Partes Review of the ′640 Patent

Before the claim construction decision in CDC Larue Industries was issued, Black & Decker petitioned the Patent and Trademark Office for inter partes review of the ′640 patent. Specifically, Black & Decker filed two petitions on December 19, 2014.  In its first petition, Black & Decker asserted that claims 1-18 of the ′640 patent were invalid.  Am. Compl. Ex. K at 6.  After Christy filed a preliminary response, the Patent Trial and Appeal Board instituted inter partes review of claims 1-18 of the ′640 patent on June 24, 2015, and assigned the matter case number IPR2015-00468.  Am. Compl. Ex. L at 1-2.[8]  In its second petition, Black & Decker asserted that claims 1, 4-10, and 13-18 of the ′640 patent were invalid.  Am. Compl. Ex. N at 5. After Christy filed a preliminary response, the Patent Trial and Appeal Board instituted inter partes review of claims 1, 4-10, and 13-18 of the ′640 patent on June 24, 2015, and assigned the matter case number IPR2015-00472.  Am. Compl. Ex. O at 1-2.[9]

On June 17, 2016, the Patent Trial and Appeal Board issued its final written decision in both inter partes review matters.  With respect to IPR2015-00468, the Patent Trial and Appeal Board determined that Black & Decker had "met its burden to prove by a preponderance of the evidence that claims 1-18 of the ′640 patent are unpatentable."  Am. Compl. Ex. M at 3.[10]  The Patent Trial and Appeal Board first explained its standard of review:

---

[8]  Exhibit L is a complete copy of the Patent Trial and Appeal Board's decision to institute inter partes review in IPR2015-00468.  See generally Black & Decker (U.S.) Inc. v. Christy, Inc., No. IPR2015-00468, 2015 WL 3920069 (P.T.A.B. June 24, 2015).

[9]  Exhibit O is a complete copy of the Patent Trial and Appeal Board's decision to institute inter partes review in IPR2015-00472.  See generally Black & Decker (U.S.) Inc. v. Christy, Inc., No. IPR2015-00472, 2015 WL 3920070 (P.T.A.B. June 24, 2015).

[10]  Exhibit M is a complete copy of the Patent Trial and Appeal Board's final written decision in IPR2015-00468.  See generally Black & Decker (U.S.) Inc. v. Christy, Inc., No. IPR2015-00468, 2016 WL 3382465 (P.T.A.B. June 17, 2016), aff'd per curiam, 696 F. App'x 1020 (Fed. Cir. Sep. 7, 2017) (mem.).

> To prevail in its challenges to the patentability of claims, the Petitioner must establish facts supporting its challenges by a preponderance of the evidence. A claim is anticipated, and, thus, unpatentable, if a single prior art reference discloses each and every element of the claimed invention. A claim is obvious, and, thus, unpatentable, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art.

Id. at 14-15 (citations omitted). Thereafter, the Patent Trial and Appeal Board analyzed each of the challenged claims, finding that:

- claims 1 and 10 were "anticipated" pursuant to 35 U.S.C. § 102, id. at 15; and

- claims 1-18 "would have been obvious" pursuant to 35 U.S.C. § 103, id. at 25, 27.

With respect to IPR2015-00472, the Patent Trial and Appeal Board determined that Black & Decker had "met its burden to prove by a preponderance of the evidence that claims 1, 4-10, and 13-18 of the ′640 patent are unpatentable." Am. Compl. Ex. P at 3.[11] Specifically, the Patent Trial and Appeal Board found:

- claims 1 and 10 were "anticipated," id. at 15; and

- claims 1, 4-9, and 13-18 "would have been obvious," id. at 24, 26-27.

Christy timely appealed both decisions to the Federal Circuit. On September 7, 2017, the Federal Circuit affirmed the Patent Trial and Appeal Board's decision in IPR2015-00468. Christy, Inc. v. Black & Decker (U.S.), Inc., 696 F. App'x 1020 (Fed. Cir. Sep. 7, 2017) (mem.) (per curiam) (case 2016-2498). That same day, the Federal Circuit dismissed Christy's appeal of IPR2015-00472 as moot. Christy, Inc. v. Black & Decker (U.S.), Inc., 696 F. App'x 1020 (Fed. Cir. Sep. 7, 2017) (mem.) (per curiam) (case 2017-2499). On August 14, 2018, the Patent and Trademark Office issued and published an Inter Partes Review Certificate officially cancelling claims 1-18 of the ′640 patent. U.S. Patent No. 7,082,640, at 13-14.

---

[11] Exhibit P is a complete copy of the Patent Trial and Appeal Board's final written decision in IPR2015-00472. See generally Black & Decker (U.S.) Inc. v. Christy, Inc., No. IPR2015-00472, 2016 WL 3382466 (P.T.A.B. June 17, 2016), appeal dismissed as moot per curiam, 696 F. App'x 1020 (Fed. Cir. Sep. 7, 2017) (mem.).

Meanwhile, on April 13, 2018, the patent infringement case in federal district court, which had been stayed pending the outcome of the inter partes review proceedings, was dismissed with prejudice.  Jt. Stip., <u>CDC Larue Indus., Inc. v. Black & Decker (U.S.) Inc.</u>, No. 4:14-cv-00286 (N.D. Okla. Apr. 13, 2018).

## F.  Procedural History

Christy filed suit in this court on May 9, 2018, and subsequently amended its complaint on July 30, 2018.  In its amended complaint, Christy asserts six counts:

- Count I—Taking of Property Without Just Compensation, Am. Compl. ¶¶ 94-107;

- Count II—Breach of Contract, <u>id.</u> ¶¶ 108-24;

- Count III—Breach of Implied-in-Fact Contract (in the Alternative to Count II), <u>id.</u> ¶¶ 125-41;

- Count IV—Breach of Implied Duty of Good Faith and Fair Dealing, <u>id.</u> ¶¶ 142-52;

- Count V—Unjust Enrichment, <u>id.</u> ¶¶ 153-67; and

- Count VI—Exaction (in the Alternative to Count I), <u>id.</u> ¶¶ 168-76.

Christy requests class certification, a declaratory judgment that inter partes review effects a Fifth Amendment taking and a breach of contract, damages "including but not limited to expected royalties and other payments related to use of the patents," attorneys' fees, costs, and prejudgment and postjudgment interest.  <u>Id.</u> ¶ 177.  Defendant moves to dismiss for lack of subject-matter jurisdiction pursuant to RCFC 12(b)(1) and, alternatively, for failure to state a claim upon which this court can grant relief pursuant to RCFC 12(b)(6).

Defendant's motion is now fully briefed.  The parties did not request oral argument, and the court deems it unnecessary.  Defendant's motion is now ripe for adjudication.

## II.  STANDARDS OF REVIEW

### A.  RCFC 12(b)(1)

In determining whether subject-matter jurisdiction exists, the court "must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff."  <u>Trusted Integration, Inc. v. United States</u>, 659 F.3d 1159, 1163 (Fed. Cir. 2011).  With respect to a motion to dismiss for lack of subject-matter jurisdiction pursuant to RCFC 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of evidence, that

the court possesses subject-matter jurisdiction.  Id.  If jurisdictional facts are challenged, the court is not limited to the pleadings in determining whether it possesses subject-matter jurisdiction to entertain a plaintiff's claims.  Banks v. United States, 741 F.3d 1268, 1277 (Fed. Cir. 2014); Pucciariello v. United States, 116 Fed. Cl. 390, 400 (2014).  If the court finds that it lacks subject-matter jurisdiction over a claim, RCFC 12(h)(3) requires the court to dismiss that claim.

## B.  Subject-Matter Jurisdiction

Whether the court possesses subject-matter jurisdiction to decide the merits of a case is a threshold matter.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998); see also Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006) (explaining that subject-matter jurisdiction cannot be forfeited or waived because it "involves a court's power to hear a case" (citing United States v. Cotton, 535 U.S. 625, 630 (2002))); Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999) ("[A] federal court [must] satisfy itself of its jurisdiction over the subject matter before it considers the merits of a case."), quoted in Hymas v. United States, 810 F.3d 1312, 1316-17 (Fed. Cir. 2016); Matthews v. United States, 72 Fed. Cl. 274, 278 (2006) (stating that subject-matter jurisdiction is "an inflexible matter that must be considered before proceeding to evaluate the merits of a case").  "Without jurisdiction the court cannot proceed at all in any cause.  Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."  Ex parte McCardle, 74 U.S. (7 Wall) 506, 514 (1868).  Either party, or the court sua sponte, may challenge the court's subject-matter jurisdiction at any time.  Arbaugh, 546 U.S. at 506.

The ability of the Court of Federal Claims to entertain suits against the United States is limited.  "The United States, as sovereign, is immune from suit save as it consents to be sued." United States v. Sherwood, 312 U.S. 584, 586 (1941).  The waiver of immunity "cannot be implied but must be unequivocally expressed."  United States v. King, 395 U.S. 1, 4 (1969).  The Tucker Act, the principal statute governing the jurisdiction of this court, waives sovereign immunity for claims against the United States, not sounding in tort, that are founded upon the Constitution, a federal statute or regulation, or an express or implied contract with the United States.  28 U.S.C. § 1491(a)(1).  However, the Tucker Act is merely a jurisdictional statute and "does not create any substantive right enforceable against the United States for money damages." United States v. Testan, 424 U.S. 392, 298 (1976).  Instead, the substantive right must appear in another source of law, such as a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States."  Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1554 (Fed. Cir. 1994) (en banc).

## C.  RCFC 12(b)(6)

A claim that survives a jurisdictional challenge remains subject to dismissal under RCFC 12(b)(6) if the claim does not provide a basis for the court to grant relief.  See Lindsay v. United States, 295 F.3d 1252, 1257 (Fed. Cir. 2002) (explaining that an RCFC 12(b)(6) motion to dismiss is "appropriate when the facts asserted by the claimant do not entitle him to a legal remedy").  To survive an RCFC 12(b)(6) motion to dismiss, a plaintiff must include in its

complaint "enough facts to state a claim to relief that is plausible on its face" sufficient for the defendant to have "fair notice" of the claim and the "grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007) (internal quotation marks omitted).  In other words, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).  In ruling on such a motion, the court must "accept as true all of the factual allegations contained in the complaint" and any attachments thereto.  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (citing Twombly, 550 U.S. at 555-56); accord RCFC 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes."); Rocky Mountain, 841 F.3d at 1325 (applying RCFC 10(c) and emphasizing that "a court 'must consider the complaint in its entirety, . . . in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice'" (quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007))).

The issue at this stage of litigation is not the sufficiency of any potential defenses or the likelihood of Christy's eventual success on the merits of its allegations, but simply whether Christy has alleged specific facts describing a plausible claim for relief.  See Chapman Law Firm Co. v. Greenleaf Constr. Co., 490 F.3d 934, 938 (Fed. Cir. 2007) ("The court must determine 'whether the claimant is entitled to offer evidence to support the claims,' not whether the claimant will ultimately prevail." (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974))).

### III.  TAKINGS CLAUSE CLAIM

The court first turns to Count I of Christy's amended complaint, in which Christy asserts a cause of action pursuant to the Takings Clause.

### A.  The Court of Federal Claims Has Jurisdiction to Consider Christy's Takings Clause Claim

The Fifth Amendment prohibits the federal government from taking private property for public use without paying just compensation.  U.S. Const. amend. V.  "It is undisputed that the Takings Clause of the Fifth Amendment is a money-mandating source [of law] for purposes of Tucker Act jurisdiction" in the Court of Federal Claims.  Jan's Helicopter Serv., Inc. v. FAA, 525 F.3d 1299, 1309 (Fed. Cir. 2008).  However, a plaintiff must still allege a nonfrivolous Takings Clause claim to invoke this court's Tucker Act jurisdiction.  Moden v. United States, 404 F.3d 1335, 1341 (Fed. Cir. 2005).  Christy asserts that it had a property right in its claimed invention, as well as "property rights in the issue fees and maintenance fees paid, investments in the underlying technologies to the invalidated claims, and to the monies spent in defending" its patent claims throughout the inter partes review process.  Am. Compl. ¶ 97.  According to Christy, "each of [its] property rights in the invalidated claims, along with the issuance and maintenance fees and the investments made in the patented technologies," were taken by the federal government for public use when claims 1-18 of the ′640 patent were invalidated.  Id. ¶ 100.  In other words, Christy asserts that it had certain property rights that were taken by the federal government without just compensation.  There is no indication (nor does defendant

suggest) that such allegations are frivolous.[12]  Accordingly, the court has jurisdiction to consider Count I of Christy's complaint.  Whether Christy has stated a plausible claim upon which this court can grant relief is a separate issue.

## B.  Christy Fails to State a Plausible Takings Clause Claim Upon Which This Court Can Grant Relief

To prevail on a takings claim, a plaintiff must "identify[] a valid property interest" under the Fifth Amendment and show a "governmental action [that] amounted to a compensable taking of that property interest."  Air Pegasus of D.C., Inc. v. United States, 424 F.3d 1206, 1212-13 (Fed. Cir. 2005); accord Casitas Mun. Water Dist. v. United States, 708 F.3d 1340, 1348 (Fed. Cir. 2013); Hearts Bluff Game Ranch, Inc. v. United States, 669 F.3d 1326, 1329 (Fed. Cir. 2012).  In addition, a plaintiff must concede the legitimacy of the government action that effected the taking.  Hearts Bluff, 669 F.3d at 1332 (citing Tabb Lakes, Ltd. v. United States, 10 F.3d 796, 802 (Fed. Cir. 1993)).

Christy does not contend that inter partes review—the process by which Christy alleges its property rights were taken—is not legitimate government action.  Indeed, Christy emphasizes that inter partes review was "created through" the Leahy-Smith America Invents Act, Am. Compl. ¶ 7, and does not argue that the Patent Trial and Appeal Board failed to follow established procedures throughout the inter partes review process pertaining to the ʹ640 patent.  Further, Christy relies heavily on the recent decision in Oil States Energy Services, LLC v. Greene's Energy Group LLC ("Oil States"), in which the Supreme Court held that "inter partes review does not violate Article III or the Seventh Amendment" of the United States Constitution. 138 S. Ct. 1365, 1379 (2018).  The court's evaluation of defendant's motion to dismiss Count I of Christy's amended complaint therefore turns on whether Christy's patent is a "valid property interest" for Takings Clause purposes.  See, e.g., Skip Kirchdorfer, Inc. v. United States, 6 F.3d 1573, 1580 (Fed. Cir. 1993) ("Not all losses generate a Fifth Amendment taking.").

Whether patents constitute property for Takings Clause purposes is not an issue of first impression.  In Schillinger v. United States, the Supreme Court held that a patentee could not cast his patent infringement suit against the federal government as a Takings Clause action.  155 U.S. 163, 169 (1894).  The Supreme Court observed that a suit for patent infringement was essentially an action "sounding in tort," the federal government had not waived its sovereign immunity with respect to such actions, and patentees had no remedy for patent infringement by the federal government absent some form of a contractual relationship.  Id. at 168-71; accord United States v. Berdan Firearms Mfg. Co., 156 U.S. 552, 565-66 (1895) ("Even if there were findings sufficient to show that the government had in any manner infringed upon this patent,

---

[12]  In addition, "a claim alleging a Fifth Amendment taking accrues when the act that constitutes the taking occurs."  Ingrum v. United States, 560 F.3d 1311, 1314 (Fed. Cir. 2009). Christy's Takings Clause claim accrued on June 17, 2016, the date on which the Patent Trial and Appeal Board issued its final written decision invalidating claims 1-18 of the ʹ640 patent. Accordingly, Christy's complaint was filed well within the six-year statute of limitations set forth in 28 U.S.C. § 2501.

there is nothing disclosing a contract, express or implied; and a mere infringement, which is only a tort, creates no cause of action cognizable in the court of claims."). This jurisdictional hurdle was resolved in 1910, when Congress enacted the predecessor to 28 U.S.C. § 1498 to provide the United States Court of Claims, a predecessor to this court, with jurisdiction to entertain patent infringement suits against the federal government. See generally Act of June 25, 1910, Pub. L. No. 61-305, 36 Stat. 851.

Nearly a century later, the Federal Circuit considered, among other issues, an appeal of a determination by the Court of Federal Claims "that it could assert jurisdiction over [the plaintiff's] patent infringement allegations by treating the action as a Fifth Amendment taking under the Tucker Act." Zoltek Corp. v. United States, 442 F.3d 1345, 1348 (Fed. Cir. 2006), vacated on other grounds, 672 F.3d 1309, 1317-22 (Fed. Cir. 2012) (en banc portion). The Federal Circuit described the Schillinger decision as "the Supreme Court reject[ing] an argument that a patentee could sue the government for patent infringement as a Fifth Amendment taking under the Tucker Act," disagreed with the trial court's determination that the Supreme Court had "effectively overruled" Schillinger in subsequent decisions, and specified that "Schillinger remains the law." Id. at 1350 (internal quotation marks omitted). Allowing patent owners to style patent infringement actions as Taking Clause claims would, the Federal Circuit explained, "read an entire statute, [28 U.S.C.] § 1498, out of existence." Id. at 1352. The Federal Circuit further expounded on patent rights vis-à-vis the Takings Clause:

> As the Supreme Court has clearly recognized when considering Fifth Amendment taking allegations, property interests are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. Here, the patent rights are a creature of federal law. In response to Schillinger, Congress provided a specific sovereign immunity waiver for a patentee to recover for infringement by the government. Had Congress intended to clarify the dimensions of the patent rights as property interests under the Fifth Amendment, there would have been no need for the new and limited sovereign immunity waiver.

Id. (emphasis added) (alteration, citation, and internal quotation marks omitted) (citing Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1001 (1984)). In other words, Congress has not expressed any intent that patent rights may be the subject of Takings Clause claims. Since patent rights derive wholly from federal law, Congress is free to define those rights (and any attendant remedies for an intrusion on those rights) as it sees fit.

The Supreme Court's recent decision in Oil States does not disturb the principle that patents (including patent rights) are not property for Takings Clause purposes. As Christy emphasizes, the Supreme Court specified that its holding regarding the "constitutionality of inter partes review . . . should not misconstrued as suggesting that patents are not property for purposes of the Due Process Clause or the Takings Clause." Oil States, 138 S. Ct. at 1379.

-13-

However, Christy's statement that the <u>Oil States</u> decision "acknowledged that there exist[s] precedent holding that patents are property subject to a Fifth Amendment taking," Pl.'s Resp. 7, misconstrues that decision. The decision does not suggest, as Christy champions, that patents are property for Takings Clause purposes. Indeed, the statement that Christy emphasizes merely defined the scope of the decision:

> We emphasize the narrowness of our holding. We address the constitutionality of inter partes review only. We do not address whether other patent matters, such as infringement actions, can be heard in a non-Article III forum. And because the Patent Act provides for judicial review by the Federal Circuit, we need not consider whether inter partes review would be constitutional without any sort of intervention by a court at any stage of the proceedings. Moreover, we address only the precise constitutional challenges that Oil States raised here. Oil States does not challenge the retroactive application of inter partes review, even though that procedure was not in place when its patent issued. Nor has Oil States raised a due process challenge. Finally, our decision should not be misconstrued as suggesting that patents are not property for purposes of the Due Process Clause or the Takings Clause.

<u>Oil States</u>, 138 S. Ct. at 1379 (citations and internal quotation marks omitted). In other words, the Supreme Court took no position in <u>Oil States</u> on the issue of whether patents were property for Takings Clause purposes because that matter was not before the court.

Although the Supreme Court did not analyze whether patents are property for Takings Clause purposes in <u>Oil States,</u> it discussed the nature of the property rights that patent owners have in their patents. That discussion was central to the Supreme Court's analysis of the constitutionality of inter partes review and thus cannot be dismissed as dicta. The Supreme Court observed that its longstanding precedent teaches that "the decision to <u>grant</u> a patent is a matter involving public rights—specifically, the grant of a public franchise," <u>id.</u> at 1373, and noted that the franchise "is a 'creature of statute law,'" <u>id.</u> at 1374 (quoting <u>Crown Die & Tool Co. v. Nye Tool & Machine Works</u>, 261 U.S. 24, 40 (1923)). It emphasized that "[p]atent claims are granted subject to the qualification that the [Patent and Trademark Office] has 'the authority to reexamine—and perhaps cancel—a patent claim' in an inter partes review" and that "franchises can be qualified in this manner." <u>Id.</u> at 1374-75 (quoting <u>Cuozzo</u>, 136 S. Ct. at 2137). Importantly, the Supreme Court remarked that the handful of prior decisions characterizing patents as "private property" did not contradict its conclusion in <u>Oil States</u> that patents are public franchises. <u>Id.</u> at 1375.

Because "[p]atents convey only a specific form of property right—a public franchise . . . , a patent can confer only the rights that the statute prescribes." <u>Id.</u> Federal law provides that "patents shall have the <u>attributes</u> of personal property." 35 U.S.C. § 261 (emphasis added). However, that rule is not absolute, nor does it reflect Congress's intent for patents to be treated

the same as any other particular form of personal property.  A patent owner's rights are qualified and specifically "[s]ubject to the provisions of [title thirty-five of the United States Code]."  Id.; accord Oil States, 138 S. Ct. at 1377 ("Congress may set out conditions and tests for patentability." (quoting Graham v. John Deere Co. of Kan. City, 383 U.S. 1, 6 (1966))); Boyden v. Comm'r of Patents, 441 F.2d 1041, 1043 (D.C. Cir. 1971) ("No person has a vested right to a patent, but is privileged to seek the protected monopoly only upon compliance with the conditions which Congress has imposed." (citation omitted)), cert. denied, 404 U.S. 842.  As relevant here, the Patent and Trademark Office has "continuing authority to review and potentially cancel patents after they are issued."  Oil States, 138 S. Ct. at 1376 n.3 (citing 35 U.S.C. §§ 261, 311-319).

Christy relies heavily on Horne v. Department of Agriculture to support the propositions that the Takings Clause (1) applies equally to personal property and real property and (2) includes protection against "a regulatory taking—a restriction on the use of property."  135 S. Ct. 2419, 2427 (2015), quoted in Pl.'s Resp. 6-7.  Christy correctly states the law, but misses the mark in its application to the cancellation of patent claims pursuant to inter partes review.  As explained above, while patent rights are indeed a form of property rights, patents are public franchises.  Therefore, patent rights are not equivalent to private rights.  Moreover, the Horne decision involved the federal government's appropriation of farmers' tangible personal property—raisins—for public purposes via a process in which title to the raisins passed to the government.  Id. at 2424.  In other words, the property rights at issue in Horne were private rights, whereas the property rights at issue in this case concern public franchises.  Further, in the instant case, claims 1-18 of the '640 patent were extinguished and thus, unlike in Horne where title to the raisins passed to the government, there is no title to pass.  Accordingly, Horne is sufficiently distinguishable from the instant case to offer any support for Christy's position.

In that same vein, Christy's reliance on nineteenth-century Supreme Court decisions to equate patent rights to land rights for Takings Clause purposes is ill-considered.  Any comparison of "invention patents" to "land patents" based on those decisions is unavailing:

> [T]he analogy between the two [in prior Supreme Court decisions] depended on the particulars of the Patent Act of 1870.  Modern invention patents, by contrast, are meaningfully different from land patents.  The land-patent cases . . . involved a transaction in which all authority or control over the lands has passed from the Executive Department.  Their holdings do not apply when the Government continues to possess some measure of control over the right in question.  And that is true of modern invention patents under the current Patent Act . . . .

Oil States, 138 S. Ct. at 1376 n.3.  In other words, modern invention patents are distinguishable from land patents because the Patent and Trademark Office exercises continuing authority over invention patents, whereas the government generally cedes "all authority or control" over the land in question when it issues a land patent.

-15-

In short, patents are public franchises, not private property.[13]  Because "[a] taking compensable under the Fifth Amendment inherently requires the existence of 'private property,'" Skip Kirchdofer, 6 F.3d at 1580, patent rights are not cognizable property interests for Takings Clause purposes.  In any event, patent owners have no property right to maintain patent claims that are found to be unpatentable, regardless of the timing of any such determination.  Therefore, Christy's Takings Clause claim fails as a matter of law.  The court must dismiss Count I of Christy's amended complaint for failure to state a claim upon which this court can grant relief.

## IV.  CONTRACT CLAIMS

The court next turns to Counts II, III, and IV of Christy's amended complaint.  In Count II, Christy alleges a breach of an express contract.  In Count III, Christy alleges (as an alternative to Count II) a breach of an implied-in-fact contract.  In Count IV, Christy alleges a breach of the implied duty of good faith and fair dealing arising out of either an express or implied-in-fact contract.

### A.  The Court of Federal Claims Has Jurisdiction to Consider Some of Christy's Contract Claims

In contract disputes, the "money-mandating requirement for Tucker Act jurisdiction normally is satisfied by the presumption that money damages are available for breach of contract."[14]  Holmes, 657 F.3d at 1314.  Therefore, a "non-frivolous allegation of a contract with the government" is generally sufficient to invoke the court's Tucker Act jurisdiction.  Engage Learning, Inc. v. Salazar, 660 F.3d 1346, 1353 (Fed. Cir. 2011) (emphasis added).  The court's contract jurisdiction extends to claims involving implied-in-fact contracts, but not to claims involving implied-in-law contracts.  Hercules, Inc. v. United States, 516 U.S. 417, 423 (1996).  An implied-in-law contract is a "fiction of law where a promise is imputed to perform a legal duty, as to repay money obtained by fraud or duress."  Id. at 424 (internal quotation marks omitted).  In contrast, an implied-in-fact contract results from a "meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding."  Id. (internal

---

[13]  While patents are not equivalent to private property, patent holders are nevertheless entitled to procedural due process as recipients of a federal benefit.  Cf. Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 576 (1972) ("[A] person receiving welfare benefits under statutory and administrative standards defining eligibility for them has an interest in continued receipt of those benefits that is safeguarded by procedural due process.").  However, Christy does not allege any violation of the Due Process Clause of the Fifth Amendment.  Even if Christy had done so, it would be of no moment because the Court of Federal Claims lacks jurisdiction over Due Process Clause claims.  See LeBlanc v. United States, 50 F.3d 1025, 1028 (Fed. Cir. 1995).

[14]  The mere existence of a contract, however, does not automatically give rise to the court's Tucker Act jurisdiction because not all contracts contemplate money damages.  See Holmes v. United States, 657 F.3d 1303, 1314 (Fed. Cir. 2011) (describing contracts that do not fall within the reach of the Tucker Act).

quotation marks omitted).  The requirements for an implied-in-fact contract with the government "are the same as for an express contract":

  (1)  mutuality of intent,

  (2)  consideration,

  (3)  an unambiguous offer and acceptance, and

  (4)  "actual authority" on the part of the government's
       representative to bind the government in contract.

Hanlin v. United States, 316 F.3d 1325, 1328 (Fed. Cir. 2003).  The only difference between express contracts and implied-in-fact contracts is the nature of the evidence required to establish their existence.  Id.

Even when a plaintiff properly alleges a contract with the government, the Court of Federal Claims cannot exercise its jurisdiction unless the plaintiff also satisfies the pleading requirements set forth in RCFC 9(k).  See, e.g., Baha v. United States, 123 Fed. Cl. 1, 5 n.4 (2015) ("Satisfaction of RCFC 9(k) is a jurisdictional requirement."); see also Huntington Promotional & Supply, LLC v. United States, 114 Fed. Cl. 760, 766 (2014) ("If a plaintiff fails to comply with RCFC 9(k) and to allege sufficient facts to show that it had a contract with the United States, the court cannot exercise jurisdiction over the claim."); Kissi v. United States, 102 Fed. Cl. 31, 35 (2011) (finding no jurisdiction based on the plaintiff's failure to show an existing contract and failure to "adequately plead a contract claim under RCFC 9(k)"), aff'd per curiam, 493 F. App'x 57 (Fed. Cir. 2012).  RCFC 9(k) requires a party, "[i]n pleading a claim founded on a contract," to "identify the substantive provisions of the contract . . . on which the party relies."  A plaintiff that attaches a copy of the alleged contract to the complaint and "identif[ies] the provisions and terms of the contract that have been breached" satisfies its burden under RCFC 9(k) because doing so allows the court to "render a decision . . . know[ing] the relevant terms of the contract."  Garreaux v. United States, 77 Fed. Cl. 726, 730 (2007), quoted in Gonzalez-McCaulley Inv. Grp., Inc. v. United States, 93 Fed. Cl. 710, 715 (2010).

## 1. Express Contract

In Count II of its amended complaint, Christy alleges that the "Patent Certificate memorializes the terms of contract" between itself and the Patent and Trademark Office.  Am. Compl. ¶ 111.  Christy also describes the patent certificate, which was signed by the Director pursuant to his alleged authority to contract, id. ¶¶ 113, as "constitut[ing] a valid, existing contract with all the necessary terms," id. ¶ 115.  In other words, Christy alleges the existence of an express contract.  Further, the parties appear to agree, and therefore the court assumes (without deciding) as such, that Christy's allegations regarding the existence of an express contract are not frivolous.

In addition to alleging the existence of an express contract, Christy satisfied the RCFC 9(k) pleading requirements. Christy attached both the Notice of Allowance and Fee(s) Due and the patent certificate for the ′640 patent as exhibits to its amended complaint. Christy also identified the "relevant terms of the [alleged] contract" by describing the duties that the alleged contract purportedly imposed on both parties and highlighting those duties that Christy contends the Patent and Trademark Office breached. In other words, Christy's references to the alleged contract, which was attached to its amended complaint, are sufficient to apprise the court of the relevant provisions.

In short, Christy has (1) made a nonfrivolous allegation regarding the existence of an express contract with the Patent and Trademark Office and (2) satisfied the RCFC 9(k) pleading requirements. Therefore, the court has jurisdiction to consider Count II of Christy's amended complaint.

## 2. Implied-in-Fact Contract

In Count III of its amended complaint, Christy alleges that, in the alternative to the existence of an express contract, (1) the Notice of Allowance and Fee(s) Due reflected "a mutual intent to contract" between itself and the Patent and Trademark Office; (2) the required fees constituted consideration; (3) "[n]o ambiguity existed as to the terms of the implied contract," which were "memorialize[d]" in the patent certificate; and (4) the Director "had actual authority to contractually bind the government" or, at a minimum, implied actual authority. Id. ¶¶ 128-30. In other words, Christy alleges the existence of an implied-in-fact contract. As with Christy's allegations regarding the existence of an express contract, there is no indication that Christy's allegations regarding the existence of an implied-in-fact contract are frivolous, and defendant does not contend as such. Further, Christy satisfied the RCFC 9(k) pleading requirements for the reasons discussed above.

Christy contends that under its alleged implied-in-fact contract with the Patent and Trademark Office, the Patent and Trademark Office had a duty "to keep the patent claims in force as long as [Christy] paid [its] issue and maintenance fees." Id. ¶ 129. Christy relies on two statutes for the source of those duties—35 U.S.C. § 41 (discussing issuance and maintenance fees) and 35 U.S.C. § 154 (discussing patent terms). Id. ¶¶ 131, 133; see also id. ¶¶ 136-37 (asserting that the Patent and Trademark Office "materially breached the terms of the implied-in-fact contract" by invalidating claims 1-18 of the ′640 patent prior to the end of the statutory term). In other words, "[a] plain reading of the amended complaint makes clear" that Christy relies on these statutes "to establish the existence of [its] alleged contract[] with the government." eVideo Owners v. United States, 126 Fed. Cl. 95, 103 (2016), aff'd per curiam, 680 F. App'x 1004 (Fed. Cir. 2017).

Such reliance deprives the Court of Federal Claims of jurisdiction over Christy's claims based on an implied-in-fact contract. In Lion Raisins, Inc. v. United States, the plaintiff alleged that after it had paid for certain inspection services mandated by statute and applicable regulations, the United States Department of Agriculture breached an implied-in-fact contract to perform those inspections by failing to perform inspections in the required manner or at all. 54

Fed. Cl. 427, 429 (2002).  The court determined that "the requirement for inspections and the payment of fees were pursuant to law and not the result of (1) an offer, (2) acceptance, (3) consideration, and (4) an agreement with a Government agent authorized to bind the Government."  Id. at 431 (internal quotation marks omitted).  Because any such obligations "would be implied in law, not implied-in-fact" as the plaintiff had argued, the Court of Federal Claims concluded that it lacked subject-matter jurisdiction to hear claims for the breach of those obligations.  Id. at 432.  In eVideo Owners, the plaintiff also alleged the existence of an implied-in-fact contract to establish subject-matter jurisdiction. 126 Fed. Cl. at 103.  The court found that the plaintiffs "point[ed] to a duty that arises by operation of law to establish the alleged contracts with the United States" and that "[s]uch a duty cannot create an implied-in-fact contract that would fall within the [Court of Federal Claims'] jurisdiction."  Id. at 104 (citing Lion Raisins, 54 Fed. Cl. at 432).

Similar to the plaintiffs in Lion Raisins and eVideo Owners, Christy, in an attempt to establish the existence of an implied-in-fact contract, relies on statutory provisions to define its purported contracting partner's obligations.  Therefore, as in Lion Raisins and eVideo Owners, Christy actually alleges that it has entered into an implied-in-law contract, rather than an implied-in-fact contract.  As such, the court lacks jurisdiction to consider Count III of Christy's amended complaint, and it must be dismissed.

### 3.  Implied Duty of Good Faith and Fair Dealing

In addition to alleging a breach of contract in Counts II and III of its amended complaint, Christy asserts, in Count IV, that the Patent and Trademark Office breached its implied duty of good faith and fair dealing arising from an express (or alternatively, implied-in-fact) contract.

A cause of action based on the implied duty of good faith and fair dealing is simply a specific breach-of-contract claim.  See Centex Corp. v. United States, 395 F.3d 1283, 1304 (Fed. Cir. 2005) ("The covenant of good faith and fair dealing is an implied duty that each party to a contract owes to its contracting partner." (emphasis added)).  The duty of good faith and fair dealing is applicable in both private and government contracts, id., and its existence "depends on the existence of an underlying contractual relationship," Scott Timber Co. v. United States, 692 F.3d 1365, 1372 (Fed. Cir. 2012) (internal quotation marks omitted).  Therefore, when the court has subject-matter jurisdiction over a breach-of-contract claim, it has subject-matter jurisdiction over a claim for breach of the implied duty of good faith and fair dealing pertaining to the same alleged contract (whether the alleged contract is express or implied-in-fact).

As discussed above, the court has subject-matter jurisdiction to consider Christy's claim for breach of an express contract with the Patent and Trademark Office.  Accordingly, the court has jurisdiction to consider Count IV of Christy's amended complaint to the extent that it relies on the existence of an express contract.  However, also as discussed above, the court lacks subject-matter jurisdiction to consider Christy's claim for breach of an implied-in-fact contract. The court therefore lacks jurisdiction to consider, and accordingly must dismiss, Count IV of Christy's amended complaint to the extent that it relies on the existence of an implied-in-fact contract.

**B.  Christy Fails to State a Plausible Contract Claim Upon Which This Court Can Grant Relief**

The court must now consider whether Christy's surviving breach-of-contract claims are plausible claims upon which this court can grant relief.  To prove a breach of contract, a plaintiff must establish "(1) a valid contract between the parties; (2) an obligation or duty arising from that contract; (3) a breach of that duty; and (4) damages caused by the breach."  Century Expl. New Orleans, LLC v. United States, 110 Fed. Cl. 148, 163 (2013) (citing San Carlos Irr. & Drainage Dist. v. United States, 877 F.2d 957, 959 (Fed. Cir. 1989)), aff'd, 745 F.3d 1168 (Fed. Cir. 2014).  Once a breach of contract is established, the burden shifts to the defendant to plead and prove affirmative defenses that excuse the breach.  Shell Oil Co. v. United States, 751 F.3d 1282, 1297 (Fed. Cir. 2014) (citing Stockton E. Water Dist. v. United States, 583 F.3d 1344, 1360 (Fed. Cir. 2009)).  Christy's contract claims fail as a matter of law because Christy cannot demonstrate that it had a valid contract with the Patent and Trademark Office.

Federal Circuit precedent is unequivocal:  "[a] patent is not a contract."  In re Yardley, 493 F.2d 1389, 1395 (C.C.P.A. 1974).  The United States Court of Customs and Patent Appeals ("Court of Customs and Patent Appeals"), a predecessor to the Federal Circuit, described the notion "that a patent is a contract" as a "popular myth."  Krantz v. Olin, 356 F.2d 1016, 1020 (C.C.P.A. 1966).  The court further explained that

> an application for a patent . . . is not negotiating a contract with the Government.  Rather, [the plaintiff] is applying for a grant in accordance with a statute under which the right to a patent depends on compliance with the statutory terms and conditions.  The prosecution of an application is not bargaining but a process of demonstration and persuasion that the statute has been complied with.

Id.

The Federal Circuit has reiterated the principle that patents are not contracts in multiple decisions since Krantz and Yardley.  In Constant v. United States ("Constant I"), the Federal Circuit emphasized that the United States Claims Court ("Claims Court"), the predecessor to the Court of Federal Claims, "followed the precedents of [the Federal Circuit] by holding that the issuance of a patent by the [Patent and Trademark Office] does not create a contractual relationship."[15]  No. 88-1426, 1988 WL 94630, at *1 (Fed. Cir. Sept. 13, 1988) (unpublished per

---

[15]  The plaintiff had sought "reimbursement for the costs of litigating and defending [his] two patents, on the theory that the government had breached 'patent grant contracts' by issuing to him two patents containing defects for which they were later held invalid."  Constant v. United States ("Constant II"), 929 F.2d 654, 656 (Fed. Cir. 1991) (discussing prior case).  The trial court held "as a matter of law that the issuance of a patent by the Patent and Trademark Office does not create a contractual relationship between that office and the patentee."  Id. (internal quotation marks omitted).

curiam table decision) (emphases added).  Approximately two years later, the plaintiff in Constant I unsuccessfully sought to vacate the trial court's judgment.  Constant II, 929 F.2d at 655.  In affirming the trial court's refusal to vacate its earlier judgment, the Federal Circuit observed that the plaintiff's "'patent grant' contract claim was untenable as a matter of law, and no additional proceedings could have enabled [him] to prove any set of facts entitling him to prevail on his claim for relief."  Id. at 657.

Nearly seven years after its first Constant decision, the Federal Circuit acknowledged, in Markman v. Westview Instruments, Inc., that "[t]he analogy of a patent to a contract may appear to some extent to be an appropriate way of describing the circumstances surrounding the issuance of a patent."  52 F.3d 967, 984-85 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996).  However, the Federal Circuit then described ways in which patent applications were "unlike contracts," and indicated that "[t]he more appropriate analogy for interpreting patent claims is the statutory interpretation analogy" rather than contract interpretation.  Id. at 986-87.  Additionally, the Federal Circuit specified that "[t]he analogy of a patent to a contract is not useful . . . in the context of a patent infringement suit" because "[p]atents are not contracts per se."  Id. at 985; accord id. ("[P]atent infringement actions have never been viewed as breach of contract actions.  Patent infringement has often been described as a tort.").

A decade later, in Highway Equipment Co. v. FECO, Ltd., the Federal Circuit further distinguished contracts from patents when it observed that certain facts described by the plaintiff "involved not a contract, but a patent."  469 F.3d 1027, 1038 (Fed. Cir. 2006).

Christy attempts to paint these Federal Circuit decisions as "ineffective."  Pl.'s Resp. 28.  Specifically, Christy avers that those decisions are "inapplicable" to the instant case because they were issued before the Supreme Court's Oil States decision and the relevant language is merely dicta.  Id. at 27-28.  Christy also avers that Krantz and Yardley do not "bear on this dispute" because they are decisions of the Court of Customs and Patent Appeals.  Id. at 27-28 & n.16.  Similarly, Christy proclaims that the relevant language in Markman and Highway Equipment is "also dicta" because, although they are Federal Circuit decisions, they were appeals of district court rulings.  Id. at 28.  Finally, Christy argues that Constant I is simply a "one-word . . . affirmance" and "does not cite or appear to have any relationship to Yardley."  Id. at 28 & n.17.  Christy is incorrect.

First, the Oil States decision did not overrule Krantz, Yardley, Constant I, Constant II, Markman, or Highway Equipment either explicitly or implicitly.  In particular, the Supreme Court's characterization, in Oil States, of patents as public franchises referred to "the right to exclude others from making, using, offering for sale, or selling the [patented] invention throughout the United States," 138 S. Ct. at 1373 (quoting 35 U.S.C. § 154(a)(1))—not contracts.[16]

_____

[16]  To the extent that the "public franchise" references in Oil States pertained to a contract with the government, the contract was with the government acting in its sovereign capacity, not in a commercial or proprietary capacity.  See Oil States, 138 S. Ct. at 1373 ("[T]he grant of a patent involves a matter . . . between the public, who are the grantors, and the patentee." (internal

Second, the statements referenced above in <u>Krantz</u>, <u>Yardley</u>, <u>Constant I</u>, <u>Constant II</u>, <u>Markman</u>, and <u>Highway Equipment</u> were not dicta because those statements were "essential to the result reached" and therefore "part of the court's holding." <u>Arcam Pharm. Corp. v. Faria</u>, 513 F.3d 1, 2 (1st Cir. 2007) (internal quotation marks omitted); <u>accord id.</u> ("Dictum constitutes neither the law of the case nor the stuff of binding precedent; rather, it comprises observations in a judicial opinion or order that are not essential to the determination of the legal questions then before the court." (citations and internal quotation marks omitted)).  Christy's characterization of those statements as dicta misconstrues their importance:

- In <u>Krantz</u>, the Court of Customs and Patent Appeals debunked the "popular myth that a patent is a contract" in rejecting a theory of the case suggested by the appellant.  356 F.2d at 1020.

- In <u>Yardley</u>, the Court of Customs and Patent Appeals similarly emphasized that "[a] patent is not a contract" to reject an argument raised by a party.  493 F.2d at 1395.

- In <u>Constant I</u>, the Federal Circuit's observation that the Claims Court had followed Federal Circuit precedent teaching that "the issuance of a patent . . . does not create a contractual relationship" was a rejection of one of two theories advanced by the plaintiff (the other being a constitutional argument).  1988 WL 94630, at *1.

- In <u>Constant II</u>, the Federal Circuit rejected all three contentions that the plaintiff raised on appeal.  929 F.2d at 657.  In rejecting the plaintiff's contention that the dismissal of his case denied him due process, the Federal Circuit explained that (1) there was no due process violation because his "'patent grant' contract claim was untenable as a matter of law, and no additional proceedings could have enabled [him] to prove any set of facts entitling him to prevail on his claim" and (2) therefore the trial court's judgment was valid even if the opinion supporting the judgment may have been lacking.  <u>Id.</u>

---

quotation marks and alterations omitted)).  The Court of Federal Claims "has jurisdiction over most proprietary contracts, but generally does not have jurisdiction over contracts the government makes in its sovereign capacity."  <u>Awad v. United States</u>, 61 Fed. Cl. 281, 284 (2004).  When the government enters into a contract in its sovereign capacity, the Court of Federal Claims "will only have jurisdiction if . . . the contract's language provides for the payment of monetary damages in case of a breach by the government."  <u>Id.</u> at 285.  There is no such language in Christy's alleged contract with the Patent and Trademark Office.

- The dispute in <u>Markman</u> concerned "the interpretation and construction of patent claims." 52 F.3d at 970.  Because the central issue was the proper paradigm through which to view claim construction, the Federal Circuit's determination that "[p]atents are not contracts," <u>id.</u> at 985, was a necessary step in its analysis.

- In <u>Highway Equipment</u>, the Federal Circuit considered, among other issues, an appeal of the trial court's exercise of supplemental jurisdiction over a state-law counterclaim in a patent infringement action.  469 F.3d at 1037-38.  The Federal Circuit observed that the counterclaim involved a contract, whereas the "federal counts involved not a contract, but a patent," and concluded that there was no supplemental jurisdiction over the counterclaim because "the respective instrumentalities [were] different, the products at issue [were] different, the alleged acts [were] different, and the governing laws [were] different." <u>Id.</u> at 1038-39.  In other words, the Federal Circuit's delineation between contracts and patents was crucial to its holding.

Third, that <u>Krantz</u> and <u>Yardley</u> are decisions of the Court of Customs and Patent Appeals is of no moment.  In its first published opinion, the Federal Circuit declared that "the holdings of our predecessor courts, [including] the United States Court of Customs and Patent Appeals . . . shall be binding as precedent in [the Federal Circuit]." <u>S. Corp. v. United States</u>, 690 F.2d 1368, 1369 (Fed. Cir. 1982) (en banc).

Fourth, that <u>Markman</u> and <u>Highway Equipment</u> originated in federal district courts is also of no moment.  As defendant observes, the Federal Circuit applies Federal Circuit law "to substantive and procedural issues unique to and intimately involved in federal patent law," and applies "regional circuit law to other substantive and procedural issues." <u>Verinata Health, Inc. v. Ariosa Diagnostics, Inc.</u>, 830 F.3d 1335, 1338 (Fed. Cir. 2017).  The issues addressed in the statements from <u>Markman</u> and <u>Highway Equipment</u> referenced above dealt specifically with patent law, and thus those statements constitute Federal Circuit law, which is binding here.  Similarly, the above statements from <u>Krantz</u>, <u>Yardley</u>, <u>Constant I</u>, and <u>Constant II</u> squarely address patent-law issues, and thus constitute Federal Circuit law that is binding on this court.

Finally, Christy's criticism of the <u>Constant I</u> decision is disingenuous.  <u>Constant I</u> is indeed a one-word affirmance that appears in the Federal Reporter's "Table of Decisions Without Reported Opinions." <u>See</u> 861 F.2d 728 (Fed. Cir. 1988).  However, the full opinion is available from multiple sources (including Westlaw and Lexis) to which Christy cited.  <u>See</u> Pl.'s Resp. 28 n.17.  As noted above, the <u>Constant I</u> decision specifically invoked "the precedents of [the Federal Circuit]."  1988 WL 94630, at *1.  The Federal Circuit cited both <u>Yardley</u> and <u>Krantz</u> in doing so.  <u>Id.</u>  Christy's attempts to discredit <u>Constant I</u>, and <u>Constant II</u> by

implication, can only be explained by the fact that the Constant I and Constant II decisions are directly on point.  See supra note 15.

In short, Christy has failed to state a plausible contract claim upon which this court can grant relief because patents (including the individual claims contained therein) are not contracts, and the patenting process is not a contracting process.  Pursuant to RCFC 12(b)(6), the court must dismiss Counts II, III, and IV of Christy's amended complaint to the extent that it has subject-matter jurisdiction over the claims contained therein.[17]

## V.  UNJUST ENRICHMENT CLAIM

The court now turns to Count V of the amended complaint, in which Christy pleads, in the alternative to its breach-of-contract claims (i.e., Counts II, III, and IV), unjust enrichment based on the Patent and Trademark Office having retained the patent fees that Christy paid despite the invalidation of Christy's patent claims.  See Am. Compl. ¶ 167 ("Defendant was enriched without justification . . . .").  Defendant correctly asserts that unjust enrichment, as an equitable cause of action, is beyond the jurisdiction of this court.  See 8x8, Inc. v. United States, 854 F.3d 1376, 1383 n.7 (Fed. Cir. 2017).  Defendant also correctly asserts that even if the court possessed jurisdiction over Christy's unjust enrichment claim, it fails to state a claim upon which this court can grant relief because "[t]he core allegations of Count V are that an implied-in-fact contract, created through patenting, was breached by patent invalidation—precisely as alleged in Count III—and that, as a result of that breach, the government was enriched without justification."  Def.'s Mot. 18 (alterations and internal quotation marks omitted).  Christy indicates that it "does not oppose the Government's request that Count V be dismissed and hereby stipulates to dismissal of Count V of the First Amended Complaint."  Pl.'s Resp. 38.  The court therefore must dismiss Count V of Christy's amended complaint for lack of subject-matter jurisdiction.  To the extent that the court has jurisdiction over Count V, the court must dismiss it for failure to state a claim upon which this court can grant relief.

## VI.  ILLEGAL EXACTION CLAIM

Finally, the court turns to Count VI of Christy's amended complaint, in which Christy asserts (in the alternative to its Takings Clause claim in Count I) that the Patent Trial and Appeal Board's invalidation of claims 1-18 of the ′640 patent constitutes an illegal exaction.  Specifically, Christy alleges that the Patent Trial and Appeal Board illegally exacted the issuance and maintenance fees that Christy paid, the investments that Christy made in the ambient air backflushed filter vacuum invention, the total value of Christy's patent claims, the value of Christy's right to exclude, and the attorney fees that Christy spent in defending its claims during inter partes review.  Am. Compl. ¶ 175.

---

[17]  Christy's allegations regarding a purported implied-in-fact contract did not survive the court's jurisdictional inquiry.  However, to the extent that the court has subject-matter jurisdiction over any of Christy's claims grounded in contract, all such claims fail—regardless of the type of contract relied upon—because patents are not contracts.

> [A]n illegal exaction claim may be maintained when the plaintiff
> has paid money over to the Government, directly or in effect, and
> seeks return of all or part of that sum that was improperly paid,
> exacted, or taken from the claimant in contravention of the
> Constitution, a statute, or a regulation.

Aerolineas Argentinas v. United States, 77 F.3d 1564, 1572-73 (Fed. Cir. 1996) (internal
quotation marks omitted); accord id. at 1573 ("[A]n illegal exaction has occurred when 'the
Government has the citizen's money in its pocket.'" (quoting Clapp v. United States, 127 Ct. Cl.
505, 512 (1954))).

## A.  The Court of Federal Claims Lacks Jurisdiction to Consider Christy's Illegal Exaction Claim

    The Tucker Act provides jurisdiction for the Court of Federal Claims to entertain illegal
exaction claims "when the exaction is based upon an asserted statutory power," id., provided that
the "statute or provision causing the exaction itself provides, either expressly or by necessary
implication, that the remedy for its violation entails a return of money unlawfully exacted,"
Norman v. United States, 429 F.3d 1081, 1095 (Fed. Cir. 2005) (internal quotation marks
omitted).  A plaintiff asserting an illegal exaction must also allege a direct relationship between
the statute, regulation, or constitutional provision at issue and the alleged exaction in order to
invoke this court's jurisdiction.  Id. at 1095-96.  However, the court's Tucker Act jurisdiction is
displaced when a "specific remedial scheme establishes the exclusive framework for the liability
Congress created under the statute."  United States v. Bormes, 568 U.S. 6, 12 (2012).

    According to Christy, it should not have been required to pay fees for a patent containing
unpatentable claims.  Christy asserts "that the Government's demand for fees under what
amounts to false pretenses and not returning the fees paid after Christy's patent was rescinded
constitutes an illegal exaction."  Pl.'s Resp. 32.  Defendant contends that the Court of Federal
Claims lacks subject-matter jurisdiction to consider Christy's illegal exaction claim because,
among other reasons, the Tucker Act is displaced by a specific statutory and regulatory scheme
regarding fee refunds.

    Defendant is correct.  As Christy observes, the Patent and Trademark Office "may refund
any fee paid by mistake or any amount paid in excess of that required."  35 U.S.C. § 42(d).
Patent fee refunds are governed by the terms of 37 C.F.R. § 1.26.  See, e.g., Panos v. Dir. of
USPTO, No. 3:14cv698, 2015 WL 5786826, at *1 (E.D. Va. Sept. 30, 2015).  The Patent and
Trademark Office has "inherent authority to govern procedure" before it.  In re Bogese, 303 F.3d
1362, 1368 (Fed. Cir. 2003).  To that end, and pursuant to the authority granted by 35 U.S.C.
§ 42(d) and 37 C.F.R. § 1.26, the Patent and Trademark Office's Manual of Patent Examining
Procedure ("MPEP") provides that "[a]ll questions pertaining to the return of fees are referred to
the Refunds Section of the Receipts Division of the Office of Finance" and that issues regarding

fee refunds may, "to the extent appropriate," be addressed "in decisions on petition."[18]  MPEP
§ 607.02 (9th ed. Rev. 3,  Jan. 2018); see also 37 C.F.R. §§ 1.181-.182 (discussing petitions);
Petitions, USPTO, https://www.uspto.gov/patents-application-process/petitions (last visited Jan.
29, 2019) [http://web.archive.org/web/20190129150949/https://www.uspto.gov/patents-
application-process/petitions] (same).  A denial of a petition constitutes a "final agency
decision."  MPEP § 1002.02.  Because the Administrative Procedure Act "affords a right of
judicial review of agency action," Panos, 2015 WL 5786826, at *8 (citing 5 U.S.C. § 702),
judicial review regarding the return of fees paid to the Patent and Trademark Office is subject to
the provisions of the Administrative Procedure Act.  Cf. Fleming v. Coward, 534 F. App'x 947,
950 (Fed. Cir. 2013) (unpublished decision) ("To the extent that these statutory provisions are
inadequate, an action against the [Patent and Trademark Office] may be brought under the
Administrative Procedure Act if the patent applicant demonstrates receipt of a 'final agency
action' under 5 U.S.C. § 704.").

        In Count VI of its amended complaint, Christy advances an illegal exaction claim under
the Tucker Act, not a claim for judicial review of a final agency action under the Administrative
Procedure Act.  Because "statutory schemes with their own remedial framework exclude
alternative relief under the general terms of the Tucker Act," Bormes, 568 U.S. at 13, this court
cannot exercise subject-matter jurisdiction over Christy's illegal exaction claim.  In any event,
the Court of Federal Claims lacks jurisdiction to entertain claims arising under the
Administrative Procedure Act.  Roberts v. United States, 745 F.3d 1158, 1167 (Fed. Cir. 2014).
The court therefore must dismiss Count VI of Christy's amended complaint for lack of
subject-matter jurisdiction.

**B.  Christy Fails to State a Plausible Illegal Exaction Claim Upon Which This Court Can
Grant Relief**

        To the extent that the court has subject-matter jurisdiction to consider Christy's illegal
exaction claim, the claim fails on its merits.

                [T]o assert a valid illegal exaction claim, plaintiffs must show that:
                (1) they [have] paid money over to the government, directly or in
                effect; (2) the exaction was directly caused by the misapplication
                of a provision of the Constitution, a statute[,] or a regulation; and
                (3) the violated law provides for a return of [the] money
                unlawfully exacted.

eVideo Owners, 126 Fed. Cl. at 102 (second and fourth alterations in original) (internal quotation
marks omitted).  A "direct" exaction takes place "when money is paid directly to the government

------

        [18]  "The MPEP [is] commonly relied upon as a guide to patent attorneys and patent
examiners on procedural matters.  While the MPEP does not have the force of law, it is entitled
to judicial notice as an official interpretation of statutes or regulations as long as it is not in
conflict therewith."  Molins PLC v. Textron, Inc., 48 F.3d 1172, 1180 n.10 (Fed. Cir. 1995)
(alteration in original) (citation and internal quotation marks omitted).

as a result of the application of a statute or a regulation." Id. An "in effect" exaction takes place "when the government requires a plaintiff to make a payment on [the government's] behalf to a third-party or when the government exacts property which it later sells and for which it receives money." Id.

As previously noted, with respect to the patent issuance and maintenance fees paid by Christy for the ʹ640 patent, the statute governing fees paid to the Patent and Trademark Office allows the Director to "refund any fee paid by mistake or any amount paid in excess of that required." 35 U.S.C. § 42(d). As explained in section 607.02 of the MPEP,

> When an applicant or patentee takes an action "by mistake" (e.g., files an application or maintains a patent in force "by mistake"), the submission of fees required to take that action (e.g., a filing fee submitted with such application or a maintenance fee submitted for such patent) is not a "fee paid by mistake" within the meaning of 35 U.S.C. § 42(d).

In other words, Christy's fees "were owed at the time they were paid, and as such, were not fees paid by mistake." In re Patent No. 7,061,177, 2006 WL 4559506, at *1 (Comm'r Pat. Oct. 17, 2006). Christy "obtained the results for which [it] admittedly paid the fees," id., because it paid those fees to maintain claims 1-18 of the ʹ640 patent, which were not cancelled until August 14, 2018, and also to maintain claims 19-20 of the ʹ640 patent, which were not within the scope of the inter partes review proceedings and remain in force.

Since Christy obtained the result for which it purposefully and knowingly paid the issuance and maintenance fees, those fees cannot be said to have been illegally exacted. Christy cannot now seek a return of those fees under 35 U.S.C. § 42(d) and 37 C.F.R. § 1.26(a) (to the extent that the two-year refund application deadline set forth in 37 C.F.R. § 1.26(b) was not applicable). At most, the purpose for which Christy paid those fees has changed from maintaining claims 1-20 of the ʹ640 patent to maintaining claims 19-20 of the ʹ640 patent. "To now request a refund of those rightfully paid fees is a change in purpose after the fact, which precludes a refund." Id. at *1. Because "[a] change of purpose after the payment of a fee, such as when a party desires to withdraw a patent filing for which the fee was paid . . . will not entitle a party to a refund of such fee," 37 C.F.R. 1.26(a), Christy is not entitled to a refund of its issuance and maintenance fees. Thus, the laws upon which Christy relies to support its illegal exaction claim were neither misapplied nor do they, under the circumstances of the instant case, provide for a return of those fees.

Besides seeking a return of its issuance and maintenance fees, Christy avers that it is entitled, under a theory of illegal exaction, to a return of its investments in the ambient air backflushed filter vacuum invention, the total value of its patent claims, the value of its right to exclude, and the attorney fees spent to defend its claims during inter partes review. Christy's illegal exaction claim for these expenditures is devoid of merit. Christy does not argue, nor could it, that these funds were exacted directly because they were not paid to any government entity. Instead, Christy contends that the invalidation of claims 1-18 of the ʹ640 patent had a

"direct and substantial impact" on Christy and thus those funds were "effectively exacted." Am. Compl. ¶ 175. However, because the government did not require Christy to pay those funds to a third party on the government's behalf, or even to be paid at all, those funds cannot be said to have been paid to the government "in effect." Additionally, no statutes, regulations, or constitutional provisions were misapplied or otherwise violated because Christy did not expend those funds at the government's direction.

In short, Christy has failed to state a plausible illegal exaction claim upon which this court can grant relief. Therefore, to the extent that the court has subject-matter jurisdiction to consider Count VI of Christy's amended complaint, the court must dismiss it on its merits.

## VII. CONCLUSION

The court has considered all of the parties' arguments. To the extent not discussed herein, they are unpersuasive, meritless, or unnecessary for resolving the matters currently before the court.

The Court of Federal Claims has subject-matter jurisdiction to consider Christy's Takings Clause claim. The court also has subject-matter jurisdiction to consider Christy's contract claims to the extent that they are founded upon an alleged express contract. However, patents are not property for Takings Clause purposes, and patents are not contracts. In addition, the parties agree that Christy's unjust enrichment claim is beyond the subject-matter jurisdiction of this court. Finally, although the Tucker Act provides the court with subject-matter jurisdiction over illegal exaction claims, a specific statutory and regulatory scheme governs the return of the fees that Christy alleges to have been exacted and thus displaces the Tucker Act for purposes of that claim. To the extent that the court has subject-matter jurisdiction over Christy's illegal exaction claim, it fails on its merits.

Accordingly, the court **GRANTS** defendant's motion to dismiss. Counts I and II of the amended complaint are **DISMISSED WITH PREJUDICE** pursuant to RCFC 12(b)(6) for failure to state a claim upon which this court can grant relief. Counts III, V, and VI are **DISMISSED WITHOUT PREJUDICE** pursuant to RCFC 12(b)(1) for lack of subject-matter jurisdiction. Count IV is **DISMISSED WITH PREJUDICE** pursuant to RCFC 12(b)(6) to the extent that it relies on the existence of an express contract and **DISMISSED WITHOUT PREJUDICE** pursuant to RCFC 12(b)(1) to the extent that it relies on the existence of an implied-in-fact contract. To the extent that the court has subject-matter jurisdiction over Counts III, IV, V, and VI, they are **DISMISSED WITH PREJUDICE** pursuant to RCFC 12(b)(6). No costs. The clerk is directed to enter judgment accordingly and close the case.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Chief Judge